**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL BELL, et al.
,
                    Plaintiffs,

v.

MARIA PAPPAS, et al.

                    Defendants.

Case No. 22 C 07061

Judge Matthew F. Kennelly

## <u>DEFENDANTS MARIA PAPPAS AND COOK COUNTY'S PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Now come Defendants, Maria Pappas, in her official capacity as Treasurer of Cook County, Illinois and Trustee of the Indemnity Fund ("Treasurer"), and Cook County, by their counsel, Kimberly M. Foxx, State's Attorney of Cook County, and through her assistant, Megan Honingford, pursuant to Fed. R. Civ. P. 12(b)(6), and submit this Partial Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). In support thereof, Defendants state as follows:

## <u>INTRODUCTION</u>

Plaintiffs bring this claim before the court challenging the lawfulness of 35 ILCS 200/21, a portion of the Illinois Property Tax Code, as applied in Cook County. Counts I, II, and III[1] of Plaintiffs' FAC, like Counts I, II, and III, of their original Complaint, assert claims under the United States Constitution and challenge the constitutionality of 35 ILCS 200/21, *et seq*. (ECF No. 34.) Counts IV and V of Plaintiffs' original complaint alleged that the application of 35 ILCS 200/21 in Cook County leads to a disparate impact on racial minority groups in violation of the

---

[1] Defendants file an answer to Counts I, II, and III contemporaneously with this filing.

1

federal Fair Housing Act, 42 U.S.C. § 3604 ("FHA"), and the Illinois Civil Rights Act ("ICRA"),
740 ILCS 23/5. (ECF No. 1.) Defendants moved to dismiss Counts IV and V of the original
complaint for failure to state a claim. (ECF No. 29.) Plaintiffs' FAC reasserts Counts IV and V,
creating an even greater burden for themselves by asserting violations of the FHA and ICRA under
the disparate treatment theory as well as disparate impact. Plaintiffs have again failed to
sufficiently allege that a disparity exists and that Defendants employ specific policies that cause
the disparity, dooming their disparate impact theory. In addition, they fail to allege any action of
Defendants constituting disparate treatment. Counts IV and V should therefore be dismissed.

In addition, the FAC asserts new facts regarding Plaintiff Bell and proposes a new class
and subclass purported to be represented by Bell. Bell lacks standing to bring any claim because
he has not suffered an injury, and he has failed to state a claim on behalf of the proposed class and
subclass he seeks to represent.

## **BACKGROUND**

As Plaintiffs allege, 35 ILCS 200/21, *et seq*. is a portion of the Illinois Property Tax Code
that establishes the sale of tax debt incurred on delinquent properties. The Treasurer[2] creates an
annual record of all delinquent properties. 35 ILCS 200/21-160. The Code requires the Treasurer
to offer for sale the value of the delinquent taxes on properties identified as delinquent. 35 ILCS
21-190 ("If judgment is rendered against any property for any tax … the county collector shall,
after publishing a notice for sale …, proceed to offer the property for sale pursuant to the
judgment."); 35 ILCS 21-205. This process is the annual tax sale. The sale itself works like a
reverse auction: for each delinquent property, the prospective buyers bid downward on the interest

---

[2] The Treasurer also acts in an *ex officio* capacity as the Cook County Collector. The tax sale
provisions of the Code generally refer to the Treasurer in her capacity as the Collector.

they will collect on the tax debt if the property is redeemed, and the lowest bid wins. 35 ILCS 200/21-215. Starting in 2022, the legislature capped interest at 9% per six months, *Id*., though successful bids on residential property are commonly at 0%--the lowest recognized rate.

Following the tax sale, the Illinois Constitution and the Code govern the process of the tax buyer obtaining a title to the property through a tax deed. The Illinois Constitution guarantees a right for the property owner and other interested parties to be given reasonable notice of the sale and when the period to redeem expires as provided by law (i.e., under the Property Tax Code). Ill. Const., Art. IX, §8(e). For most residential property, the Code gives the owner and other interested parties two years and six months to redeem the property by paying the tax buyer (through the County Clerk) the total amount of the tax debt, plus interest and fees. 35 ILCS 200/21-350(b); 35 ILCS 200/21-355(a). The tax buyer may extend the period of redemption up to three years from the date of sale. 35 ILCS 200/21-385. The Code also imposes notice requirements and other procedural conditions that must be satisfied before the buyer can obtain a tax deed. See 35 ILCS 200/22-5; 35 ILCS 200/22-10; 35 ILCS 200/22-15; 35 ILCS 200/22-25; 35 ILCS 200/22-40(a).

Within this constitutional and statutory framework, if the owner or other interested party does not timely redeem and the tax buyer has strictly complied with the Code's provisions, the buyer will be entitled to a tax deed conveying merchantable title to the property. 35 ILCS 200/22-40(a); 35 ILCS 200/22-45. Once the tax deed is issued, the former owner has ten years to petition in the county circuit court to receive compensation equal to the market value of property at the time of the tax deed's issuance, minus the principal amount of the tax debt and any mortgages or liens on the property, from the county's indemnity fund. 35 ILCS 200/21-305. Each county's indemnity fund is funded exclusively by fees and surcharges paid by tax buyers in the tax sale process. 35 ILCS 200/21-295.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a pleading by accepting all the complaint's factual allegations as true. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674–75 (7th Cir. 2001). When considering a Rule 12(b)(6) motion to dismiss, courts construe the allegations in a plaintiff's complaint "in the light most favorable to [the plaintiff], accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of [the plaintiff]." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (*citing Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012)).

Dismissal is proper if the complaint fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

The Fair Housing Act, 42 U.S.C. § 3604, makes it unlawful to take a variety of discriminatory housing actions because of an individual's race, color, religion, sex, familial status, or national origin. Section 3604 permits recovery under both the disparate impact theory and/or the disparate treatment theory. These two theories of liability differ in the intent behind the defendant's alleged action. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015). Claims based upon the disparate impact theory challenge practices that have a "disproportionately adverse effect on minorities and are otherwise unjustified by a

4

legitimate rationale." *Inclusive Communities* at 524, *quoting Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The disparate treatment theory requires a showing of the defendant's actual discriminatory intent or motive. *Inclusive Cmtys.* at 524. If a defendant "makes a decision based on reasons other than a protected category, there is no disparate-treatment liability." *Inclusive Cmtys.* at 538.

The Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5(a)(2) prohibits any unit of local government from "utiliz[ing] criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." Illinois courts have explained that the ICRA "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon." *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010), citing *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 368 Ill.App.3d 321 (1st Dist. 2006). Courts look to federal civil rights statutes to guide the interpretation of ICRA as applied to disparate treatment claims. *Weiler v. Vill. of Oak Lawn*, 86 F.Supp. 3d 874, 889 (N.D. Ill. 2014); *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2020 U.S. Dist. LEXIS 49102, *10 (N.D. Ill. 2020).

I.      **Plaintiffs have not sufficiently pled the elements of a disparate impact claim.**

To state a *prima facie* disparate impact claim, Plaintiffs must allege three elements: (1) a statistical disparity; (2) that the defendant maintained a specific policy; and (3) that the specific policy caused the disparity. *Cty. of Cook v. Wells Fargo & Co.*, 314 F.Supp 3d 975, 990 (N.D. Ill. 2018), *relying on Inclusive Cmtys*. 576 U.S. 519 (2015); *City of Joliet v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016). Plaintiffs' FAC again fails to adequately state any of the three elements.

a.      **Plaintiffs fail to sufficiently allege a statistically disparate impact.**

Plaintiffs' allegations are insufficient to properly allege a plausible disparate impact. In order to state the first element of a disparate impact claim, Plaintiffs are not required to provide statistics laying out the exact contours of the disparity. *Nat'l Fair Hous. All. v. Deutsche Bank*

*Nat'l Trust*, 2019 U.S. Dist LEXIS 196481, *42 (N.D. Ill. 2019); relying on *Inclusive Cmtys.*, 576 U.S. 519 at 543. However, a court may examine challenges to a plaintiff's methodology in evaluating a motion to dismiss. *Deutsche Bank Nat'l Trust*, 2019 U.S. Dist LEXIS 196481 at *42. Here, Plaintiffs fail to sufficiently allege a statistical disparity because they do not examine the rate of tax sales in Black and Latino neighborhoods in the correct context and offer no basis to show that there might be a statistical disparity borne out through discovery.

The only facts or statistics Plaintiffs allege do not illustrate a disparity. Plaintiffs point to the proportion of tax sales conducted on properties in minority neighborhoods and compare this number to the percentage of the Cook County population who identify as Latino, Black, or two or more races. (ECF No. 34, ¶ 81.) This comparison is not apt, first and foremost because it does not identify the proportion of all delinquent properties (i.e., properties potentially eligible for the tax sale) that were located in Latino or Black neighborhoods or owned by Latino or Black owners. The percentage of the Cook County population identifying as Latino, Black, or two or more races is not relevant to this analysis; that number does not even reflect the proportion of homeowners who are Black, Latino, or multiracial, let alone the rate of minority owners of delinquent residential properties. Plaintiffs' allegations would only state a claim if tax sales were conducted at random among the population, which would allow for even distribution among racial groups. Tax sales are not conducted at random throughout the population, nor are they conducted at random among properties. Rather, they are conducted on properties that are delinquent in their taxes. Moreover, Plaintiffs' focus on properties in Black and Latino neighborhoods sold in the tax sale does not identify Black- and Latino-owned properties on which a tax deed was issued and equity was not recouped, the actual injury Plaintiffs' allege. Plaintiffs must perform the correct analysis in order to properly allege that a statistical disparity even potentially exists.

Finally, Plaintiffs' allegations fail to establish a potential disparity because they fail to examine Black and Latino homeowners and instead identify homes in predominantly Black and Latino neighborhoods. (ECF No. 34, ¶ 6, 81.) This causes their claim to fail because the alleged injuries are incurred by the individual homeowners, not communities. In order to show a true disparity among those who have lost equity in their homes, Plaintiffs must at least allege that the property owners whose properties have gone to a tax sale in Latino and Black neighborhoods are actually members of a racial minority themselves. Without offering the correct comparator group, Plaintiffs have not stated a plausible statistically disparate impact.

   **b. Plaintiffs fail to identify a specific policy employed by Defendants.**

To state an FHA disparate impact claim, "a plaintiff must allege not only a statistical disparity, but also that the defendant maintained a specific policy that caused the disparity." *Wells Fargo,* 314 F.Supp 3d 975 at 990; *Inclusive Cmtys.,* 576 U.S. 519 at 542. In addition, the specific policy must create "'artificial, arbitrary, and unnecessary' barriers to equality." *Cook County v. Bank of Am. Corp.*, 584 F.Supp. 3d 562, 566 (7th Cir. 2022); *citing Inclusive Cmtys.* at 540. The Seventh Circuit has recognized that under *Inclusive Communities*, a court must consider "both whether a policy exists and whether it is justified" to avoid preventing the government from achieving legitimate objectives. *City of Joliet v. New West, L.P.,* 825, F.3d 827, 830 (7th Cir. 2016), *quoting Inclusive Cmtys.* at 543.

Plaintiffs did not allege any specific policy, or even practice, employed by Defendants that could lead to the alleged disparate impact. The tax sale process itself is not Defendants' policy but rather is a creation of the legislature. Plaintiffs seek to avoid this fact by attempting to allege that some unidentified action of Pappas's amounts to an offending policy, but they fail to say what that action is. Plaintiffs merely allege that "on information and belief Defendants exercise discretion to include properties in the tax sale pursuant to an unwritten internal policy." (ECF No. 34, ¶59.)

Plaintiffs do not identify the manner in which Defendants exercise discretion over what properties are sold for taxes. This glancing and vague reference to an unwritten policy is not sufficient to satisfy Plaintiffs' obligation to identify a "specific policy" leading to a disparate impact. *See, e.g.*, *Wells Fargo*, 314 F.Supp 3d 975 (plaintiffs plausibly alleged a disparate impact claim by alleging the exact techniques defendant used to "steer prime-eligible minority borrowers into nonprime loans"). The level of specificity alleged in *Wells Fargo* is adequate to state a disparate impact claim. In contrast, Plaintiffs here do not allege any specific policy or action by Defendants at all.

Moreover, even if Plaintiffs had named a specific policy by Defendants, they have not alleged that the policy is artificial, arbitrary, and unnecessary. Disparate impact liability mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies." *Inclusive Cmtys.* 576 U.S. 519 at 540. This demands consideration for the government's interest in enforcing the relevant policy. Even prior to the Supreme Court's discussion of "artificial, arbitrary, and unnecessary" policies, the Seventh Circuit considered the government's interest in its policy when determining disparate impact liability. *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1293 (7th Cir. 1977). In such an analysis, "if the defendant is a governmental body acting within the ambit of legitimately derived authority, we will less readily find that its action violates" the FHA. *Id*. The tax sale process is implemented pursuant to state law, and both the state and County unquestionably have an interest in collecting lawfully levied taxes, a point which Plaintiffs do not contest. (ECF No. 34, ¶ 78.)

Plaintiffs do not allege that the state law itself leads to a disparate impact, but rather some policy or decision making by Defendants. To support this claim, they must allege the nature of Defendants' policy. Plaintiffs have failed to sufficiently allege a specific and arbitrary or

8

unnecessary policy of Defendants to support their disparate impact theory and have thus failed to state a claim under either the FHA or ICRA.

### c. Plaintiffs have not alleged facts to satisfy the robust causation required to state a claim based on a disparate impact theory.

Finally, Plaintiffs have failed to allege that any actions by Defendants cause or have caused a disparate impact. Generally, any claim under the FHA requires proximate cause. *Bank of Am. Corp. v. City of Miami, Fla.,* 581 U.S. 189, 201 (2017). However, a disparate impact claim under the FHA requires a showing of causation beyond proximate cause and must allege a true causal connection. In recognizing a disparate impact claim under the FHA, the Supreme Court stated that a "robust causality requirement ensures that racial imbalance does not, without more, establish a *prima facie* case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities* 576 U.S. 519 at 542. "If a statistical discrepancy is caused by factors other than the defendant's policy, then plaintiff cannot establish a *prima facie* case, and there is no liability." *Id.* at 527. "Thus, 'a plaintiff who fails to allege facts at the pleading stage[…] demonstrating a causal connection' between the identified disparity and the complained of policy 'cannot make out a *prima facie* case of disparate impact.'" *Wells Fargo* at 991, citing *Inclusive Cmtys.* at 542.

Here, Plaintiffs fail to allege any facts to establish either proximate cause or the robust causality required to state a disparate impact claim. As noted above, Plaintiffs fail to account for the fact that Defendants do not control which property owners are delinquent in their taxes and thus eligible for the tax sale. Even if the court assumes that Plaintiffs' reference to Defendant Pappas's alleged use of discretion, ECF No. 34, ¶59, is specific enough to support their claim, Plaintiffs do not even attempt to explain *how* the unwritten policy creates a disparity at some point *after* it is determined which properties are delinquent. Without allegations to illustrate how

Defendants' policies caused the alleged disparity, Plaintiffs fail to state the third element of a disparate impact claim.

## II. Plaintiffs do not allege any facts to support a disparate treatment claim.

"Disparate treatment is just another way of saying intentional discrimination." *TBS Grp., LLC v. City of Zion*, 2017 U.S. Dist. LEXIS 183060, *11 (N.D. Ill. 2017). To adequately plead a disparate treatment claim, Plaintiffs must plausibly allege "a discriminatory motive through either direct or circumstantial evidence." *Id*. Alleged disparate treatment must involve "treating [the plaintiff] worse than others who are similarly situated" intentionally. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1740 (2020)[3]. "To survive a 12(b)(6) motion, a complaint alleging disparate treatment 'need only aver that the employer instituted a (specified) adverse [housing] action against the plaintiff on the basis of' a specified protected class." *Anderson v. Twin Rest. Oakbrook, LLC*, 2021 U.S. Dist LEXIS 132302, *21 (N.D. Ill. 2021); *quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Here, Plaintiffs fail to satisfy even that requirement.

Rather than identifying any specific discrete action taken by Defendants for the purpose of discrimination, Plaintiffs base their disparate treatment claims entirely on Defendants' alleged knowledge that the tax sale has a disparate impact. (ECF No. 34 ¶131, 140.) Even if Plaintiffs had adequately pled a disparate impact (and as discussed above, they have not), Defendants' alleged knowledge of a disparate impact is not sufficient to support a claim for disparate treatment. *See Chi. Teachers Union v. Bd. of Educ. of Chi.*, 14 F.4th 650, 658 (7th Cir. 2021). In order to succeed under a disparate treatment theory based on Defendants' knowledge of a disparate impact, Plaintiffs must also show that Defendants actually chose to take an action "at least in part *because*

---

[3] *See Allen v. Muriello*, 217 F.3d 517, (7th Cir. 2000) ("The mental element required to make out a disparate treatment claim under Title VIII of the Fair Housing Act is the same as that required under Title VII of the Civil Rights Act of 1964.")

*of…its adverse effects upon an identifiable group.*" *Bank of America*, 584 F. Supp. 3d 562 at 572 (emphasis in original); *quoting Alston v. City of Madison*, 853 F.3d 901, 907 (2017); *Chi. Teachers Union v. Bd. of Educ. of Chi.*, 14 F.4th 650, 658 (7th Cir. 2021). Plaintiffs' FAC does not allege that Defendants actively chose to administer the tax sale process because it would have a discriminatory effect on Black or Latino property owners. Nor does the FAC allege any specific actions by Defendants at all, aside from general statements that they administered the tax sale. "This type of pleading 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Banks v. LoanCare LLC*, 2019 U.S. Dist. LEXIS 173412 (N.D. Ill. 2019); quoting *Iqbal* at 678-79.

Moreover, Plaintiffs fail to allege that similarly situated non-Black or non-Latino property owners who were eligible for the tax sale were excluded from the sale or otherwise treated differently because of their race. *See Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014) (allegation that someone else has been treated differently is essential to FHA complaint). Plaintiffs' only attempts at comparison amount to statistics about the racial demographics of Cook County and the rates of home ownership, neither of which shed any light on the tax sale. (ECF No. 34, ¶¶80 85.) Statistics alone, with no similarly situated comparators, are rarely sufficient to show a discriminatory purpose, and Plaintiffs would still have to show exactly what policy of Defendants caused the statistical outcome on which they rely. *Alston*, 853 F.3d 901 at 907-908.

Finally, Plaintiffs have failed to adequately allege Defendants' actions proximately caused their alleged injuries. "Proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged'." *City of Miami,* 581 U.S. 189 at 202. "In the context of the FHA, foreseeability alone does not ensure the close connection that proximate cause

requires." *Id*. Plaintiffs' alleged injury was not caused by actions of Defendants, who did not create the tax sale process and did not cause Plaintiffs to be eligible for the tax sale.

Plaintiffs have failed to adequately identify a policy of Defendants' that would support their claims for disparate impact; they have similarly failed to identify any action taken by Defendants based on race. Plaintiffs' FAC does not contain a single allegation that Defendants implement the tax sale with the intention of discriminating against Black and Latino owners. Their FHA and ICRA claims based on the disparate treatment theory must therefore be dismissed.

### III. Plaintiff Bell and the members of proposed Class B and Subclass B lack standing to assert a claim.

Bell lacks standing to seek prospective injunctive relief on behalf of himself and proposed Class B and Subclass B based on the delinquent status of his property taxes. (ECF No. 34, ¶ 107.) "To have standing, a plaintiff must allege and ultimately show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. A plaintiff bears the burden of showing that she has standing for each form of relief sought." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). A plaintiff seeking prospective injunctive relief has standing only if he faces a "real and immediate threat of future injury," not a threat that is "merely 'conjectural or hypothetical.'" *Id*., *quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The Seventh Circuit has found a potential injury that is contingent upon the plaintiff's future unlawful activities does not constitute a real and immediate future threat. *See id*.; *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974) (when determining standing for future harm, courts assume litigants will act lawfully).

First, Bell has not suffered any injury in fact. Bell alleges that the back taxes on his home due in 2017 were sold at the tax sale and that he did not redeem his taxes within the statutory time period. (ECF No. 34, ¶ 16-17.) However, the tax buyer who purchased Bell's back taxes moved to

vacate the sale and never obtained a tax deed. (ECF No. 34, ¶ 17.) Bell therefore did not lose ownership of his property or any of the equity in the property.

Moreover, Plaintiff Bell's allegations do not support a finding that he is threatened with real and immediate harm. He asserts that the 2017-2020 delinquent taxes will "invariably be sold again" at the tax sale in 2024. (ECF No. 34, ¶ 18-20.) Bell does not face an immediate threat of future injury because he could avoid any injury by complying with the assessment and collection of property tax, which he concedes is lawful and valid. Even if Bell's property taxes do remain delinquent, he would not suffer the loss he alleges unless and until (1) his taxes were actually sold, (2) he failed to redeem the taxes in the two and a half years following the sale, (3) the tax buyer sought a tax deed, (4) the tax deed was granted, (5) the tax buyer actually took ownership of his property, and (6) Bell indeed lost equity in the property; and (7) Bell files an indemnity fund petition; and (8) the petition is denied. Any one of these events may not transpire. Even if all those events were to take place, Bell would not incur a loss until 2027 at the earliest. In other words, merely being delinquent on one's property taxes does not mean a loss of the property is a "real and immediate threat."

Just as Plaintiff Bell lacks standing, the members of the proposed class and subclass he purports to represent also lack standing to bring the claims alleged in the FAC. The proposed Class B members are all people who "(1) own or are or were the beneficial owners of residential real property in Cook County, Illinois; and (2) the taxes on such property were not timely paid." (ECF No. 34, ¶ 96). The proposed Subclass B members are "all persons who are members of Class B who are Black or Latino." (ECF No. 34, ¶ 97). The members of this proposed class have suffered no injury. Their taxes have not been sold, a tax deed has not been issued, and they have not lost any equity in their property. Plaintiff Bell has not alleged any injury in fact on their behalf.

Furthermore, they, like Bell, are not facing a real and immediate threat of injury. These individuals could become current on their taxes or sell their property before the tax sale occurs, or they could redeem their taxes after they are sold to a buyer. There is no way to know or even speculate whether any of these individuals will be subject to the tax sale at all, let alone whether they will eventually have a tax deed issued against their property and lose ownership of their property. Because the alleged injuries of this proposed Class and Subclass are entirely theoretical, the proposed class and subclass members lack standing to bring a claim under all Counts of the FAC.

Plaintiff Bell and the proposed members of Class B and Subclass B have not alleged an injury in fact or a sufficient threat of future injury and therefore lack standing to bring any of the claims alleged in the FAC.

### IV. Plaintiffs' claims under ICRA must be dismissed pursuant to the Tort Immunity Act.

Defendants are immune from liability for the alleged violations of the ICRA under the Illinois Local Governmental and Governmental Employees Immunity Act, 745 ILCS 10/2-100, *et seq.* ("the Tort Immunity Act"). The Tort Immunity Act provides various immunities to state and local government for certain official actions. Under 745 ILCS 10/2-103, "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Here, Plaintiffs seek to hold Defendants liable for adopting and enforcing the tax code as prescribed by state law. Section 2-103 of the Tort Immunity Act applies to bar Plaintiffs' claims under the ICRA. *See, e.g., Collins v. Bd. Of Educ.*, 792 F.Supp. 2d 992, 999 (N.D. Ill. 2011) (dismissing plaintiff's claims of constitutional violations under the ICRA to the extent they sounded in tort); *But cf. Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶¶31-32 (2017) (declining to answer whether the Tort Immunity Act bars claims under the Illinois Human Rights Act); *Howard v. Cook Cnty. Sheriff's Off.*, 2022 U.S. Dist. LEXIS 80848, *49-53 (N.D. Ill. 2022).

In addition, section 2-201 of the Tort Immunity Act states:

Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

Thus, even if Plaintiffs could show that Pappas's acts of discretion amounted to a policy for purposes of ICRA disparate impact liability, and that the policy caused a disparate impact, Pappas would be immune from suit under the Tort Immunity Act. Immunity under this provision also extends to municipalities for their officials' discretionary policy decisions via section 2-109 of the Act. *Weiler v. Vill. of Oak Lawn*, 86 F.Supp. 3d 874, 884-885 (N.D. Ill. 2014), *citing Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 229 (2007). Therefore, Plaintiffs' claims under the ICRA must be dismissed.

## <u>CONCLUSION</u>

Plaintiffs have failed to allege facts sufficient to state a claim under the Fair Housing Act or the Illinois Civil Rights Act and have failed to establish standing on behalf of Plaintiff Bell and the proposed Class B and Subclass B. In addition, Plaintiffs cannot maintain any action against the Defendants under the Illinois Civil Rights Act for the claim they assert under Count V of their First Amended Complaint.

WHEREFORE, Defendants respectfully request that this Court dismiss Counts IV and V of Plaintiffs' First Amended Complaint with prejudice; dismiss all claims asserted by Plaintiff Bell and the proposed Class B and Subclass B; and award any further relief that this Court deems just and proper.

Respectfully submitted,

KIMBERLY FOXX

State's Attorney of Cook County

By:    /s/ *Megan Honingford*
Megan Honingford
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3630
megan.honingford@cookcountyil.gov

Kaitlin McKenzie
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3115
kaitlin.mckenzie@cookcountyil.gov

Kathleen Murphy
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-1064
kathleen.murphy@cookcountyil.gov

Anthony O'Brien
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7949
anthony.obrien@cookcountyil.gov

Prathima Yeddanapudi
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5463
prathima.yeddanapudi@cookcountyil.gov