# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL BELL, DOLLY JANIS, GOYCE H. RATES, and MICHELLE KIDD, individually and on behalf of themselves and all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA, individually,<br><br>    Plaintiffs,<br>v.<br><br>MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois, and Trustee of the Indemnity Fund; KAREN A. YARBROUGH, in her capacity as Cook County Clerk; and COOK COUNTY, ILLINOIS,<br><br>    Defendants. | Case No. 22 CV 7061<br><br>Judge Matthew F. Kennelly |

**PLAINTIFFS' MOTION UNDER RULES 42(b) AND 16 TO BIFURCATE
AND STAY PROCEEDINGS ON COUNTS II-V PENDING CONCLUSION OF COUNT I**

  Plaintiffs withdraw their "Motion Under Rule 16 to Set Briefing Schedule on Potentially Dispositive Legal Issue and Adjust Deadlines in the Case Management Order Accordingly", filed on November 15, 2023 (Dkt. 50). In its place, Plaintiffs hereby move pursuant to Fed. R. Civ. P. 42(b) that the Court bifurcate the litigation and order that class certification and the merits of Count I proceed to conclusion and that proceedings on Counts II-V, including discovery not related to Count I, be stayed pending resolution of Count I. Plaintiffs further move pursuant to Fed. R. Civ. P. 16 that, if bifurcation is ordered, the Court require the parties to propose an amended case management order to reflect the bifurcation and the schedule for litigating Count I.

Count I involves the question of whether Defendants violate the Fifth Amendment's "takings" clause when they deprive homeowners of their homes for failure to pay property taxes without providing "just compensation" for the surplus value of their homes in excess of the amounts owed for unpaid property taxes and related charges. Resolving Count I is a straightforward matter of deciding whether liability is controlled by the brand new and tightly analogous Supreme Court decision on the same constitutional issue in *Tyler vs. Hennepin County,* 598 U.S. 631, 143 S.Ct. 1369 (2023). If Count I is resolved in Plaintiffs' favor, it will likely obviate the necessity of litigating Counts II – V. Plaintiffs believe that bifurcating the case to address Count I, including class certification, prior to the other Counts will promote convenience and save the time and resources of the parties and the Court, without prejudicing Defendants, as contemplated by Rule 42(b). In addition, adjusting the case management order to reflect the bifurcation will result in "simplifying the issues", "determining the appropriateness and timing of summary adjudication under Rule 56", "controlling and scheduling discovery", "disposing of pending motions", and "facilitating… the just, speedy and inexpensive disposition of the action" in keeping with Fed. R. Civ. P. 16(c)(2)(A), (E), (F), (K), (P). In support hereof Plaintiffs state as follows:

1. Plaintiffs' Second Amended Complaint (Dkt. 53) challenges Defendants' taking of home equity from the Plaintiffs for failure to pay property taxes without compensating them for the equity value of the homes in excess of what was owed for the taxes and related charges. Plaintiffs contend in Count I that Defendants' practice is a taking in violation of the Fifth Amendment and the Supreme Court's mandate in *Tyler* that "[t]he taxpayer should render unto Caesar what is Caesar's, but no more". 143 S.Ct. at 1380. Plaintiffs plead four additional counts alleging violations of the Fourteenth Amendment the right to due process (Count II); the Eighth

Amendment, for imposing an excessive fine (Count III); the federal Fair Housing Act, on behalf of affected Black and Latino homeowners (Count IV); and the Illinois Civil Rights Act, also on behalf of affected Black and Latino homeowners (Count V).

2. Plaintiffs include homeowners in Cook County whom Defendants have deprived of their surplus home equity, seeking to recover the value of that equity on behalf of themselves and a plaintiff class (styled Class A for the constitutional Counts and Subclass A for the civil rights Counts ) (Dkt. 53, paras. 119-120). Plaintiffs also include a homeowner, Michael Bell, who has fallen behind in his taxes and is under imminent threat of losing his surplus home equity, seeking equitable relief to ensure that he does not lose his surplus home equity. He is suing on behalf of himself and a plaintiff class (styled Class B for the constitutional Counts and Subclass B for the civil rights Counts). *Id.* paras. 121-122. In addition, there are two organizational plaintiffs, Palenque LSNA (formerly Logan Square Neighborhood Association) and Southwest Organizing Project, both community groups seeking equitable relief to end the uncompensated loss of home equity in their communities and among their members. The organizational plaintiffs do not seek damages, nor to represent a class.

3. This case was filed one year ago, but promptly stayed in February 2023 at Defendants' request pending the Supreme Court's decision in *Tyler*. (Dkt. 23.) In arguing for the stay, Defendants recognized the significance of the taking issue presented in *Tyler* to deciding the constitutionality of their own practices. (Dkt. 22, at 5.) They acknowledged that even though "there are differences between the statutes governing the tax sales systems in Minnesota and Cook County," the *Tyler* ruling "will simplify at least one issue critical to this case: **whether a tax sale process in which the owner may not recover the home's surplus value amounts to a taking under the Fifth Amendment.** The Supreme Court will likely rule on this matter, a

decision that will provide precedent and inform the court's decisions in this case." (*Id.*, at 4, 5) (emphasis added)

4. The Defendants were correct in their prediction. The Supreme Court did decide the question as they framed it, and the decision does provide precedent for deciding the same issue in this case. The Supreme Court held that the "County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a 'classic taking in which the government directly appropriates private property for its own use.'") *Tyler,* 143 S.Ct. at 1376 (citation omitted).

5. Plaintiffs contend that Defendants' practice of depriving homeowners of the entire value of their homes to satisfy a property tax debt for a lesser amount is functionally identical, for constitutional purposes, to the practice in Hennepin County, Minnesota, which the Supreme Court held in *Tyler* to be an unconstitutional taking of private property without just compensation. Thus, the *Tyler* decision presents an opportunity to expeditiously and efficiently resolve Count I, the Fifth Amendment taking claim, which in turn would potentially resolve the entire case. Bifurcation the case so that Count I proceeds while the other claims are stayed would streamline and simplify the case and reduce the expense, time, and resources that the litigation would require from the Court and the parties. Relief for Plaintiffs and the classes they seek to represent pursuant to a liability finding and class judgment on Count I appears likely to satisfy any claim to relief obtainable under the other counts.

6. If the instant motion is granted, pending discovery requests involving the civil rights claims in Counts IV and V – a much more complicated factual environment calling for extensive data and use of experts – and those involving the Eighth Amendment and due process

clause, would be deferred and perhaps no longer be necessary if Plaintiffs prevail on Count I.[1] Nor would it be necessary for the Court to resolve the now-emerging disputes about that discovery. The Court would not need to rule on Defendants' motions attacking other Counts IV and V (assuming the Defendants will renew their motion to dismiss Counts IV and V of the Second Amended Complaint in the same manner as they attacked those counts in the First Amended Complaint).

7. In addition, proceeding on an expeditious trajectory on Count I will aid in settlement, as Defendants and county officials throughout Illinois would get a clear understanding of their responsibilities in bringing their property tax collection practices into compliance with the Constitution and the *Tyler* decision (and the extent of their potential liability if they continue with the current system).[2]

8. Bifurcating the litigation under Rule 42(b) to first address the entirety of Count I, including class certification, allows for determinations on class certification prior to determination of the merits. The parties can complete discovery already underway on both the merits of Count I and the issues of class certification.[3] The Court can rule on these issues in the appropriate order to avoid one-way intervention concerns.

9. If the Court bifurcates the litigation under Rule 42(b) to adjudicate Count I, including class certification, and stays proceedings on the other Counts, then we request that it also order the parties to propose an adjustment to the case management order under Rule 16.

---

[1] *See Tyler*, 143 S. Ct. at 1381 ("Because we find that Tyler has plausibly alleged a taking under the Fifth Amendment, and she agrees that relief under 'the Takings Clause would fully remedy [her] harm,' we need not decide whether she has also alleged an excessive fine under the Eighth Amendment.").
[2] A ruling by this Court could also help Defendants avoid potentially inconsistent rulings in the state courts in Cook County (and elsewhere) about whether or how *Tyler* might apply in litigation around property tax sales and foreclosures.
[3] The Second Amended Complaint alleges a damages class under Rule 23(b)(3) and a prospective relief class under Rule 23(b)(2), plus a claim for prospective relief on behalf of the organizational plaintiffs.

The new proposed schedule should reflect the bifurcation of Count I, and sort out which discovery is to proceed and which is stayed, setting deadlines for discovery and motions, scheduling the filing of any class certification and Rule 56 motions, and the final pre-trial order.

10. Plaintiffs satisfy the three requirements of Rule 42(b). Plaintiffs' proposal promotes judicial economy; it does not unduly prejudice any party; and it does not operate to deprive a party of a jury trial. See *Hawkins v. Securitas Sec. Servs. USA, Inc.*, No. 09 C 3633, 2013 U.S. Dist. LEXIS 40485, at *2-5 (N.D. Ill. Mar. 21, 2013) (collecting 7th Circuit authorities). The trial court has wide discretion. "The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication." *Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). See, *e.g., Toney v. Rosewood Care Ctr., Inc.*, Case No. 98 C 693, 2002 U.S. Dist. LEXIS 8710, at *1-2 (N.D. Ill. May 15, 2002) (referencing bifurcation into liability and damages phases); *Sanchez & Daniels v. Koresko & Assocs.*, No. 04 C 5183, 2006 U.S. Dist. LEXIS 82222, at *6-8 (N.D. Ill. Nov. 8, 2006) (referencing bifurcation of claims).

11. Here, the Rule 42(b) factors are clearly met. Judicial economy is served by first litigating the claim that has a high likelihood of mooting all the others and would, if resolved in plaintiffs' favor, spare the Court and the parties substantial discovery and expert activity and the briefing and deciding of issues involved in the other claims.[4] The Court need not determine at this stage that Plaintiffs are likely to prevail on Count I, but need only conclude that the chances and potential advantages of having that claim resolved first are significant enough to bifurcate

---

[4] Defendants acknowledged the significance of the resolution of the takings issue in Count I to the other claims when arguing for the stay: "The [*Tyler*] ruling will likely also impact the analysis of the claims asserted under the Fair Housing Act and the Illinois Civil Rights Act." (Dkt. 22 at 5)

the proceedings. There is no prejudice to Defendants in this approach. If they prevail on Count I, the litigation of the other counts will proceed and involve additional but not duplicative discovery, and the Court's rulings as to evidence and other matters will be law of the case. The risk, if any, is the delay that would occur in litigating the other counts if Defendants prevail on Count I. But that would only arguably prejudice Plaintiffs, and they are willing to accept that risk. The chances for substantially aiding judicial economy by dealing first with Count I over-balance any risks to judicial economy that might flow from the delay in reaching the other counts if Defendants prevail on Count I. There is no risk of denying a trial by jury to any party.

12. Plaintiff's request is within the spirit and scope of Rule 16. The Rule permits a Court to decide legal issues early in the litigation for the purpose of "formulating and simplifying the issues" before it. … [and it] may resolve the legal questions posed by the motion in the interest of advancing the litigation." *Dexia Credit Local v. Rogan*, 624 F. Supp. 2d 970, 978 (N.D. Ill. 2009) (quoting the Rule and citing cases). *See Agri-Sales, Inc. v. United Potato Co.*, 436 F. Supp. 2d 967, 973 (N.D. Ill. 2006) ("Rule 16 issue-narrowing motions… should be entertained because they … assist in shaping the future course of the litigation"). The Notes to the 1983 revision of Rule 16 (which added the provision relevant here), confirm the appropriateness of Plaintiffs' motion: "The reference in Rule 16(c)(1) to 'formulation' is intended to clarify and confirm the court's power to identify the litigable issues. It has been added in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone."

WHEREFORE, Plaintiffs move that the Court enter an order pursuant to Fed.R.Civ.P. 42(b) that bifurcates the litigation so that class certification and the merits of Count I proceed to conclusion, while proceedings on Counts II-V are stayed. Plaintiffs further move that the Court

order pursuant to Fed. R. Civ. P. 16 that the parties propose to the Court an amended case management order that: (1) reflects the bifurcation ordered under Rule 42(b), (2) separates the discovery relevant to Count I that will proceed and the discovery on the other counts that will be stayed, (3) schedules the filing of motions as to Count I, including class certification, and (4) schedules a deadline for motions under Rule 56 and filing of the pretrial order as to Count I.

Date: December 6, 2023

By: /s/ Brian D. Roche

Brian D. Roche
REED SMITH LLP
10 South Wacker Drive 40th Floor
Chicago, IL 60606
(312) 207-6490
broche@reedsmith.com

Charles R. Watkins
GUIN, STOKES & EVANS, LLC
805 Lake Street, #226 Oak Park, IL 60301
(312) 878-8391
charlesw@gseattomeys.com

David Guin
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. N.
Suite 600
Birmingham, AL 35203
(205) 503-4505
davidg@gseattorneys.com

John Bouman
Lawrence Wood
Daniel Schneider
LEGAL ACTION CHICAGO
120 South LaSalle Street, 9th Floor Chicago, IL 60603
(312) 341-1070
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org

*Counsel for Plaintiffs and the Putative Classes and Subclasses*

## **CERTIFICATE OF SERVICE**

    I, Brian D. Roche, one of Plaintiffs' attorneys, affirm that I served a true and accurate copy of this document on Defendants' attorneys at their email addresses of record and via the Court's electronic filing system on this 6th day of December, 2023.

                                                                 /s/ Brian D. Roche