IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BELL, et al., | Case No. 22 C 7061 |
| Plaintiffs, | |
| v. | Judge Matthew F. Kennelly |
| MARIA PAPPAS, et al., | |
| Defendants. | |

**DEFENDANTS MARIA PAPPAS AND COOK COUNTY'S PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Now come Defendants, Maria Pappas, in her official capacity as Treasurer of Cook County, Illinois and Trustee of the Indemnity Fund ("Treasurer"), and Cook County, by their counsel, Kimberly M. Foxx, State's Attorney of Cook County, and through her assistant, Megan Honingford, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and submit this Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). In support thereof, Defendants state as follows:

**INTRODUCTION**

Plaintiffs bring this claim before the court challenging the lawfulness of 35 ILCS 200/21, a portion of the Illinois Property Tax Code, as applied in Cook County. Counts I, II, and III of Plaintiffs' SAC, like Counts I, II, and III, of the prior iterations of their pleading, assert claims under the United States Constitution and challenge the constitutionality of 35 ILCS 200/21, *et seq*. (ECF 53.) Counts IV and V of Plaintiffs' SAC allege that the application of 35 ILCS 200/21 in Cook County leads to a disparate impact on minority groups in violation of the federal Fair Housing Act, 42 U.S.C. § 3604 ("FHA"), and the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5, and amounts to intentional discrimination under the disparate treatment theory. (ECF 53.)

1

The SAC names a new defendant, Karen Yarbrough, the Clerk of Cook County ("the Clerk"). The SAC also adds two additional plaintiffs, Janis and Rates.

Counts IV and V should be dismissed because Plaintiffs have once again failed to sufficiently allege that a legally significant disparity exists among racial groups impacted by the tax sale and that Defendants employ specific policies that cause the disparity, dooming Plaintiffs' disparate impact theory. Further, they fail to allege any action of Defendants constituting disparate treatment. In addition, Plaintiff Bell lacks standing to bring any claim because he has not suffered an injury, and he has failed to state a claim on behalf of the proposed Class B and Subclass B.

## BACKGROUND

As Plaintiffs allege, 35 ILCS 200/21, *et seq*. is a portion of the Illinois Property Tax Code that establishes the sale of tax debt incurred on delinquent properties. The Treasurer[1] creates an annual record of all delinquent properties. 35 ILCS 200/21-160. The Code requires the Treasurer to offer for sale the value of the delinquent taxes on properties identified as delinquent. 35 ILCS 21-190 ("If judgment is rendered against any property for any tax … the county collector shall, after publishing a notice for sale …, proceed to offer the property for sale pursuant to the judgment."); 35 ILCS 21-205. This process is the annual tax sale. The sale itself works like a reverse auction: for each delinquent property, the prospective buyers bid downward on the interest they will collect on the tax debt if the property is redeemed, and the lowest bid wins. 35 ILCS 200/21-215. Starting in 2022, the legislature capped interest at 9% per six months, *id*., though successful bids on residential property are commonly 0%--the lowest recognized rate.

---

[1] The Treasurer also acts in an *ex officio* capacity as the Cook County Collector. The tax sale provisions of the Code generally refer to the Treasurer in her capacity as the Collector.

Following the tax sale, the Illinois Constitution and the Code govern the process of the tax buyer obtaining a title to the property through a tax deed. The Illinois Constitution guarantees a right for the property owner and other interested parties to be given reasonable notice of the sale and when the period to redeem expires as provided by law (i.e., under the Property Tax Code). Ill. Const., Art. IX, §8(e). For most residential property, the Code gives the owner and other interested parties two years and six months to redeem the property by paying the tax buyer (through the County Clerk) the total amount of the tax debt, plus interest and fees. 35 ILCS 200/21-350(b); 35 ILCS 200/21-355(a). The tax buyer may extend the period of redemption up to three years from the date of sale. 35 ILCS 200/21-385.

If the owner or other interested party does not timely redeem, the buyer will be entitled to a tax deed conveying merchantable title to the property. 35 ILCS 200/22-40(a); 35 ILCS 200/22-45. The Code imposes notice requirements and other procedural conditions that must be satisfied before the buyer can obtain a tax deed. *See* 35 ILCS 200/22-5; 22-10; 22-15; 22-25; 22-40(a).

If a tax deed is issued to a tax buyer, the former owner has ten years to petition in the county circuit court to receive compensation equal to the market value of property at the time of the tax deed's issuance, minus the principal amount of the tax debt and any mortgages or liens on the property, from the county's indemnity fund. 35 ILCS 200/21-305. Each county's indemnity fund is funded exclusively by fees and surcharges paid by tax buyers. 35 ILCS 200/21-295.

## **LEGAL STANDARD**

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a pleading by accepting all the complaint's factual allegations as true. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674–75 (7th Cir. 2001). When considering a Rule 12(b)(6) motion to dismiss, courts construe the allegations in a plaintiff's complaint "in the light most favorable to [the plaintiff],

3

accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of [the plaintiff]." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (*citing Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012)).

Dismissal is proper if the complaint fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I. Plaintiffs fail to allege facts adequate to state a claim under the FHA or ICRA.

The Fair Housing Act, 42 U.S.C. § 3604, makes it unlawful to take a variety of discriminatory housing actions because of an individual's race, color, religion, sex, familial status, or national origin. Section 3604 permits recovery under both the disparate impact theory and/or the disparate treatment theory. These two theories of liability differ in the intent behind the defendant's alleged action. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015). Claims based upon the disparate impact theory challenge practices that have a "disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." *Inclusive Communities* at 524, *quoting Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). The disparate treatment theory requires a showing of the defendant's actual discriminatory intent or motive. *Inclusive Cmtys.* at 524. If a defendant "makes a decision based on reasons other than a protected category, there is no disparate-treatment liability." *Inclusive Cmtys.* at 538.

4

The Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5(a)(2) prohibits any unit of local government from "utiliz[ing] criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." Illinois courts have explained that the ICRA "was expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon." *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010), citing *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 368 Ill.App.3d 321 (1st Dist. 2006). Courts look to federal civil rights statutes to guide the interpretation of ICRA as applied to disparate treatment claims. *Weiler v. Vill. of Oak Lawn*, 86 F.Supp. 3d 874, 889 (N.D. Ill. 2014); *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2020 U.S. Dist. LEXIS 49102, *10 (N.D. Ill. 2020).

### A. Plaintiffs have not sufficiently pled the elements of a disparate impact claim.

To state a *prima facie* disparate impact claim, Plaintiffs must allege three elements: (1) a statistical disparity; (2) that the defendant maintained a specific policy; and (3) that the specific policy caused the disparity. *Cty. of Cook v. Wells Fargo & Co.*, 314 F.Supp 3d 975, 990 (N.D. Ill. 2018), *relying on Inclusive Cmtys*. 576 U.S. 519 (2015); *City of Joliet v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016). Plaintiffs' SAC again fails to adequately state any of these three elements.

### i. Plaintiffs fail to sufficiently allege a statistically disparate impact.

Plaintiffs' allegations are insufficient to properly allege a plausible disparate impact. In order to state the first element of a disparate impact claim, Plaintiffs are not required to provide statistics laying out the exact contours of the disparity. *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Trust*, 2019 U.S. Dist LEXIS 196481, *42 (N.D. Ill. 2019); relying on *Inclusive Cmtys.*, 576 U.S. 519 at 543. However, a court may examine challenges to a plaintiff's methodology in evaluating a motion to dismiss. *Deutsche Bank Nat'l Trust*, 2019 U.S. Dist LEXIS 196481 at *42. Here, Plaintiffs fail to sufficiently allege a statistical disparity because they do not examine the rate of

5

tax sales in Black and Latino neighborhoods in the correct context and offer no basis to show that there might be a statistical disparity borne out through discovery.

The only facts or statistics Plaintiffs allege do not illustrate a disparity. First, Plaintiffs have failed to align the alleged injury (receiving inadequate compensation for their lost property) with the alleged disparity (the difference between the rates of Black and Latino property ownership and the proportion of properties in the tax sale that are in Black and Latino neighborhoods).

Even if Plaintiffs were alleging the injury results from the sale of their properties, not the compensation, Plaintiffs still fail to adequately allege that a disparity exists. Plaintiffs point to the proportion of tax sales conducted on properties in minority neighborhoods and compare this number to the percentage of the Cook County population who identify as Latino, Black, or two or more races. (ECF 53, ¶ 105-106.) This comparison is not apt, first and foremost because it does not identify the proportion of all *delinquent* properties (i.e., properties potentially eligible for the tax sale) that were located in Latino or Black neighborhoods or owned by Latino or Black owners. The percentage of the Cook County population identifying as Latino, Black, or two or more races is not relevant to this analysis; that number does not even reflect the proportion of homeowners who are Black, Latino, or multiracial, let alone the rate of minority owners of delinquent residential properties. Plaintiffs' allegations would only state a claim if tax sales were conducted at random among the population, which would allow for even distribution among racial groups. Tax sales are not conducted at random throughout the population, nor are they conducted at random among properties. Rather, they are conducted on properties that are delinquent in their taxes. Moreover, Plaintiffs' focus on properties in Black and Latino neighborhoods sold in the tax sale does not identify Black- and Latino-owned properties on which a tax deed was issued and equity was not

6

recouped, the actual injury Plaintiffs' allege. Plaintiffs must perform the correct analysis in order to properly allege that a statistical disparity even potentially exists.

Finally, Plaintiffs' allegations fail to establish a potential disparity because they fail to examine Black and Latino homeowners and instead identify homes in predominantly Black and Latino neighborhoods. (ECF 53, ¶ 6, 106.) This is inadequate to state their claim because the alleged injuries are incurred by the individual homeowners, not communities. In order to allege a true disparity among those who have lost equity in their homes, Plaintiffs must at least allege that the property owners whose properties have gone to a tax sale in Latino and Black neighborhoods are actually members of a racial minority themselves. Without offering the correct comparator group, Plaintiffs have not stated a plausible statistically disparate impact.

      **ii.      Plaintiffs fail to identify a specific policy employed by Defendants.**

To state an FHA disparate impact claim, "a plaintiff must allege not only a statistical disparity, but also that the defendant maintained a specific policy that caused the disparity." *Wells Fargo,* 314 F.Supp 3d 975 at 990; *Inclusive Cmtys.,* 576 U.S. 519 at 542. In addition, the specific policy must create "'artificial, arbitrary, and unnecessary' barriers to equality." *Cook County v. Bank of Am. Corp.*, 584 F.Supp. 3d 562, 566 (7th Cir. 2022); *citing Inclusive Cmtys.* at 540. The Seventh Circuit has recognized that under *Inclusive Communities*, a court must consider "both whether a policy exists and whether it is justified" to avoid preventing the government from achieving legitimate objectives. *City of Joliet v. New West, L.P.,* 825, F.3d 827, 830 (7th Cir. 2016), *quoting Inclusive Cmtys.* at 543.

Plaintiffs did not allege any specific policy, or even practice, employed by Defendants that could lead to the alleged disparate impact. The tax sale process and the indemnity fund are not Defendants' policies but rather are a creation of the state legislature. Plaintiffs seek to avoid this

fact by attempting to allege that some unidentified action of the Treasurer's amounts to an offending policy, but they fail to say what that action is. Plaintiffs merely allege that "on information and belief Defendants exercise discretion to include properties in the tax sale pursuant to an unwritten internal policy." (ECF 53, ¶ 83.) Plaintiffs do not identify the manner in which Defendants exercise discretion over what properties are sold for taxes. This glancing and vague reference to an unwritten policy is not sufficient to satisfy Plaintiffs' obligation to identify a "specific policy" leading to a disparate impact. *See, e.g.*, *Wells Fargo*, 314 F.Supp 3d 975 (plaintiffs plausibly alleged a disparate impact claim by alleging the exact techniques defendant used to "steer prime-eligible minority borrowers into nonprime loans"). The level of specificity alleged in *Wells Fargo* is adequate to state a disparate impact claim. In contrast, Plaintiffs here do not allege any specific policy or action by Defendants at all.

Moreover, even if Plaintiffs had named a specific policy by Defendants, they have not alleged that the policy is artificial, arbitrary, and unnecessary. Disparate impact liability mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies." *Inclusive Cmtys.* 576 U.S. 519 at 540. This demands consideration for the government's interest in enforcing the relevant policy. Even prior to the Supreme Court's discussion of "artificial, arbitrary, and unnecessary" policies, the Seventh Circuit considered the government's interest in its policy when determining disparate impact liability. *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1293 (7th Cir. 1977). In such an analysis, "if the defendant is a governmental body acting within the ambit of legitimately derived authority, we will less readily find that its action violates" the FHA. *Id*. The tax sale process and indemnity fund are administered pursuant to state law, and the Treasurer does not have discretion to not hold the tax sale, an outcome Plaintiffs seemingly seek in their request for injunctive relief. Both the

state and County unquestionably have an interest in collecting lawfully levied taxes, including via the tax sale, a point which Plaintiffs do not contest. (ECF 53, ¶ 103.)

Plaintiffs do not allege that the state law itself leads to a disparate impact, but rather some policy or decision making by Defendants. To support this claim, they must allege the nature of Defendants' policy. Plaintiffs have failed to sufficiently allege a specific and arbitrary or unnecessary policy of Defendants to support their disparate impact theory and have thus failed to state a claim under either the FHA or ICRA.

### iii. Plaintiffs have not alleged facts to satisfy the robust causation required to state a claim based on a disparate impact theory.

Finally, Plaintiffs have failed to allege that any actions by Defendants cause or have caused a disparate impact. Generally, any claim under the FHA requires proximate cause. *Bank of Am. Corp. v. City of Miami, Fla.,* 581 U.S. 189, 201 (2017). However, a disparate impact claim under the FHA requires a showing of causation beyond proximate cause and must allege a true causal connection. In recognizing a disparate impact claim under the FHA, the Supreme Court stated that a "robust causality requirement ensures that racial imbalance does not, without more, establish a *prima facie* case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities* 576 U.S. 519 at 542. "If a statistical discrepancy is caused by factors other than the defendant's policy, then plaintiff cannot establish a *prima facie* case, and there is no liability." *Id*. at 527. "Thus, 'a plaintiff who fails to allege facts at the pleading stage[…] demonstrating a causal connection' between the identified disparity and the complained of policy 'cannot make out a *prima facie* case of disparate impact.'" *Wells Fargo* at 991, citing *Inclusive Cmtys.* at 542.

Here, Plaintiffs fail to allege any facts to establish either proximate cause or the robust causality required to state a disparate impact claim. Plaintiffs appear to allege that their damages

arise from the alleged failure to adequately compensate property owners via the indemnity fund after a tax deed is issued on their property. The Clerk has no involvement whatsoever in the administration of the indemnity fund and Plaintiffs cannot show any causal connection between any action by the Clerk and the alleged disparity. As to the Treasurer and the County, Plaintiffs have not stated a causal relationship because they fail to account for the fact that Defendants do not control which property owners are delinquent in their taxes and thus eligible for the tax sale and potentially qualified to bring a petition against the indemnity fund. Even if the court assumes that Plaintiffs' reference to Defendant Pappas's alleged use of discretion, ECF 53, ¶ 83, is specific enough to support their claim, Plaintiffs do not even attempt to explain *how* the unwritten policy creates a disparity at some point *after* it is determined which properties are delinquent. Without allegations to illustrate how Defendants' policies caused the alleged disparity, Plaintiffs fail to state the third element of a disparate impact claim.

### B. Plaintiffs do not allege any facts to support a disparate treatment claim.

"Disparate treatment is just another way of saying intentional discrimination." *TBS Grp., LLC v. City of Zion*, 2017 U.S. Dist. LEXIS 183060, *11 (N.D. Ill. 2017). To adequately plead a disparate treatment claim, Plaintiffs must plausibly allege "a discriminatory motive through either direct or circumstantial evidence." *Id*. Alleged disparate treatment must involve "treating [the plaintiff] worse than others who are similarly situated" intentionally. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1740 (2020)[2]. "To survive a 12(b)(6) motion, a complaint alleging disparate treatment 'need only aver that the employer instituted a (specified) adverse [housing] action against the plaintiff on the basis of' a specified protected class." *Anderson v. Twin Rest. Oakbrook, LLC*, 2021

---

[2] *See Allen v. Muriello*, 217 F.3d 517, (7th Cir. 2000) ("The mental element required to make out a disparate treatment claim under Title VIII of the Fair Housing Act is the same as that required under Title VII of the Civil Rights Act of 1964.")

U.S. Dist LEXIS 132302, *21 (N.D. Ill. 2021); *quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Here, Plaintiffs fail to satisfy even that requirement.

Rather than identifying any specific discrete action taken by Defendants for the purpose of discrimination, Plaintiffs base their disparate treatment claims entirely on Defendants' alleged knowledge that the tax sale has a disparate impact. (ECF 53 ¶ 157, 166.) Even if Plaintiffs had adequately pled a disparate impact (and as discussed above, they have not), Defendants' alleged knowledge of a disparate impact is not sufficient to support a claim for disparate treatment. *See Chi. Teachers Union v. Bd. of Educ. of Chi.*, 14 F.4th 650, 658 (7th Cir. 2021). In order to succeed under a disparate treatment theory based on Defendants' knowledge of a disparate impact, Plaintiffs must also show that Defendants actually chose to take an action "at least in part *because of...its adverse effects upon an identifiable group.*" *Bank of America*, 584 F. Supp. 3d 562 at 572 (emphasis in original); *quoting Alston v. City of Madison*, 853 F.3d 901, 907 (2017); *Chi. Teachers Union v. Bd. of Educ. of Chi.*, 14 F.4th 650, 658 (7th Cir. 2021). Plaintiffs' SAC does not allege that Defendants actively chose to administer the tax sale process or the indemnity fund because it would have a discriminatory effect on Black or Latino property owners. Nor does the SAC allege any specific actions by Defendants at all, aside from general statements that they administered the tax sale. "This type of pleading 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Banks v. LoanCare LLC*, 2019 U.S. Dist. LEXIS 173412 (N.D. Ill. 2019); quoting *Iqbal* at 678-79.

Moreover, Plaintiffs fail to allege that similarly situated non-Black or non-Latino property owners who were eligible for the tax sale were excluded from the sale or otherwise treated differently because of their race. *See Wigginton v. Bank of Am. Corp.*, 770 F.3d 521, 522 (7th Cir. 2014) (allegation that someone else has been treated differently is essential to FHA complaint).

11

Plaintiffs' only attempts at comparison amount to statistics about the racial demographics of Cook County and the rates of home ownership, neither of which shed any light on the tax sale. (ECF 53, ¶ 110 105.) Statistics alone, with no similarly situated comparators, are rarely sufficient to show a discriminatory purpose, and Plaintiffs would still have to show exactly what policy of Defendants caused the statistical outcome on which they rely. *Alston*, 853 F.3d 901 at 907-908.

Finally, Plaintiffs have failed to adequately allege Defendants' actions proximately caused their alleged injuries. "Proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged'." *City of Miami,* 581 U.S. 189 at 202. "In the context of the FHA, foreseeability alone does not ensure the close connection that proximate cause requires." *Id*. Plaintiffs' alleged injury was not caused by actions of Defendants, who did not create the tax sale process and did not cause Plaintiffs to be eligible for the tax sale.

Plaintiffs have failed to adequately identify a policy of Defendants' that would support their claims for disparate impact; they have similarly failed to identify any action taken by Defendants based on race. Plaintiffs' SAC does not contain a single allegation that Defendants implement the tax sale with the intention of discriminating against Black and Latino owners. Their FHA and ICRA claims based on the disparate treatment theory must therefore be dismissed.

## II. Plaintiff Bell and the members of proposed Class B and Subclass B lack standing to assert a claim.

Bell lacks standing to seek prospective injunctive relief on behalf of himself and proposed Class B and Subclass B based on the delinquent status of his property taxes. (ECF 53, ¶ 133.) "To have standing, a plaintiff must allege and ultimately show: (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. A plaintiff bears the burden of showing that she has standing for each form of relief sought." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir.

2017). A plaintiff seeking prospective injunctive relief has standing only if he faces a "real and immediate threat of future injury," not a threat that is "merely 'conjectural or hypothetical.'" *Id.*, *quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The Seventh Circuit has found a potential injury that is contingent upon the plaintiff's future unlawful activities does not constitute a real and immediate future threat. *See id.*; *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974) (when determining standing for future harm, courts assume litigants will act lawfully).

First, Bell has not suffered any injury in fact. Bell alleges that the back taxes on his home due in 2017 were sold at the tax sale and that he did not redeem his taxes within the statutory time period. (ECF 53, ¶ 16-17.) However, the tax buyer who purchased Bell's back taxes successfully moved to vacate the sale and never obtained a tax deed. (ECF 53, ¶ 17.) Bell therefore did not lose ownership of his property or any of the equity in the property.

Moreover, Plaintiff Bell's allegations do not support a finding that he is threatened with real and immediate harm. He asserts that the 2017-2020 delinquent taxes will "invariably be sold again" at the tax sale in 2024. (ECF 53, ¶ 18-20.) Bell does not face an immediate threat of future injury because he could avoid any injury by complying with the assessment and collection of property tax, which he concedes is lawful . Even if Bell's property taxes do remain delinquent, he would not suffer the loss he alleges unless and until (1) his taxes are actually sold, (2) he fails to redeem the taxes in the two and a half years following the sale, (3) the tax buyer seeks a tax deed, (4) the tax deed is granted, (5) the tax buyer perfects its ownership by recording the tax deed, and (6) Bell indeed loses equity in the property; and (7) Bell files an indemnity fund petition; and (8) the petition is denied. Any one of these events may not transpire. Even if all those events were to take place, Bell would not incur a loss until 2027 at the earliest. In other words, merely being delinquent on one's taxes does not mean a losing one's equity is a "real and immediate threat."

13

Just as Plaintiff Bell lacks standing, the members of the proposed class and subclass he purports to represent also lack standing to bring the claims alleged in the SAC. The proposed Class B members are all people who "(1) own or are or were the beneficial owners of residential real property in Cook County, Illinois; and (2) the taxes on such property were not timely paid." (ECF 53, ¶ 121-122). The proposed Subclass B members are "all persons who are members of Class B who are Black or Latino." (ECF 53, ¶ 122). The members of this proposed class have suffered no injury. Their taxes have not been sold, a tax deed has not been issued, and they have not lost any equity in their property. Plaintiff Bell has not alleged any injury in fact on their behalf. Furthermore, they, like Bell, are not facing a real and immediate threat of injury. These individuals could become current on their taxes or sell their property before the tax sale occurs, they could redeem their taxes after they are sold to a buyer, or the buyer could vacate the sale, like the buyer previously did for Plaintiff Bell. See 35 ILCS 200/21-310 (authorizing a county circuit court to vacate a tax sale upon application by the buyer). There is no way to know or even speculate whether any of these individuals will be subject to the tax sale at all, let alone whether they will eventually have a tax deed issued against their property and lose ownership of their property. Because the alleged injuries of this proposed Class and Subclass are entirely theoretical, the proposed class and subclass members lack standing to bring a claim under all Counts of the SAC.

Plaintiff Bell and the proposed members of Class B and Subclass B have not alleged an injury in fact or a sufficient threat of future injury and therefore lack standing to bring any of the claims alleged in the SAC.

### III. Plaintiffs' claims under ICRA must be dismissed pursuant to the Tort Immunity Act.

Defendants are immune from liability for the alleged violations of the ICRA under the Illinois Local Governmental and Governmental Employees Immunity Act, 745 ILCS 10/2-100, *et*

*seq.* ("the TIA"). The TIA provides various immunities to state and local government for certain official actions. Under 745 ILCS 10/2-103, "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Here, Plaintiffs seek to hold Defendants liable for adopting and enforcing the tax code as prescribed by state law. Section 2-103 of the TIA applies to bar Plaintiffs' claims under the ICRA. *See, e.g., Collins v. Bd. Of Educ.*, 792 F.Supp. 2d 992, 999 (N.D. Ill. 2011) (dismissing plaintiff's claims of constitutional violations under ICRA to the extent they sounded in tort); *But cf. Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶¶31-32 (2017) (declining to answer whether TIA bars claims under Illinois Human Rights Act); *Howard v. Cook Cnty. Sheriff's Off.*, 2022 U.S. Dist. LEXIS 80848, *49-53 (N.D. Ill. 2022).

> In addition, section 2-201 of the TIA states:
>
> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

Thus, even if Plaintiffs could show that Pappas's acts of discretion amounted to a policy for purposes of ICRA disparate impact liability, and that the policy caused a disparate impact, Pappas would be immune from suit under the TIA. Immunity under this provision also extends to municipalities for their officials' discretionary policy decisions via section 2-109 of the Act. *Weiler v. Vill. of Oak Lawn*, 86 F.Supp. 3d 874, 884-885 (N.D. Ill. 2014), *citing Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 229 (2007). Therefore, Plaintiffs' claims under the ICRA must be dismissed.

WHEREFORE, Defendants respectfully request that this Court dismiss Counts IV and V of Plaintiffs' Second Amended Complaint with prejudice; dismiss all claims asserted by Plaintiff Bell and the proposed Class B and Subclass B; and award any further relief that this Court deems just and proper.

        Respectfully submitted,

        KIMBERLY FOXX
        State's Attorney of Cook County

By:   /s/ *Megan Honingford*
        Megan Honingford
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-3630
        megan.honingford@cookcountysao.org

        Kaitlin McKenzie
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-3115
        kaitlin.mckenzie@cookcountysao.org

        Kathleen Murphy
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-1064
        kathleen.murphy@cookcountysao.org

        Anthony O'Brien
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-7949
        anthony.obrien@cookcountysao.org

        Prathima Yeddanapudi
        Assistant State's Attorney
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-5463
        prathima.yeddanapudi@cookcountysao.org