**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MICHELLE KIDD and GOYCE H. RATES, individually and on behalf of all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA, individually,<br><br>       Plaintiffs,<br><br>v.<br><br>MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois, and Trustee of the Indemnity Fund, and COOK COUNTY, ILLINOIS,<br><br>       Defendants. | Case No. 1:22-cv-7061<br><br>Hon. Matthew F. Kennelly |

**MOTION AND MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION– FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

I.    FACTUAL AND LEGAL BACKGROUND. ................................................... 2

II.    THE INDIVIDUAL NAMED PLAINTIFFS ................................................ 5

III.   ARGUMENT ................................................................................................. 7

      A.    The Proposed Class Satisfies Each Requirement of Rule 23(a) ............................ 8

            1.    Rule 23(a)(1): The class is sufficiently numerous. .................................. 8

            2.    Rule 23(a)(2): Class members' claims present common questions. ........... 8

            3.    Rule 23(a)(3): Plaintiffs' claims are typical of proposed class members'............................................................................................... 9

            4.    Rule 23(a)(4): Plaintiffs and Their Counsel Are Adequate. ..................... 10

      B.    The Requirements of Rule 23(b)(3) Are Satisfied. ............................................. 12

            1.    Common Issues Predominate Over Individualized Issues. ....................... 12

                 a.    Just Compensation is Determined Based on Equitable Principles.................................................................................. 13

                 b.    Fair Market Value is the Starting Point, But Courts Are Free to Adapt the Proper Measure as Necessary to Remedy the Wrong. ............................................................ 14

                 c.    Using the Assessor's Fair Cash Value Estimates Overcomes Valuation Problems and Provides a Reliable Measure of Fair Market Value .................................................. 15

                 d.    Individual Proceedings as an Alternative. ................................... 21

            2.    A Class Action is A Superior Means of Resolving This Dispute. ............. 22

      C.    The Court Should Certify an Issues Class Under Rule 23(c)(4) if it Declines to Certify the Class Under Rule 23(b)(3)........................................... 23

CONCLUSION.......................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*257-261 20th Avenue Realty, LLC v. Roberto*,
477 N.J. Super. 339, 307 A.3d 19 (App. Div. 2023), *aff'd as modified,* 2025
N.J. LEXIS 2 (Jan. 9, 2025)..................................................................................15

*A.A. Profiles, Inc. v. City of Fort Lauderdale*,
253 F.3d 576 (11th Cir. 2001) ...............................................................................13

*Andrews v. Plains AllAm. Pipeline, L.P.*,
2018 U.S. Dist. LEXIS 177797, 2018 WL 2717833 (C.D. Cal. Apr. 17, 2018) .....................18

*Arkansas Game & Fish Comm'n v. United States*,
736 F.3d 1364 (Fed. Cir. 2013)..............................................................................20

*Beaver Street Investment, LLC v. Summit County, Ohio*,
65 F.4th 822 (6th Cir. 2023) ..................................................................................15

*Bell v. PNC Bank, N.A.*,
800 F.3d 360 (7th Cir. 2015) ..............................................................................8, 25

*Bennett v. Dart*,
53 F.4th 419 (7th Cir. 2022) ..................................................................................23

*Brand v. Comcast Corp.*,
302 F.R.D. 201 (N.D. Ill. 2014) (Kennelly, J.)........................................................25

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) .................................................................................24

*Cavaluzzi v. Cnty. of Sullivan*,
2024 U.S. Dist. LEXIS 233501 (S.D.N.Y. Dec. 27, 2024) ......................................15

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
797 F.3d 426 (7th Cir. 2015) ...................................................................................7

*City of Chi. v. Sessions*,
No. 17 C 5720, 2017 U.S. Dist. LEXIS 169518 (N.D. Ill. Oct. 13, 2017) ..............14

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................................21

*Eastman Kodak Co. v. Southern Photo Materials Co.*,
273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927)..................................................20

*Evenson v. Evenson*,
2022 U.S. Dist. LEXIS 221378 (N.D. Ill. Dec. 12, 2022) .......................................................18

*Grashoff v. Adams*,
65 F.4th 910 (7th Cir. 2023) ...................................................................................................21

*Hudgins v. Bd. of Educ.*,
2024 U.S. Dist. LEXIS 71781 (N.D. Ill. Apr. 19, 2024) (Kennelly, J.) ...........................10, 21

*Jacks v. Directsat USA, LLC*,
118 F.4th 888 (7th Cir. 2024) .................................................................................................23

*Jefferson v. Ingersoll Int'l Inc.*,
195 F.3d 894 (7th Cir. 1999) ..................................................................................................21

*Kakos v. Butler*,
2016 IL 120377 (Ill. 2016).......................................................................................................4

*King Sykes LLC v. City of Chicago*,
2024 U.S. Dist. LEXIS 30394 (N.D. Ill. Feb. 22, 2024) .........................................................14

*Kirby Forest Indus. v. United States*,
467 U.S. 1 (1984)....................................................................................................................14

*Lemoine v. Travelers Home & Marine Ins. Co.*,
2013 U.S. Dist. LEXIS 161531 (N.D. Ill. Nov. 13, 2013).......................................................18

*Lemon v. International Union of Operating Eng'rs, Local No. 139*,
216 F.3d 577 (7th Cir. 2000) ..................................................................................................21

*Lily Lake Road Defenders v. County of McHenry*,
156 Ill. 2d 1 (1993) ..................................................................................................................4

*Lynch v. Multnomah Cnty.*,
2024 U.S. Dist. LEXIS 233277 (D. Ore. Dec. 27, 2024) .........................................................15

*Melvin v. Sequencing, LLC*,
344 F.R.D. 231 (N.D. Ill. 2023)................................................................................................7

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ..................................................................................................12

*Missouri v. Jenkins*,
515 U.S. 70 (1995)..................................................................................................................14

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)..................................................................................................................9

iii

*Mullins v. Direct Digital, LLC,*
795 F.3d 654 (7th Cir. 2015) ..................................................................................8, 22

*Mulvania v. Sheriff of Rock Island Cnty.,*
850 F.3d 849 (7th Cir. 2017) ........................................................................................7

*Muro v. Target Corp.,*
580 F.3d 485 (7th Cir. 2009) ........................................................................................9

*Olson v. United States,*
292 U.S. 246 (1934)....................................................................................................14

*Palazzolo v. Rhode Island,*
533 U.S. 606 (2001)....................................................................................................14

*People v. Bohenek,*
2020 IL App. (2d) 170545 (2nd Dist. Cit. App. 2020) ................................................4

*Relf v. Shatayeva,*
2013 IL 114925 (Ill. 2013)............................................................................................5

*Santiago v. City of Chicago,*
19 F.4th 1010 (7th Cir. 2021) .....................................................................................10

*Schroeder v. Progressive Paloverde Ins. Co.,*
713 F. Supp. 3d 523 (S.D. Ind. 2024) ........................................................................20

*Scott v. Dart,*
99 F.4th 1076 (7th Cir. 2024) .........................................................................9, 21, 22

*Sharritt v. Henry,*
2024 U.S. Dist. LEXIS 189825 (N.D. Ill. Oct. 18, 2024)......................................4, 23

*Smith-Brown v. Ulta Beauty,*
335 F.R.D. 521 (N.D. Ill. 2020)..................................................................................23

*Streeter v. Sheriff of Cook County,*
256 F.R.D. 609 (N.D. Ill. 2009)..................................................................................12

*Top Metal Buyers, Inc. v. Lopinot,*
3:23-cv-01073-NJR, dkt. 41 (S.D. Ill.) .......................................................................23

*Trabert & Hoeffer, Inc. v. Piaget Watch Corp.,*
633 F.2d 477 (7th Cir. 1980) ......................................................................................20

*Turner v. Murphy Oil US,*
2006 WL 91364 (E.D. La. Jan. 12, 2006)...................................................................17

*Tyler v. Hennepin County*,
    598 U.S. 631 (2023) ................................................................................................ *passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................................12, 21

*United States v. Commodities Trading Corp.*,
    339 U.S. 121 (1950) .......................................................................................................13

*United States v. Fuller*,
    409 U.S. 488 (1973) .................................................................................................13, 14

*United States v. Virginia Electric & Power Co.*,
    365 U.S. 624 (1961) .......................................................................................................14

*In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*,
    162 Fed. Cl. 495 (2022) .................................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................................................8

*Young Soo Koo v. McBride*,
    124 F.3d 869 (7th Cir. 1997) .........................................................................................14

**Statutes**

5 ILCS 200/21-160 ...................................................................................................................5

35 ILCS 200/1-50 ...............................................................................................................2, 15

35 ILCS 200/9-155 .............................................................................................................2, 15

35 ILCS 200/21-15 ..................................................................................................................2

35 ILCS 200/21-160 ...........................................................................................................3, 19

35 ILCS 200/21-180 ............................................................................................................2, 3

35 ILCS 200/21-190 ................................................................................................................3

35 ILCS 200/21-205 ................................................................................................................3

35 ILCS 200/21-240 ................................................................................................................3

35 ILCS 200/21-250 .........................................................................................................3, 4, 5

35 ILCS 200/21-251 ................................................................................................................5

35 ILCS 200/21-252 ................................................................................................................5

v

35 ILCS 200/21-350(b) ........................................................................................................4

35 ILCS 200/21-440 ...........................................................................................................3

35 ILCS 200/22-5 ...............................................................................................................6

35 ILCS 200/22-30 .............................................................................................................5

35 ILCS 200/22-40 .............................................................................................................4

735 ILCS 5/7-30/10/5/5 ......................................................................................................4

735 ILCS 5/12-101 .............................................................................................................3

735 ILCS 5/15-1504.5(5) ....................................................................................................3

735 ILCS 5/15-1512 ...........................................................................................................3

18 U.S.C. § 983 ................................................................................................................21

**Rules**

Fed. R. Civ. P. 23(a) .................................................................................................1, 7, 10

Fed. R. Civ. P.  23(a)(1) ......................................................................................................7

Fed. R. Civ. P.  23(a)(3) ......................................................................................................9

Fed. R. Civ. P.  23(a)(4) ......................................................................................................9

Fed. R. Civ. P. 23(b)(3) ............................................................................................1 7, 12, 22

Fed. R. Civ. P.  23(c)(4) ......................................................................................................7

Fed. R. Civ. P. 23(d)(2) ......................................................................................................20

Fed. R. Civ. P. 23(d)(5) ......................................................................................................20

Fed. R. Civ. P. 23(g) ...........................................................................................................1

Fed. R. Evid. 201 ................................................................................................................7

vi

**Other Authorities**

7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* §1778
    (3d ed. 2005) ........................................................................................................................12

U.S. Const., amends. V, VIII ..............................................................................................1

Illinois Constitution, Art. I, Sec. 5 ....................................................................................4

Cook County Municipal Code, Sec. 74-64 .........................................................................2

Plaintiffs Michelle Kidd and Goyce Rates move the Court to certify a class under Fed. R. Civ. P. 23(a) and (b)(3), or in the alternative, to certify a class to determine particular issues under Rule 23(c)(4), to be appointed as representatives for the class, and for appointment of the undersigned as counsel for the class pursuant to Fed. R. Civ. P. 23(g).

## INTRODUCTION

Defendants Cook County and its Treasurer have together uniformly exercised policy choices that deprive Plaintiffs and putative class members of the remaining equity in their homes—*i.e.*, the difference between their tax debts and their homes' value—without providing any compensation for that confiscated equity.

In so doing, Defendants violated both the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause. U.S. Const., amends. V, VIII. Defendants' conduct, which disregards both Illinois law and the Supreme Court's unequivocal holding in *Tyler v. Hennepin County,* 598 U.S. 631 (2023) that such conduct is unconstitutional, has deprived at least 1,700 class members of their remaining equity without just compensation. Defendants had the right to take the class members' homes, but not their remaining equity. Defendants' illegal conduct exacerbated the class members' already dire financial circumstances by depriving them of their most (and sometimes only) significant asset: home equity that could have been used to secure replacement housing after they lost their homes through the tax sale process.

The constitutionality of Defendants' policy choices and practices, and the validity of any defenses to such policies and practices, is common to the entire proposed class. Defendants exercised the *same* policy choices in the *same* manner with respect to the *entire* proposed class. Plaintiffs accordingly move to certify a class of former homeowners who were deprived of their surplus equity without compensation. Alternatively, Plaintiffs request that the Court certify issues classes under Rule 23(c)(4) to resolve the common questions which predominate.

1

## I.      FACTUAL AND LEGAL BACKGROUND.

Defendant Pappas, the Treasurer, describes the relevant portions of the County's system of property assessment, taxation and collection in a publication entitled "How the Illinois Property Tax System Works" by Office of Cook County Treasurer Maria Pappas, April 2024. Ex. A at 11, 12, 14, 23, 24 (Pappas Publication). The process begins with the tri-annual assessment by the Cook County Assessor's Office. Every three years, "[t]he CCAO produces fair market values for properties as of January 1 of that year. Values are finalized by the Cook County Board of Review after appeals have concluded with the CCAO and the Board of Review." Ex. B at 3 (Cook County Property Tax System, Gottner Dep. Exhibit 2); Ex. C (Deposition Transcript of Cook County Assessor 30(b)(6) Raymond Gottner, dated 9/13/2024) at 29:5-8. The amount of tax on each residential property is based on each property's assessed fair cash value. 35 ILCS 200/9-155; Cook County Municipal Code, Section 74-64. The Assessor regards fair market value and fair cash value as being "identical" and "[t]hese terms are used interchangeably." Ex. C, (Gottner Dep.) at 27; 35 ILCS 200/1-50 (defining fair cash value).

Defendant Pappas issues tax bills to the homeowners in Cook County. If residential property owners do not pay their tax bills in full by the due date, their taxes are in default and they have typically been charged a penalty interest rate of 1.5 percent per month, or 18% annually, of the total bill per month. The penalty was reduced to .75% per month, or 9% annually, in 2024. 35 ILCS 200/21-15.

If the taxes remain unpaid for 13 months, Defendant Pappas petitions for and obtains a judgment and order of sale against the property for the amount of delinquent taxes, interest, penalties and costs due. *See* Ex. D (Sample Petition) for an example of this petition. The authorizing statute limits the judgment against the property requested in the petition to the amount of the taxes, interest, penalties and costs due ("tax debt"). 35 ILSC 200/21-180.

After obtaining a judgment, the Illinois Property Tax Code affords Defendants a choice between two methods of collection. The County can sue the owner individually for the taxes (35 ILCS 200/21-440), a "statutory" option that was not used against any class member, although its availability as an option is not disputed.[1] Alternatively, the County may—as it did here with respect to every class member—place the homes into the annual tax sale. 35 ILCS 200/21-160, 21-190, 21-205.

Had Defendants elected the "statutory option" under 21-440 and obtained an *in personam* judgment against each class member, this lawsuit would not have been filed. The County would have had the normal remedies available to a judgment creditor, such as forcing an auction of the home, in which case the homeowner would have received any excess proceeds above the tax debt. *See, e.g.,* 735 ILCS 5/15-1504.5(5). Because the tax judgment being enforced, and recovery in the suit to enforce it, are limited to the amount of the tax debt, there would have been no confiscation of the homeowner's remaining equity. 35 ILSC 200/21-180; 35 ILCS 200/21-440; 735 ILCS 5/12-101; 735 ILCS 5/15-1512.

Instead, Defendants chose to place each class member's home into the annual tax sale, resulting in the sale of each home to an investor, or "tax buyer." 35 ILCS 200/21-160, 21-190, 21-205. In the annual sale, the tax buyer paid the County the past due tax amounts. In exchange, Defendants granted the tax buyer a lien on the property entitling it to receive any payments in the future made by the homeowner to redeem the property - the past and subsequent taxes, plus penalties, interest and fees ("redemption amount"). 35 ILCS 200/21-240; 35 ILCS 200/21-250.

---

[1] The Treasurer's designated Rule 30(b)(6) witness, Justin Kirvan, Director of Policy for the Treasurer's office, described these two alternative methods for collecting delinquent Cook County property taxes as (1) the tax sale method, where homes with delinquent taxes are sold to tax buyers, and (2) the "statutory method" where the County sues the individual taxpayer responsible for real estate taxes. Ex. E (Deposition Transcript of Cook County Treasurer 30(b)(6) Justin Kirvan, dated 9/18/2024) at 8:8-11; 11:4-21.

3

The tax-buyer was also granted the right to a decidedly non-ordinary benefit: the right to take complete title to the home if the property owner did not redeem within the next 30 months by paying the back taxes and related charges. 35 ILCS 200/22-40.

In other words, if the homeowner did not pay the tax buyer the redemption amount within the redemption period, the tax buyer had the right to, and for each class member, *did*, obtain a "tax deed" conveying the property free-and-clear to the tax buyer. 35 ILCS 200/21-250; 35 ILCS 200/21-350(b); 35 ILCS 200/22-40. Accordingly, Defendants caused all the class members' homes to be conveyed by tax deed to tax buyers with the attendant loss of remaining equity.

Defendants could have paid, and indeed were mandated by state law to pay, compensation to the class members for the taking of their remaining equity. Both the Illinois state constitution – which trumps any contrary state statute -- and the state's eminent domain statute compelled them to pay just compensation for this confiscated equity. Illinois Constitution, Art. I, Sec. 5 ("Private property shall not be taken or damaged for public use without just compensation as provided by law."); 735 ILCS 5/7-30/10/5/5 ("Private property shall not be taken or damaged for public use without just compensation..."). Defendants, however, elected to pay nothing and thereby engaged in a taking of private property in violation of the Supreme Court's mandate that "[t]he taxpayer should render unto Caesar what is Caesar's, but no more." *Tyler v. Hennepin County,* 598 U.S. 631, 647 (2023*); see also Sharritt v. Henry*, 2024 U.S. Dist. LEXIS 189825, *48-49 (N.D. Ill. Oct. 18, 2024) (Illinois counties' choice not to pay just compensation when properties are subject to a tax deed properly alleges a violation of the Takings Clause).[2]

---

[2] To the extent Defendants maintain that the Property Tax Code purports to either compel or permit them to confiscate surplus equity without compensation, they are wrong. Illinois statutes like the Property Tax Code must be "construe[d] … in a manner that upholds [their] … constitutionality if it is reasonably possible to do so," *Kakos v. Butler*, 2016 IL 120377 ¶ 28 (Ill. 2016); *People v. Bohenek,* 2020 IL App. (2d) 170545, ¶ 28 (2ⁿᵈ Dist. Cit. App. 2020), and separate statutes must similarly be interpreted to harmonize them with each other and the Constitution. *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993);

4

Defendants' confiscation of remaining equity also constitutes an excessive fine in violation of the Eighth Amendment to the United States Constitution. *Tyler*, 598 U.S. at 648-49 ("Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive.") (Gorsuch, J., concurring).

Plaintiffs' class definition includes only "equity" class members whose assessed values exceeded their associated tax debt. It does not include "no equity" class members. All class members were deprived of all right, title and interest in their homes, and every class member's property was worth more than the tax, interest, penalties and fees owed. *See* Dkt. 65-66, at 3, ¶ 3 (Defendants' Answers to Second Amended Complaint "admit[] that … a homeowner may [] be divested of property and risk the loss of equity exceeding the delinquent taxes[.]") The individual plaintiffs are examples of class members who lost equity in amounts that were many multiples of their unpaid tax.  (*See* Section II, *infra*)

Class members are easily identified because the Cook County Clerk documents each step of the tax sale process, and maintains definite, accurate, readily-accessible records of each sold tax certificate, assessed market value, and tax deed. 5 ILCS 200/21-160; 35 ILCS 200/21-250; 35 ILCS 200/21-251, 21-252; 35 ILCS 200/22-30; *see also* Ex. S ( Deposition Transcript of Cook County Clerk 30(b)(6), Guadalupe Garcia, dated 9/24/2024) at 28:21-29:31, 30:16-50:4.

## II.    THE INDIVIDUAL NAMED PLAINTIFFS

Plaintiffs Michelle Kidd and Goyce Rates owned homes in Cook County. They are two people who lost their homes in the process described above. They were unable to and therefore did not pay their property taxes when due. The Treasurer obtained judgment against their properties

---

*Relf v. Shatayeva*, 2013 IL 114925, ¶ 39 (Ill. 2013). Defendants do have the *option* to take the class members' equity, but the Property Tax Code requires them to pay for it.

*limited to* the amount of their tax debts. Defendants then elected not to file an *in personam* suit to collect the debt and instead placed each property in the annual tax sale. The Treasurer issued Certificates of Purchase on the Plaintiffs' properties, entitling the tax buyers to receive an unconditional tax deed on the properties if the Plaintiffs did not timely redeem, extinguishing Plaintiffs' entire interest and equity in the properties. 35 ILCS 200/22-5.

Plaintiffs were unable to redeem, and, Plaintiffs' homes were confiscated via tax deeds, with Rates evicted on the Monday before Thanksgiving in 2023. (Ex. L, Deposition Transcript of Michelle Kidd, September 12, 2024 at 23-25; Ex. I, Deposition Transcript of Goyce Rates, September 10, 2024 at 14-15, 131-34, 143-44.) When Plaintiffs' homes were taken from them, their homes were worth multiples of the unpaid taxes and related charges. Nevertheless, Defendants chose to disregard their obligations under the state constitution and eminent domain statute to pay compensation and refrain from charging excessive fines for Plaintiffs' inability to pay their property taxes. The Judgment and Warrant Book kept by the Clerk of Cook County records that the tax debt on the property as of the date of the tax deed issuance less than the value of each Plaintiff's property.[3]

---

[3] Michelle Kidd's property was sold for taxes on April 4, 2017 for $2,340.44. Ex. G (Judgment Book records at Bates No. CLERKPIC_1918). Ms. Kidd did not redeem and the tax buyer spent approximately $1,522.10 in fees and $13,720.81 in back taxes prior to being issued a tax deed on October 2, 2021. *Id.* Considering all costs, the tax buyer paid $17,583.35 to acquire her home. At the time the tax deed issued, the Cook County Assessor's records showed the fair cash value of the property as $166,220. Ex. H (Cook County Assessor records (showing a final assessed value of $16,622 in 2021, which by law is 1/10th of the property's fair market value)).

Goyce Rates' property was sold on April 4, 2017 for $9,025.44. Ex. G (Judgment Book Records, at Bates No. CLERKPIC_1922). (Ms. Rates' property is split across two parcels with separate PINs, 10-24-419-005-0000 and 10-24-419-006-0000, and each parcel's taxes were sold separately. *Id.*) Ms. Rates did not redeem, and the tax buyers spent $3,433.98 on fees and $10,195.00 on back taxes prior to being issued a tax deed. *Id.*; *see also* Ex. S (Garcia Dep.) at 71:14-24. A tax deed was issued on May 16, 2023, with a second deed issued for the other half of the property on June 5, 2023. Ex. I (Deposition Transcript of Goyce Rates) at 13:23-14:22, 71:1-72:14. Rates' tax sale resulted in the tax buyers spending $22,654.42

### III.    ARGUMENT

Plaintiffs seek certification on behalf of a class defined as follows:

> All persons or entities who meet the following criteria: (1) they owned or were the beneficial owners of residential real property in Cook County, Illinois in Residential Assessment Classes Major Class 2 and Class 3;  (2) the properties were sold in the Cook County annual tax sale; (3) a tax deed was issued to the purchaser of such property at any time on or after December 15, 2020 and not withdrawn; and (4) the Cook County Assessor's Office's assessed Fair Cash Value as of the time of tax deed's issuance exceeded the total amount of taxes, fees, and interest owed at the end of the redemption period.

The proposed class meets the requirements for certification under Rule 23(a) and 23(b)(3) because it satisfies the four prerequisites of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and predominance—and the requirements of Rule 23(b)(3). *See Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 433 (7th Cir. 2015). Classes seeking compensation are generally certified under Rule 23(b)(3), which requires common issues among class members to predominate over individualized ones and that a class action is a superior vehicle for resolving the dispute. *Melvin v. Sequencing, LLC*, 344 F.R.D. 231, 235 (N.D. Ill. 2023).

If the Court does not certify the class under Rule 23(b)(3), it can and should certify an issues class under Rule 23(c)(4) to address common questions. Plaintiffs describe issue certification in more detail below at in Section III.C.

---

to acquire the two parcels and her home. At the time the tax deed issued, the Cook County Assessor's records showed the fair cash value of each parcel comprising Rates property as $194,530. Ex. J (Cook County Assessor's PIN Property Details as $166,220); Ex. H (Cook County Assessor records (showing a final assessed value of $16,622 in 2021, which by law is 1/10th of the property's fair market value)) The Court may take judicial notice that these are the fair cash value amounts reflected on the Office of Assessors records for Plaintiffs' properties. Fed. R. Evid. 201.

7

A. **The Proposed Class Satisfies Each Requirement of Rule 23(a)**

1. *Rule 23(a)(1): The class is sufficiently numerous.*

The numerosity requirement is satisfied when joinder of all members of the proposed class "is impracticable." Fed. R. Civ. P. 23(a)(1). There is "no magic number[,]": even "a forty-member class is often regarded as sufficient." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). The Cook County Clerk and other Cook County officials have produced data identifying the owners of more than 1,700 properties satisfying the proposed class definition as of August 23, 2024.[4] Ex. F (List of Tax Deeds, Bates Nos. COUNTY_008189, CLERK_005775.) That number increases as more tax deeds continue to be issued. Thus, the class is sufficiently numerous, and all information needed to identify or ascertain each class member is readily available in public records. Joining these persons is impracticable, as they are scattered across the County and elsewhere, most having been forced to relocate after losing their homes.

2. *Rule 23(a)(2): Class members' claims present common questions.*

A proposed class satisfies Rule 23(a)'s commonality requirement if class members' claims share at least one common question of law or fact. A "common contention [is one] of such a nature that it is capable of class-wide resolution" and "determination of its truth or falsity will resolve an issue [] central to the validity of each one of the claims[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015). "[C]ommonality as to every issue is not required[.]" *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 381 (7th Cir. 2015).

---

[4] The spreadsheet and supplement produced by the Clerk indicate 2,733 tax deeds were issued since the end of 2017. This lawsuit was filed on December 15, 2022, and Plaintiffs' Section 1983 claims have a two-year statute of limitations. Accordingly, only tax deeds issued after December 14, 2020 qualify, thereby reducing the number of eligible class members by 942. The Clerk's records show that another nine otherwise-qualifying tax deeds were voided. That leaves 1,767 qualifying properties, including the homes formerly owned by Plaintiffs.

8

Each class member's claim presents the same fundamental constitutional question: Did the Defendants' policy choices and actions (i.e., causing the issuance of a tax deed when the owner's tax obligations are exceeded by the value of the property, without providing compensation for that remaining value) constitute a prohibited Taking under the Fifth Amendment and/or an Excessive Fine under the Eighth Amendment?

Embedded within this question are subsidiary legal questions, also common to the class:

- Did class members have a constitutionally protected property interest in the equity in their property?

- Did Defendants cause class members to be deprived of that equity?

- Were these actions a policy choice that constituted the moving force for the constitutional violation, per *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)?

- Does Defendants' failure to promptly and fully provide for the compensation of Plaintiffs and the class for the remaining equity in their forfeited homes constitute an uncompensated Taking of private property?

- What are the constitutional requirements and scope of providing just compensation to takings victims in this context?

- Was taking of surplus equity a "fine" for Eighth Amendment purposes?

- If so, were such fines "excessive"?

- Do the Defendants have a *Monell* policy resulting in Excessive Fines?

- What measure of just compensation is to be employed?

### 3. *Rule 23(a)(3): Plaintiffs' claims are typical of proposed class members'.*

Rule 23(a)(3)'s typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Scott v. Dart*, 99 F.4th 1076, 1091-92 (7th Cir. 2024) (quoting *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Factual distinctions between the claims of the named plaintiffs and

9

those of class members, including the types and extent of injuries suffered, are permissible where the "essential characteristics" of the case "knit the proposed class members together." *Id*. at 1092.

Plaintiffs' claims have the same essential characteristics as those of the proposed class. Like Plaintiffs, all class members fell behind on their property taxes, their properties were placed into the tax sale, they did not redeem before the statutory deadline expired, a tax deed was issued, the Assessor's fair cash value for each class member's property exceeded the property's tax debts, and they received no compensation for their loss of remaining equity. (Ex. G (Judgment Book records, Bates No. CLERKPIC_1918, 1922 and Affidavit of Daniel Schneider re: photographed records). Plaintiffs' Takings claims are typical of the class members' claims because they have suffered the same loss as every other class member by virtue of the Defendants' same choices and actions.

Likewise, Plaintiffs' Excessive Fines claims are typical of the class members' claims because their "fines" all resulted from Defendants same course of conduct, featured the same loss of equity, and were imposed automatically and without regard to the factors that traditionally go into determining a proper, proportional punishment. Judged by the Assessor's fair cash values, the equity value each Plaintiff held in their properties at the time of each tax deed's issuance was well over $100,000. Whether as Plaintiffs contend, ***any*** taking of surplus equity without compensation—which is prohibited by *Tyler* and was prohibited by Illinois state law—is additionally "grossly disproportional" to the supposed harm as a matter of law is common to the class. Ex. K (Expert Report of William Hamm with exhibits, October 14, 2024), at 41-46.

### 4. *Rule 23(a)(4): Plaintiffs and Their Counsel Are Adequate.*

Under Rule 23(a), Plaintiffs must "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Courts evaluate "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members" as well as "the adequacy of the proposed class counsel."

10

*Hudgins v. Bd. of Educ.*, 2024 U.S. Dist. LEXIS 71781, *20 (N.D. Ill. Apr. 19, 2024) (Kennelly, J.) (internal quotations omitted). To be an adequate class representative, the "named plaintiff must be a member of the putative class and have the same interest and injury as other members." *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) (citation omitted).

Ms. Kidd and Ms. Rates are members of the class and suffered the same injuries through the same fact pattern as the rest of the proposed class. Their incentive to prosecute their Takings and Excessive Fines claims is aligned with that of the class members. They have no conflicts of interest in pursuing this action on behalf of the class, no interests antagonistic to the proposed class members, and they seek to secure for all members the constitutional protections to which they all are entitled. They have participated willingly and actively in this litigation responding to discovery requests and sitting for emotionally demanding depositions requiring them to relive the wrenching experience of losing their homes and equity and, in Rates' case, being evicted. Ex. L (Kidd Dep.) at 23-25; Ex. I (Rates Dep.) at 14-15, 131-34, 143-44.

Plaintiffs are represented by experienced, qualified counsel, including John Bouman, Lawrence Wood, and Daniel Schneider of Legal Action Chicago. Ex. M (Class Counsel CVs). They have substantial experience with class actions and constitutional law. Mr. Bouman was formerly the President of the Shriver Center for Poverty Law in Chicago; Mr. Wood has practiced housing law in Chicago for over thirty years; and Mr. Schneider previously worked as a class action litigator at Edelson PC before continuing his practice at Legal Action Chicago. *Id.* at pp. 1-11. Plaintiffs are also represented by Charles Watkins and David Guin of Guin & Evans, LLC, who have decades of class action experience in this Court and throughout the nation. Notably, Mr. Watkins originated the *Tyler* litigation, and along with Mr. Guin, is Co-Lead Counsel in *Tyler,* which recently settled for $109 million on behalf of a class of 7,000+ Minnesota property owners.

11

*Id.*, at pp. 11-25. Finally, Plaintiffs are represented by Brian Roche, a highly experienced trial lawyer. He recently retired as a partner at Reed Smith, LLP and is now Senior Counsel. *Id.*, at pp. 26-28. Plaintiffs' counsel have investigated the relevant facts and law, retained two expert witnesses, and litigated this action for over three years. They are experienced with class actions and complex litigation, and have the resources needed to represent the class.

### B. The Requirements of Rule 23(b)(3) Are Satisfied.

Rule 23(b)(3) permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) is typically used where, as here, monetary compensation is sought. As explained below, common questions predominate for Plaintiffs' Takings and Excessive Fine claims.

#### *1. Common Issues Predominate Over Individualized Issues.*

Common questions "predominate" if "a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (internal quotations omitted). The common nucleus of operative facts here is the Defendants' uniform series of policy choices and practices described above. "Individual questions need not be absent [for common issues to predominate]. The text of Rule 23(b)(3) itself contemplates that such individual issues will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.* Where, as here, "a proposed class challenge[d] a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 614 (N.D. Ill. 2009). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some

12

affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* §1778, at 123-124 (3d ed. 2005)).

Earlier in this brief Plaintiffs identified many common questions, the answers to which will resolve Defendants' liability. At the heart of this case are the common issues of whether the Takings Clause holding from *Tyler* applies to the Defendants' system of tax collection and equity forfeiture, and whether Defendants' taking of the Plaintiffs' and class members' remaining equity constitutes "fines" that are "excessive." These questions predominate over all other issues.

This is especially so because there is a formulaic and reliable class-wide way to resolve the only potentially individualized issue here: the amount of just compensation to which each class member is entitled. Plaintiffs' contention, common among all class members, is that they are entitled to "just compensation" equal to a reasonable estimate of the fair market value of what was taken from them, measured by the difference (at the time of the tax deed was issued) between the home's fair cash value and the tax obligations owed:

**FAIR CASH VALUE AT TIME OF TAX DEED
− TAX OBLIGATIONS OWED,
+ PREJUDGMENT INTEREST
= JUST COMPENSATION**

Plaintiffs' requested Excessive Fines relief is the same amount because they maintain that *any* penalty over and above the back taxes, interest, penalties and fees they owed is unconstitutionally excessive.

### a. Just Compensation is Determined Based on Equitable Principles

Determining how to measure just compensation is an equitable matter committed to the discretion of the court. "Just compensation" is founded in "ideas of fairness and equity." *United States v. Commodities Trading Corp.*, 339 U.S. 121, 124 (1950). There are "no absolute standards

outside of the requirement that the compensation paid for a taking be 'just.'" *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 583 (11th Cir. 2001). Just compensation is determined according to the court's assessment of what is fair under the circumstances. *United States v. Fuller*, 409 U.S. 488, 490 (1973). The court's power to determine a just compensation methodology is part and parcel of its plenary power to remedy constitutional violations, and the "nature of the remedy must be determined by the nature and the scope of the constitutional violation." *City of Chi. v. Sessions*, No. 17 C 5720, 2017 U.S. Dist. LEXIS 169518 (N.D. Ill. Oct. 13, 2017) (quoting *Young Soo Koo v. McBride*, 124 F.3d 869, 873 (7th Cir. 1997)); *accord Missouri v. Jenkins*, 515 U.S. 70, 89 (1995). In sum, the Court has wide discretion to formulate a method of computing just compensation that is tailored to the circumstances.

**b.**      **Fair Market Value is the Starting Point, But Courts Are Free to Adapt the Proper Measure as Necessary to Remedy the Wrong.**

The goal of just compensation is to place the victim in the position they would have been in had there been no taking—that is, to provide make-whole relief. *Olson v. United States,* 292 U.S. 246, 255 (1934). This often involves calculating the fair market value of the property that has been taken. *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984) ("just compensation" is the "fair market value of the property on the date it is appropriated."); *King Sykes LLC v. City of Chicago*, 2024 U.S. Dist. LEXIS 30394, *39 (N.D. Ill. Feb. 22, 2024) ("When a taking has occurred, under accepted condemnation principles the owner's damages will be based upon the property's fair market value[.]") (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 625 (2001)).

The Supreme Court recognizes, however, that fair market value "is not an absolute standard nor an exclusive method of valuation" and that the measure must be adapted to the peculiar circumstances of each case. *United States v. Virginia Electric & Power Co.*, 365 U.S. 624, 633 (1961); *Fuller*, 409 U.S. at 490. This case does present such peculiar circumstances, specifically

14

difficulties in measurement created by the Defendants, who did not pay compensation when they should have. This is because (1) the fair market value of each taken property has to be measured as of the date in the past when the tax deeds issued when market conditions were different, years ago in many cases; and, (2) it is not possible to determine with precision the condition of homes as of a certain date in the past. As explained in the next section, the solution to this problem is Plaintiffs' proposed method, which uses Assessor fair cash value figures to determine the value of the properties as of the date of their taking (*i.e.*, the date each tax deed issued).[5]

> **c.**     **Using the Assessor's Fair Cash Value Estimates Overcomes Valuation Problems and Provides a Reliable Measure of Fair Market Value**

Plaintiffs propose using the fair cash value estimate the Assessor prepared and recorded as its official valuation for each class member's property when the tax deed was issued. From that, the taxes due are deducted and then prejudgment interest – a required element of just compensation – is added.

This is a reasonable and appropriate method of computing just compensation. Under the Property Tax Code, "fair cash value" is "[t]he amount for which a property can be sold in the due course of business and trade, not under duress, between a willing buyer and a willing seller." 35 ILCS 200/1-50. Illinois law requires that the Assessor, "in person or by deputy, shall actually view and determine as near as practicable the value of each property," 35 ILCS 200/9-155, and that these

---

[5] These cases support calculating just compensation as of the date of the issuance of the tax deed. *See, e.g., Beaver Street Investment, LLC v. Summit County, Ohio*, 65 F.4th 822, 827 (6th Cir. 2023) (equity taking accrued at expiration of redemption period); *Lynch v. Multnomah Cnty.*, 2024 U.S. Dist. LEXIS 233277, *26-27 (D. Ore. Dec. 27, 2024); *Cavaluzzi v. Cnty. of Sullivan*, 2024 U.S. Dist. LEXIS 233501, *24-26 (S.D.N.Y. Dec. 27, 2024) (compiling cases); *257-261 20th Avenue Realty, LLC v. Roberto,* 477 N.J. Super. 339, 350, 307 A.3d 19, 25 (App. Div. 2023), *aff'd as modified,* 2025 N.J. LEXIS 2 (Jan. 9, 2025) ("Under the TSL, a tax sale certificate holder possesses only an inchoate interest in a property owner's equity, as title is not vested until final judgment. The possibility of collecting equity only exists after judgment is entered and the right to redeem is extinguished.") (citation omitted).

values "fairly reflect market values."[6] The Assessor considers fair market value and fair cash value to be "identical". Ex. C (Gottner Dep.) at 27.

The Assessor estimates fair cash value using a Computer Assisted Mass Appraisal (CAMA) system, also referred to as an Automated Valuation Model (AVM), along with "skilled residential analysts to produce estimates of property values." *Id*; Ex. N at 8, 9 (Cook County Assessment PowerPoint, Bates No. County_008339). The model uses a multiple regression technique to create "a type of sales comparison average, a mathematical relationship between the value of your home and those of your neighbors. It follows similar steps that an appraiser would take when valuing a single-family home." Ex. B at 3 (Cook County Property Tax System, Gottner Dep. Exhibit 2); Ex. C (Gottner Dep.) at 33:12-34:2.

The Assessor "test[s] each model's accuracy by comparing the model's estimate of a home's value (based on its characteristics) to its actual sale price." The model uses around 70 different property characteristics and features. Ex. C (Gottner Dep.) at 59:7-14; 60-61;45-46; Ex. O (Valuation Model, Gottner Dep. Exhibit 5) at pp. 6-10 for list. Once the Assessor has selected the best performance statistical model "it uses it to estimate the values of all individual homes, those with and without a recent sale in a geographic area." Ex. C (Gottner Dep.) at 47:19-24. Once the model generates its fair market value estimates, "[t]he CCAO's analysts review these estimates neighborhood by neighborhood and correct individual properties' assessments as needed." *Id. at* 48:15-21. According to the Assessor, its office is meeting the IAAO standards for high quality assessments on a regular basis.[7] Mr. Gottner, the Cook County Assessor's Director of Residential

---

[6] Assessor website at https://www.cookcountyassessor.com/assessor-property-details, accessed on August 31, 2024 ("Assessments, under Illinois law, should fairly reflect market values.").

[7] Fritz Kaegi, "Our progress on ethics, fairness, and transparency in assessments — and a look ahead at 2021, remarks to the City Club of Chicago on March 2, 2021," available at https://medium.com/@AssessorCook/

Assessment, testified he is "not aware" of a superior mass appraisal model in existence. *Id.* at 49:22-50:6. All of the data and algorithms that comprise the system can be accessed for review and testing through the Assessor's website. *Id.* at 13:7-22.

CAMA valuation methods such as the Assessor uses are widely employed and relied on in government and private industry. Ex. Q (Uniform Standards of Professional Appraisal Practice). The Appraisal Standards Board of The Appraisal Foundation authorizes the use of such models for property valuation. Standards 5 and 6 of the Uniform Standards of Professional Appraisal Practice (USPAP) establish requirements for the development and reporting of mass appraisals.[8] The International Association of Assessing Officers ("IAAO") has published standards for measuring the fairness and accuracy of AVM's fair market value estimates. As pertinent to the class, the Assessor's office has met those standards for residential properties. Ex. R (2019 Cook County Sales Ratio Study, Gottner Dep. Exhibit 4) at 3 (2019 IAAO study found that Assessor's fair market value assessments for residential properties met standard for fairness and accuracy). Both Fannie Mae and Freddie Mac, which together account for approximately 70 percent of the $11.4 trillion United States mortgage market, permit – even encourage – the use of AVMs to value properties serving as collateral for mortgages they buy.[9]

---

our-progress-on-ethics-fairness-and-transparency-in-assessments-and-a-look-ahead-at-2021-80c88fe2c51a, accessed September 2, 2024. Ex. P (Medium publication, Cook County Assessor, "Our progress on ethics, fairness, and transparency").

[8] The Appraisal Standards Board (ASB) is responsible for writing, amending, and interpreting the Uniform Standards of Professional Appraisal Practice (USPAP). The USPAP is the generally recognized ethical and performance standard for the appraisal profession in the United States. It was adopted by Congress in 1989, and contains standards for all types of appraisal services, including real estate, personal property, business and mass appraisal (https://appraisalfoundation.org/imis/TAF/Standards/Appraisal_Standards/Uniform_Standards_of_ Professional Appraisal_Practice/TAF/USPAP.aspx). Ex.Q(Uniform Standards of Professional Appraisal Practice)

[9] National Association of Realtors, "Fannie Mae & Freddie Mac (GSEs)" (accessed at https://www.nar.realtor/fannie-mae-freddie-mac-gses on September 26, 2024) and "Value of Household Debt in the United States as of 3rd Quarter 2023, by Type" (https://www.statista.com/statistics/500814/debt-owned-by-consumers-usa-by-type/,

AVMs are widely accepted by courts across the country for valuing property in class action and other litigation to assist in calculating damages. *Turner v. Murphy Oil US,* 2006 WL 91364 (E.D. La. Jan. 12, 2006) (arising out of property damage that occurred adjacent to Hurricane Katrina); *Andrews v. Plains AllAm. Pipeline, L.P.,* 2018 U.S. Dist. LEXIS 177797, 2018 WL 2717833, at *6 (C.D. Cal. Apr. 17, 2018) (approving the use of mass appraisal methodology); see *Evenson v. Evenson,* 2022 U.S. Dist. LEXIS 221378, at *28, *30 (N.D. Ill. Dec. 12, 2022) (Judicial order in non-condemnation proceedings directed parties to discuss, among other things, how the fair market value of contested properties should be assessed, and explicitly naming "government tax assessor records" as one such method); *Lemoine v. Travelers Home & Marine Ins. Co.,* 2013 U.S. Dist. LEXIS 161531, at 10 (N.D. Ill. Nov. 13, 2013) (complaint against insurance company held to state a claim when supported in part by Lake County tax assessment demonstrating fair market value was larger than the insurance company's estimate).

> Plaintiff's damages expert, William Hamm, opines
>
> that the Cook County Assessor's fair market value estimates provide a reasonable, appropriate, reliable, and fair method for determining the value of the equity that Class Members lost when they were deprived of their property by the Defendant's actions. These estimates are sufficiently reliable to obviate the need for a separate, individualized assessment of each claimant's property value. The Court can have at least as much confidence in the Defendant's own estimates of fair market values as federal courts have in the models of the but-for world that experts present at trial in antitrust, patent, and commercial damages cases.

Ex. K (Report of William G. Hamm, October 14, 2024) at p. 34.[10]

It is also relevant as an equitable consideration that the Assessor numbers are the same fair market values used to set eleven figures' worth of Cook County property taxes, including class

---

accessed September 26, 2024).

[10] As set forth in his report, Dr. Hamm, is an experienced, well-credentialed expert in finance, property valuation, taxation, and municipal finance with extensive background in the private sector and government. Ex. K (Hamm Report) at 3-7; *id.* at Exhibits 3-4.)

18

members'. Plaintiffs simply propose using these same calculations used to allocate the tax burden in Cook County among taxpayers to calculate the relevant losses in this case. If the numbers are good enough for the Defendants to use, they are good enough for taxpayer class members to use.

The Assessor numbers are also reliable, as shown by the fact that the Assessor valuations were used as part of the material submitted to the Court to obtain the delinquency judgment against class members' property, and such valuations are required by law to be recorded in "annual tax judgment, sale redemption and forfeiture record". 35 ILCS 200/21-160.

Using assessed fair cash value to determine each property's fair market value is admittedly imperfect. The Assessor's fair cash values did not involve interior inspections and in some instances there was a time lag between the fair cash value calculation and the date the tax deed issued. The Assessor does not always have the most current description of improvements made to the property. But for reasons explained in Dr. Hamm's report, these matters do not impugn the reliability of the Assessor numbers as compared to other valuation methods. Ex. K (Hamm Report), at 27, 30-31. Further, to address the time lag, Dr. Hamm has a solution: use an interpolation calculation to address the time difference between some of the Assessor's valuations and the tax deed date to further improve accuracy. In his report, he explains how this could be done and provides an example of interpolated calculations. Ex. K (Hamm Report) at 38-39.

Even more to the point, the difficulties in estimating fair market value in the past exist regardless of whether the Assessor values or 1,700-plus separate retrospective estimates by fee appraisers are used. While it is true that the Assessor's fair cash value calculations did not utilize interior inspections, a fee appraiser today cannot go back in time and inspect the interior of a house that was foreclosed upon years ago. And while a fair cash value calculation by the Assessor may

19

have preceded the tax deed by a few months or a year, an after-the-fact retrospective fee appraisal for most class members will follow the issuance of their tax deeds by years.

The Assessor's valuation and that of an appraiser looking back at the value of a property years ago are both estimates, nothing more. Appraisers can be wrong, and they often disagree not only with Assessor valuations, but with each other. Ex. T (Deposition Transcript of Ron DeVries, December 18, 2024) at 124:18-126:8 ("an appraisal is an opinion of market value and people have different opinions."). Appraisals are by nature estimates and imprecise.

In a takings case, the plaintiff must only show the just compensation amount "to a reasonable approximation." *Arkansas Game & Fish Comm'n v. United States*, 736 F.3d 1364 , 1379 (Fed. Cir. 2013).  When, as here, the delay in estimating just compensation is caused by the defendants' wrongful conduct, courts consistently allow a great deal of leeway – enough leeway to accept the Assessor numbers – in determining how to calculate the damages award. *In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 162 Fed. Cl. 495, 519 (2022) (in takings case,  "plaintiffs' damage calculation can be approximate if the defendant's "wrong... preclude[s] exact ascertainment of the amount of damages"); *Trabert & Hoeffer, Inc. v. Piaget Watch Corp.*, 633 F.2d 477, 484 (7th Cir. 1980) ("a defendant whose wrongful conduct has rendered difficult the ascertainment of precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible", citing *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684 (1927)).

Should the court deem the problem of imprecision one that still needs to be further addressed, there is a ready solution well within the Court's constitutionally-based equitable powers

20

to fashion a just remedy: permit any party dissatisfied with the Assessor's fair cash value to submit their own appraisal or evidence and commit the question of valuation to a special master.[11]

The Assessor figures can also be used to estimate the size of the excessive fines to determine whether they are "grossly disproportionate." *See* 18 U.S.C. § 983 (providing, in context of federal civil asset forfeiture proceedings, that forfeitures found to be "grossly disproportional to the offense" shall be "reduce[d] or eliminate[d] … as necessary to avoid a violation of the Excessive Fines Clause[.]"); *Grashoff v. Adams*, 65 F.4th 910, 916-17 (7th Cir. 2023) ("same basic framework applies" to Excessive Fines claims concerning state civil sanctions as criminal forfeiture cases).

### d. Individual Proceedings as an Alternative.

Should the Court decide some form of individual proceeding is required to determine the value of each lost property, that decision would still not undermine predominance. The overwhelming balance of authority holds that the need to determine damages individually does not cause individual issues to predominate. *See, e.g., Hudgins v. Bd. of Educ.*, 2024 U.S. Dist. LEXIS 71781, *28-29, 2024 WL 1702679 (N. D. Ill. 2024) (Kennelly, J.) ("[R]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.") (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013)); *Tyson Foods*, 577 U.S. at 453 (class certification proper where "one or more central issues in the action are common to the class and … predominate … even though other important matters will have to be tried separately, such as damages."); *Scott v. Dart*, 99 F.4th 1076, 1092 (7th Cir. 2024) (class

---

[11] It is also worth noting that any class member that does not wish to use the Assessor figures can always opt out of the class to bring their own case and advance their own damage estimate. *Cf.* Fed. R. Civ. P. 23(d)(2), (d)(5); *see also Schroeder v. Progressive Paloverde Ins. Co.,* 713 F. Supp. 3d 523, 537-538 (S.D. Ind. 2024) (Noting, in context of adequacy analysis, that "[a]ny class member wishing to pursue other perceived shortcomings in [a key basis for determining damages] are free to opt out[.]")

certification proper even where "class members would need to proceed in individualized trials to prove causation and to seek damages"). Damage mini-trials are routinely approved in this Circuit and the need for them does not destroy predominance. *E.g., Lemon v. International Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 581-582 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999).

In sum, common issues predominate over the only potentially individualized question in this action: each property's value at the time of the tax deed. Using the Assessor's figures for formulaic valuation determinations or, in the alternative, one of the mechanisms detailed above, avoids the need for burdensome or unmanageable additional proceedings. And even if the Court concludes that individualized determinations of FMV are required, that does not defeat predominance given the overarching common questions of constitutional liability.

### 2. *A Class Action is A Superior Means of Resolving This Dispute.*

Rule 23(b)(3) requires that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy, with pertinent considerations including:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

There is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," and courts should "assess efficiency with an eye toward" whether methods other than class action *would* actually produce efficiencies. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663-65 (7th Cir. 2015). The ability to resolve class members' claims "together" may alone be "enough" to demonstrate superiority. *Scott*, 99 F.4th, at 1092-93.

Applying the considerations listed in Rule 23(b)(3) shows that a class action is a superior method for resolving this controversy. Class members have indicated no interest in controlling

22

how separate actions are litigated. There is little reason for individual lawsuits because all class members' claims are identical on the law and facts, other than as to the specific dollar amounts at issue. Concentrating the litigation in this District, which includes Cook County, is a good alternative to numerous lawsuits against Defendants, which would clog the courts with repeated litigation of the same issues, using the same evidence Plaintiffs already have adduced in discovery. This would be a waste of party and judicial resources, even assuming class members hire their own lawyers, which they probably cannot afford to do given they could not afford to pay their property taxes, and the costs of litigation make the claims of many class members non-viable.[12]

Resolving Plaintiffs' and putative class members' Takings and Excessive Fines claims through a class action is the superior course of action. Rule 23(b)(3) is satisfied.

### C. The Court Should Certify an Issues Class Under Rule 23(c)(4) if it Declines to Certify the Class Under Rule 23(b)(3).

Rule 23(c)(4) provides that the court may certify "a class action with respect to particular issues." Issues classes are particularly useful where a class is otherwise certifiable save for questions of damages. An issues class is appropriate "if it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole." *Smith-Brown v. Ulta Beauty*, 335 F.R.D. 521, 535 (N.D. Ill. 2020) (quoting Manual for Complex Litigation (Fourth) § 21.24 (2004)). The Seventh Circuit recently stated that a Rule 23(c)(4) issues class may be certified "so long as the resolution of that issue is driven predominantly by common questions" and an issues class remains a "superior" means of resolving the controversy. *Jacks v. Directsat USA, LLC*, 118 F.4th 888, 897-98 (7th Cir. 2024).

---

[12] There are two other similar cases, but neither involves Cook County. *See Sharritt v. Henry*, 2024 U.S. Dist. LEXIS 189825, *48-49 (N.D. Ill. Oct. 18, 2024) and *Top Metal Buyers, Inc. v. Lopinot*, 3:23-cv-01073-NJR, dkt. 41 ¶¶ 99, 102-03 (S.D. Ill.).

If class certification is denied under Rule 23(b)(3), this case would be appropriate for issue class certification. The issues presented for decision are legal issues which predominate because they affect every class member. *See Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (reversing district court class decertification decision where judge failed to consider Rule 23(c)(4), which could have resolved a core legal issue with only "individual suits to seek damages" remaining); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed.").

An issues class on the Takings claim would permit the Court to resolve for all class members the question of whether Defendants' practice of selling tax certificates results in a Taking under the Fifth Amendment to the U.S. Constitution. If it is a Taking, the only question left would be the proper how much "just compensation" is owed, which can be calculated through one of the methods outlined above. This is also a class-wide question, and once the method is determined damages can be calculated through one of the methods outlined above. These methods include individual damages hearings relying on a fee appraisal for estimating the property's fair market value for calculating just compensation, and the amount of any excessive fine. Hamm Report, at 11 ¶37.

Similarly, Plaintiffs contend that the forfeiture of a home for property taxes that already have been paid, and that are usually worth a fraction of the home's value, violates the Eighth Amendment's prohibition against the imposition of excessive fines. This Court could therefore certify an issues class under Rule 23(c)(4) with respect to the following questions: (1) whether the loss of remaining equity following the issuance of a tax deed received as a consequence of the

24

Cook County tax sale a "fine" subject to Eighth Amendment scrutiny; and (2) if the equity forfeiture is a fine, whether it is grossly disproportionate to the offense of not timely paying property taxes. Should Plaintiffs prevail on these issues, the damages are identical to those for the Takings Claim: the difference between the properties' fair market values and the tax obligations associated with such properties.

Class certification orders may be altered, so it would also be appropriate, as another alternative, to certify the class under Rule 23(b)(3) while reserving the possibility pursuant to Rule 23(c)(1)(C) of later limiting the class to determine certain issues in the event any individualized issues threaten to become unmanageable. *Brand v. Comcast Corp.*, 302 F.R.D. 201, 224 (N.D. Ill. 2014) (Kennelly, J.) (certifying class under Rule 23(b)(3), but noting that if "damages questions ultimately … present significant manageability or similar problems, the Court could modify the certification to limit its scope to liability only" as a Rule 23(c)(4) issues class).

For these reasons, the Court should certify the issues classes described above under Rule 23(c)(4) should it decline to certify the class for damages purposes under Rule 23(b).

## CONCLUSION

Certification of this case as a class action "would be an appropriate and efficient pathway to resolution." *Bell*, 800 F.3d at 381. Plaintiffs accordingly request the Court to certify the proposed class under Rule 23(b)(3), or in the alternative, to certify issues classes under Rule 23(c)(4), and further, to designate Plaintiffs Kidd and Rates as the Class Representatives and appoint the undersigned attorneys as Class Counsel.

25

Dated: January 24, 2025

Respectfully submitted,

By: /s/ Brian D. Roche
    *An Attorney for Plaintiffs*

John Bouman
Lawrence Wood
Daniel Schneider
LEGAL ACTION CHICAGO
120 South LaSalle Street, 10th Floor
Chicago, IL 60603
(312) 341-1070
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org

Brian D. Roche
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-6400
broche@reedsmith.com

Charles R. Watkins
GUIN & EVANS, LLC
805 Lake Street, #226
Oak Park, IL 60301
(312) 878-8391
charlesw@gseattorneys.com

David J. Guin
GUIN & EVANS, LLC
P.O. Box 380723
Birmingham, AL 35238
(205) 527-1582
davidg@gseattorneys.com

26

**<u>CERTIFICATE OF SERVICE</u>**

I, Brian D. Roche, an attorney, hereby certify that on January 24, 2025, I caused to be served the above and forgoing document by causing a true and accurate copy of the same to be served on counsel of record in the above-noted matter via email and the Court's electronic filing system.


*/s/ Brian D. Roche*