**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE KIDD and GOYCE H. RATES, individually and on behalf of all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA, individually, | ) ) ) ) ) | |
| | ) | Case No. 1:22-cv-07061 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Hon. Matthew F. Kennelly |
| | ) | |
| MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois, and Trustee of the Indemnity Fund; and COOK COUNTY, ILLINOIS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF MATERIAL FACTS.......................................................... 4

    A.  The Illinois Property Tax Sale System. ................................................. 4

    B.  The Indemnity Fund........................................................................... 5

    C.  Plaintiffs' Constitutional Claims.......................................................... 7

III.  ARGUMENT ..................................................................................................... 8

    A.  Plaintiffs' Claims Fail Under *Monell*................................................... 8

        1.  No Policy or Practice of the Defendants Caused Plaintiffs' Alleged Constitutional Harms. ....................................................... 9

            (a)  Activities Mandated by State Law Cannot Be the Basis for Plaintiffs' Claims. ............................................... 9

                (i)  The Tax Sale Process Does Not Involve Any Practice of the Defendants that Caused a Constitutional Injury. ........ 10

                (ii)  The Indemnity Fund Does Not Involve Any Practice of Defendants that Caused a Constitutional Injury. .............. 11

            (b)  No Purported "Inaction" By the Defendants Can be the Basis for Plaintiffs' Claims................................................... 12

            (c)  Plaintiffs Point to Nobody with Final Policymaking Authority Related to Their Alleged Constitutional Harms............................ 14

        2.  No Policy or Practice of the Defendants Was a "Moving Force" of Plaintiffs' Alleged Constitutional Harms.................................................. 15

    B.  Plaintiffs' Claims Against the Treasurer Are Barred by the Eleventh Amendment.................................................................................. 16

    C.  There Has Been No Taking, No Due Process Violation, and No Excessive Fine. ...................................................................................... 18

        1.  Count I Fails Because There Has Been No Violation of the Fifth Amendment.......................................................................... 19

        2.  Count II Fails Because There Has Been No Due Process Violation. ....... 22

3.    Count III Fails Because There Has Been No Excessive Fine. .................. 23

IV.  CONCLUSION ................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Balthazar v. Mari Ltd.*,
  301 F. Supp. 103 (N.D. Ill. 1969) ............................................................. 22

*Bethesda Lutheran Homes & Servs., Inc. v. Leean*,
  154 F.3d 716 (7th Cir. 1998) ......................................................... 1, 9, 16

*Bowles v. Sabree*,
  No. 22-1912, 2024 WL 1550833 (6th Cir. Apr. 10, 2024) ................................... 17, 18

*Bridgman v. Korzen*,
  54 Ill. 2d 74 (1972) ......................................................................... 13

*Cassell v. Snyders*,
  990 F.3d 539 (7th Cir. 2021) ................................................................. 17

*Castro v. Dart*,
  483 F. Supp. 3d 564 (N.D. Ill. 2020) ...................................................... 8, 9

*Chicago Bar Ass'n v. Cook Cnty.*,
  102 Ill. 2d 438 (1984) ....................................................................... 13

*Cont'l Res. v. Fair*,
  317 Neb. 391 (2024) .......................................................................... 20

*Conyers v. City of Chicago*,
  10 F.4th 704 (7th Cir. 2021) ................................................................. 19

*Demos v. Pappas*,
  2011 IL App (1st) 100829 ..................................................................... 13

*Est. of Sims ex rel. Sims v. Cnty. of Bureau*,
  506 F.3d 509 (7th Cir. 2007) .............................................................. 2, 15

*First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*,
  988 F.3d 978 (7th Cir. 2021) ................................................................. 15

*Graham v. Connor*,
  490 U.S. 386 (1989) .......................................................................... 22

*J.K.J. v. Polk Cnty.*,
  960 F.3d 367 (7th Cir. 2020) ................................................................. 12

*Johnson v. Cook Cnty.*,
  526 Fed. Appx. 692 (7th Cir. 2013) ...................................................... 15, 16

*Killinger v. Johnson,*
   389 F.3d 765 (7th Cir. 2004) ...................................................................... 2, 12, 14

*Lintzeris v. City of Chicago,*
   276 F. Supp. 3d 845 (N.D. Ill. 2017) ................................................................. 22

*Monell v. Department of Social Services of City of New York,*
   436 U.S. 658 (1978) ....................................................................................... *passim*

*Nelson v. City of New York,*
   352 U.S. 103 (1956) .............................................................................................. 21

*Nieveen v. TAX 106,*
   317 Neb. 425 (2024) ............................................................................................. 20

*Orozco v. Dart,*
   64 F.4th 806 (7th Cir. 2023) ....................................................................... 2, 12, 14

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ............................................................................................... 18

*Ramsey v. City of Newburgh,*
   No. 23-CV-8599, 2024 WL 4444374 (S.D.N.Y. Oct. 8, 2024) ............................. 23

*Scott v. O'Grady,*
   975 F.2d 366 (7th Cir. 1992) ....................................................................... 3, 16, 17, 18

*Simpson v. Brown Cnty.,*
   860 F.3d 1001 (7th Cir. 2017) ............................................................................. 22

*Snyder v. King,*
   745 F.3d 242 (7th Cir. 2014) ......................................................................... 12, 15

*Spiegel v. McClintic,*
   916 F.3d 611 (7th Cir. 2019) ................................................................................. 9

*Stockton v. Milwaukee Cnty.,*
   44 F.4th 605 (7th Cir. 2022) ................................................................................. 16

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.,*
   560 U.S. 702 (2010) ............................................................................................. 22

*Tyler v. Hennepin County,*
   598 U.S. 631 (2023) ....................................................................................... 19, 21

**Statutes**

35 ILCS 200/21-150 ............................................................................................. 4, 10

35 ILCS 200/21-160 ........................................................................................................... 4

35 ILCS 200/21-190 ...................................................................................................... 4, 10

35 ILCS 200/21-205 ........................................................................................................... 4

35 ILCS 200/21-215 ........................................................................................................... 4

35 ILCS 200/21-240 ........................................................................................................... 4

35 ILCS 200/21-250 ........................................................................................................... 4

35 ILCS 200/21-295 ................................................................................................... 5, 6, 11

35 ILCS 200/21-300 ...................................................................................................... 5, 11

35 ILCS 200/21-305 .................................................................................................. 6, 11, 22

35 ILCS 200/21-350 ........................................................................................................... 4

35 ILCS 200/21-385 ........................................................................................................... 4

35 ILCS 200/22-10 ........................................................................................................... 22

35 ILCS 200/22-15 ........................................................................................................... 22

35 ILCS 200/22-25 ........................................................................................................... 22

35 ILCS 200/22-30 ............................................................................................................. 5

35 ILCS 200/22-40 ...................................................................................................... 5, 22

35 ILCS 200/22-5 ............................................................................................................. 22

42 U.S.C.A. § 1983 ............................................................................................................. 8

**Other Authorities**

Ill. Const. art. IX, § 8(e)...................................................................................................... 4

## I.      INTRODUCTION

The Plaintiffs in this action—two individuals suing on their own behalf and as purported class representatives, Michelle Kidd and Goyce Rates, and two organizations, Southwest Organizing Project ("SWOP") and Palenque LSNA ("PLSNA")—allege that Illinois' laws pertaining to delinquent property taxes are unconstitutional. Under Illinois' system, homeowners who fail to pay their property taxes can lose their property to "tax buyers." When that occurs, the Illinois Property Tax Code provides that divested property owners can petition for compensation for the equity they have lost through a statutorily-created indemnity fund. Plaintiffs allege this process fails to adequately compensate homeowners who lose their property to tax buyers and, thus, amounts to a state-sponsored unconstitutional taking, excessive fine, and deprivation of due process rights. Though their issues are with the procedures mandated by Illinois state law, Plaintiffs seek to hold Cook County (the "County") and Maria Pappas, in her capacity as Treasurer of Cook County and Trustee of the Indemnity Fund (the "Treasurer"), responsible.

Seventh Circuit law is crystal-clear that such misplaced constitutional challenges directed at a municipality fail because they do not meet the standard for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Summary judgment in the Defendants' favor is therefore proper on all remaining counts, for several reasons. First, all of Plaintiffs' claims fail because there can be no municipal liability resulting from following state-mandated procedures. As Plaintiffs admit, Cook County's system related to tax sales and indemnity "implements the Illinois Property Tax Code." ECF No. 53, Second Amended Class Action Complaint ("SAC") ¶ 3. Though Plaintiffs challenge procedures mandated by state law, they do not sue the state. Instead, they sued the County and the Treasurer. But those entities are bound by state law and binding precedent requires dismissal. *See, e.g.*, *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 717 (7th Cir. 1998).

-1-

Second, Plaintiffs' claims premised on any failure by Defendants to act, such as purportedly failing to adequately inform the public about the indemnity fund or to independently fund the indemnity fund contrary to state law, fail as well. Under Seventh Circuit law, liability via "inaction" requires a "known and obvious" risk that failing to act would lead to constitutional harm, as well as a "connection between inaction and a resulting injury." *See Orozco v. Dart*, 64 F.4th 806, 824 (7th Cir. 2023). Plaintiffs cannot make this showing.

Third, Plaintiffs cannot identify anyone responsible for any policy of the Defendants causing an alleged constitutional harm. For Defendants to be liable, there must be someone with policy-making authority. *Killinger v. Johnson*, 389 F.3d 765, 772 (7th Cir. 2004). Since the final policy makers pertinent to Plaintiffs' claims are state actors, Defendants cannot be liable.

Fourth, even if Plaintiffs could identify a custom or policy attributable to the Treasurer or County (as opposed to the state), Plaintiffs cannot show that such policy is the cause of their alleged harm. For Defendants to be liable, a custom or policy of theirs must be the "moving force" behind Plaintiffs' alleged constitutional injuries. *See Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). The constitutional injury alleged by Plaintiffs is inadequate compensation for property that is lost through the tax sale process. ECF No. 97, Mem. Op. & Order (the "MTD Order") at 21-22. The amount and manner of compensation are set forth by state law; no Defendant policy or custom is a "moving force" for any related harm. This is yet another reason all of Plaintiffs' remaining claims fail under *Monell*, and summary judgment in Defendants' favor is proper.

Indeed, the Court has already gone through this analysis for Plaintiffs' claims against the County Clerk, and dismissed all of them. The Court found that "every aspect of [the Clerk's] involvement in the tax sale process that the plaintiffs challenge is mandated by *state*, not County,

policy," and that "a municipality's enforcement of a state statute cannot be used to meet *Monell's* policy-or-custom requirement." MTD Order at 20 (emphasis in original). The Court further found that, even if there were relevant Clerk actions not performed pursuant to state law, no policies that the Clerk "enforced were the 'moving force' behind any alleged constitutional violations." *Id*. at 21. Discovery has concluded, and the undisputed evidence shows that the same reasoning and result apply to Plaintiffs' claims against the County and the Treasurer.

Separate from Plaintiffs' inability to meet the standards for liability under *Monell*, their claims against the Treasurer fail for the additional reason that the Treasurer is entitled to Eleventh Amendment immunity because she is being sued for "statutory, non-discretionary" duties pursuant to which she acts as an "arm of the state." *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992). As such, she is entitled to the same protections as the State of Illinois receives under the Eleventh Amendment, requiring the dismissal of all claims against her.

Finally, regardless of whether state law or municipal policies caused the alleged harm in this case, each of Plaintiffs' claims fails as a matter of law on the merits. Plaintiffs' Fifth Amendment claim fails because there has been no "taking" by the Defendants. Defendants never possess the properties at issue in this case; instead, possession goes from the delinquent property owner to the tax buyer. Plaintiffs' Fourteenth Amendment claim fails both as a procedural due process claim and a substantive due process claim. There are sufficient procedures in place to satisfy procedural due process requirements, and any substantive due process claim collapses into the more specific Fifth Amendment claim. Plaintiff's Eighth Amendment claim fails because there has been no "excessive fine" issued by Defendants.

For any or all of these reasons, summary judgment in Defendants' favor is proper.

## II.     STATEMENT OF MATERIAL FACTS

### A.     The Illinois Property Tax Sale System.

The Illinois Property Tax Code ("PTC"), 35 ILCS 200, *et seq.*, governs the property tax sale system in Illinois. MTD Order at 2. If a homeowner fails to timely pay property taxes, the property is considered delinquent. *Id.* The PTC mandates that the county treasurer create a list of all delinquent properties within the county on an annual basis. 35 ILCS 200/21-160. The PTC mandates that the county treasurer apply for judgment and order of sale for unpaid taxes within 365 days of the second installment due date. 35 ILCS 200/21-150. If a judgment for nonpayment is rendered against a delinquent property, the treasurer "is required to offer the value of the unpaid taxes at the County's annual tax sale," where tax buyers can bid on delinquent properties. MTD Order at 2; *see also* 35 ILCS 200/21-190.

At the tax sale, tax buyers bid on the interest rate collected on payments made by the homeowner to redeem the property, and the lowest bid wins. MTD Order at 2; 35 ILCS 200/21-215. The tax buyer with the winning bid pays the outstanding balance of the unpaid taxes in exchange for a lien on the homeowner's property and the right to collect from the homeowner. MTD Order at 2; 35 ILCS 200/21-205, -215, -240, -250.

The Illinois Constitution and the PTC set forth the process by which homeowners who lose their homes through tax sales can redeem and retain their properties. The Illinois Constitution provides that, for all tax sales, homeowners and interested parties "shall be given reasonable notice of the sale and the date of expiration of the period of redemption." MTD Order at 2, quoting Ill. Const. art. IX, § 8(e). The PTC dictates the form, contents, and methods of serving the notices. 35 ILCS 200/22-5 through 22-25. Generally, homeowners have 30 months from the date of the tax sale to redeem their property by repaying the tax buyer, but the tax buyer can extend the period of redemption up to three years. 35 ILCS 200/21-350, -385.

If the homeowner does not pay off the taxes during this redemption period, the tax buyer can petition a court for ownership and possession of the property. MTD Order at 2-3; 35 ILCS 200/22-30, -40. If the court grants the tax buyer's petition, it orders the county clerk to issue and certify a tax deed transferring ownership of the property to the tax buyer. MTD Order at 3; 35 ILCS 200/22-40. The issuance of tax deeds are "far downstream from where [the Treasurer's Office] release[s] a tax certificate to a tax buyer." SOF ¶ 9.

The Treasurer supervises and administers tax sales that take place in Cook County pursuant to the PTC. SOF ¶ 5. The Treasurer's Office updates rules and regulations concerning the annual tax sale in response to operational needs or legal changes in the statute. SOF ¶ 10. The Treasurer's Office is "bounded by statute and ordinance, so it's quite a ministerial office." SOF ¶ 8. SWOP and PLSNA understand that Illinois law governs the property tax sale process, and SWOP is unaware of a single action related to the tax sale process taken by Defendants that is not dictated by the PTC. SOF ¶ 11.

### B. The Indemnity Fund.

The PTC requires Cook County (like all Illinois counties) to maintain a fund (the "Indemnity Fund") to indemnify eligible property owners for losses or damages incurred due to the tax sale. MTD Order at 3; 35 ILCS 200/21-295. The PTC dictates the manner and method of funding the Indemnity Fund: every tax buyer in Cook County "shall pay to the County Collector a nonrefundable fee of $80 for each item purchased plus an additional sum equal to 5% of the taxes, interest, and penalties paid under Section 21-240," plus an $80 fee for each subsequent year tax paid by the tax buyer. 35 ILCS 200/21-295(b). The PTC mandates that the amount of money in Cook County's Indemnity Fund "shall not be greater than" $2,000,000. 35 ILCS 200/21-300(a). It further mandates that any amount in excess of $2,000,000 "shall" be paid from the Indemnity Fund to the general fund. 35 ILCS 200/21-300(a). The Treasurer serves as Trustee of the Indemnity

Fund in Cook County, but that is the extent of the Treasurer's Office's involvement with the Indemnity Fund; that office is not focused on what happens after the tax sale, including claims against the Indemnity Fund which may be years later. SOF ¶¶ 5, 13.

The PTC dictates the only method by which a homeowner can receive payment from the Indemnity Fund: "no payment shall be made from the fund, except upon a judgment of the court which ordered the issuance of a tax deed." 35 ILCS 200/21-295(b). A property owner seeking indemnity must "petition the Court which ordered the tax deed to issue" and "ask that judgment be entered against the County Treasurer, as Trustee, in the amount of the indemnity sought." MTD Order at 3, quoting 35 ILCS 200/21-305. Upon such a petition, the PTC directs the *court* to "liberally construe this equitable entitlement standard to provide compensation wherever, in the discretion of the Court, the equities warrant the action" and issue an indemnity award that "shall be limited to the fair cash value of the property as of the date the tax deed was issued less any mortgages or liens on the property, and the award will not exceed $99,000." 35 ILCS 200/21-305(a)(1). To receive more than $99,000 from the court, the owner "must prove that the loss of his or her property was not attributable to his or her own fault or negligence." 35 ILCS 200/21-305(a).

Awards from the Indemnity Fund are paid in order of receipt. SOF ¶ 15. As of 2008, when the PTC imposed statutory fees on tax buyers to fund the Indemnity Fund, Indemnity Fund award payments (many well in excess of $99,000) occurred within days of receipt. SOF ¶¶ 16, 18. As a result of subsequent changes to the PTC, however, certain fees legislatively sunsetted and the Indemnity Fund became insufficiently funded, and award payments are now six or seven years in arrears. SOF ¶ 20.

The Director of Public Tax Policy for the Office of the President of Cook County testified that the PTC "spells out very directly how the Indemnity Fund will be funded" "in a very specific

way," and that the County is required to follow the PTC's process and "would not have authority to override that." SOF ¶ 27. The Treasurer's Office has studied possible enhancements to the Indemnity Fund, but determined that its hands were tied by the PTC, and that the Illinois legislature would have to amend the PTC's fee provisions in order to render the Indemnity Fund more solvent. SOF ¶ 23. The Treasurer has proposed legislation and lobbied the Illinois legislature to increase the fees that tax buyers are statutorily required to pay in order to increase the funds in the Indemnity Fund, so that more payments could be made out of the Fund, but tax buyers have combated those efforts through their own lobbying, and the Illinois legislature has not implemented the proposed changes. SOF ¶ 22. SWOP admits that all actions taken by the County and the Treasurer with respect to the Indemnity Fund are dictated by the PTC. SOF ¶ 29.

A tax buyer purchased Kidd's property in 2014; Kidd filed an Indemnity Fund petition, assigned the ensuing Indemnity Fund award to the tax buyer's assignee, and in return was able to stay in and regain possession of her property free and clear of all liens. SOF ¶¶ 33-35. A tax buyer purchased Kidd's property for a second time in 2017 and was awarded a tax deed in 2021, but Kidd has no plan to file a second Indemnity Fund petition. SOF ¶¶ 39, 48, 52. A tax buyer was awarded a tax deed for Rates' property in 2023; though Rates learned about the Indemnity Fund in 2023, she has not filed a claim and does not want to file a claim with the Indemnity Fund. SOF ¶¶ 69, 77-78.

### C.    Plaintiffs' Constitutional Claims.

Plaintiffs' three remaining claims[1] against the County and the Treasurer allege violations of the United States Constitution, actionable against the Defendants pursuant to 42 U.S.C.A. §

---

[1] The Court dismissed Counts IV and V of the SAC, as well as all claims against former defendant Karen Yarbrough in her capacity as Cook County Clerk, on April 19, 2024. *See* MTD Order.

1983 ("Section 1983").[2] As recognized by this Court, "In Count 1 of their second amended complaint, the plaintiffs allege that the defendants' failure to 'adequately and promptly compensate Plaintiffs for the equity in properties which Defendants have confiscated or caused homeowners to cease to own' is what constitutes a violation of their Fifth and Fourteenth Amendment Rights." MTD Order at 21-22, citing SAC ¶ 136. "Counts 2 and 3 of the plaintiffs' second amended complaint similarly identify the defendants' 'unconstitutional failure to compensate Plaintiffs,' as well as the defendants' 'procedures for administering the program for indemnity homeowners' losses,' as the conduct that caused the plaintiffs' injuries." *Id*. at 22, citing SAC ¶¶ 146, 153.

## III.    ARGUMENT

### A.    Plaintiffs' Claims Fail Under *Monell*.

Even putting aside the individual reasons that Counts I, II, and III all fail on the merits, which are discussed in Section C below, each and every claim alleged by Plaintiffs fails because Plaintiffs cannot establish the requirements for municipal liability under Section 1983. Plaintiffs cannot point to any policy or custom of the Defendants that caused any constitutional injury, let alone a policy or custom that was the "moving force" behind any constitutional injury. As a result, summary judgment in the Defendants' favor is proper.

Under Section 1983, a governmental entity may be held liable when a plaintiff suffers a constitutional deprivation due to "any statute, ordinance, regulation, custom, or usage" by the government entity. 42 U.S.C.A. § 1983. "In order to bring constitutional claims against a municipality under Section 1983, Plaintiffs must satisfy the requirements of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)." *Castro v. Dart*, 483 F. Supp. 3d 564, 573

---

[2] Though the SAC asserts that Plaintiffs can also assert Count I as a "direct claim," the Court has already rejected that theory. MTD Order at 24 ("[N]either the Seventh Circuit, nor the Supreme Court, has ever ruled that the Takings Clause creates a direct cause of action.").

(N.D. Ill. 2020). Under *Monell*, a government entity is not liable under Section 1983 for an injury inflicted solely by its employees or agents; instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

> **1.    No Policy or Practice of the Defendants Caused Plaintiffs' Alleged Constitutional Harms.**

The first reason that Counts I, II, and III fail is because Plaintiffs can point to no custom or policy of the Defendants that caused their alleged constitutional injury. To prevail under *Monell*, Plaintiffs must have "suffered a constitutional deprivation that was caused by 'an official policy, custom or usage of the municipality.'" *See* MTD Order at 19, quoting *Castro*, 483 F. Supp. 3d at 573. "An official policy or custom may consist of (1) an express policy, (2) a widespread custom or practice, or (3) a decision by a municipal actor with final policymaking authority." *Id.*, citing *Spiegel v. McClintic*, 916 F.3d 611, 618 (7th Cir. 2019). Even after discovery, there is no testimony or documentary evidence pointing to any such policy, custom, practice, or decision.

> **(a)    Activities Mandated by State Law Cannot Be the Basis for Plaintiffs' Claims.**

Crucially, "the Seventh Circuit has held that a municipality's enforcement of a state statute cannot be used to meet Monell's policy-or-custom requirement." MTD Order at 20. "[A] county 'cannot be held liable under section 1983 for acts that it did under the command of state or federal law.'" *Id.*, quoting *Bethesda*, 154 F.3d at 717. The undisputed facts make clear that Defendants are accused of enforcing the PTC; no more, no less. Summary judgment in their favor is proper.

**(i)    The Tax Sale Process Does Not Involve Any Practice of the Defendants that Caused a Constitutional Injury.**

To the extent that Plaintiffs argue any custom or policy related to the tax sale process in Cook County violates their constitutional rights, that argument fails. As the Institutional Plaintiffs acknowledge, the PTC governs all aspects of the tax sale process in Illinois. SWOP and PLSNA concede that Illinois law governs the property tax sale process, and SWOP is unaware of a single action related to the tax sale process taken by Defendants that is not dictated by the PTC. SOF ¶ 11. These concessions aside, Plaintiffs have no evidence of an actionable policy or custom of the Defendants related to the tax sale process. This Court already dismissed the County Clerk from this lawsuit, finding that "every aspect of [the Clerk's] involvement in the tax sale process that the plaintiffs challenge is mandated by *state*, not County, policy," and that "a municipality's enforcement of a state statute cannot be used to meet *Monell's* policy-or-custom requirement." MTD Order at 20.

The same reasoning applies to the claims against the County and the Treasurer. The Court already observed that "the plaintiffs have not identified an independent County policy or practice that governs the issuance of tax deeds[.]" MTD Order at 20-21. While Plaintiffs allege on "information and belief" that "Defendants exercise discretion to include properties in the tax sale pursuant to an unwritten internal policy," SAC ¶ 83, that allegation is demonstrably false. The PTC, not any action involving Defendants' discretion, mandates which properties are included in the annual tax sale. 35 ILCS 200/21-150; 21-190. There is no evidence to support an argument that a policy or custom of the Defendants related to the tax sale process has any bearing on this lawsuit.

This conclusion is buttressed by the harm Plaintiffs allege, which is the failure to adequately compensate them for their lost property. As the Court observed, "A homeowner's entitlement to compensation for the seizure of their home is assessed not at the time that a tax deed

-10-

is issued, but after the homeowner has submitted a petition for indemnity." MTD Order at 22, citing SAC ¶¶ 5, 89. Accordingly, "the processes and policies that govern the issuance of a tax deed are separate from those that govern the payment of compensation to homeowners[.]" *Id*. Thus any custom or policy related to the tax sale process is irrelevant to Plaintiffs' constitutional claims, and cannot be the basis for *Monell* liability.

### (ii)    The Indemnity Fund Does Not Involve Any Practice of Defendants that Caused a Constitutional Injury.

The SAC makes clear that no custom or policy of the Defendants regarding the Indemnity Fund can be the basis of any *Monell* claim. It acknowledges that "state law requires counties to maintain 'indemnity funds' for some property owners who suffer losses as a result of a tax sale and subsequent deed issuance." SAC ¶ 89. Plaintiffs contend that the state-required Indemnity Fund "is an inadequate remedy for lost equity as many owners are not eligible, and all others must petition for this relief in court," and also because a successful applicant "may wait years to be paid, and is not guaranteed to receive the full value of their lost equity, or indeed any of the value of the equity lost, in part due to extreme and chronic failure and refusal to fund the indemnity fund[.]" SAC ¶ 89. All of the ills alleged by Plaintiffs are creatures of state law. The eligibility and procedural requirements to receive an award, and the amount of the award, are set by 35 ILCS 21/305. The manner and method of funding the Indemnity Fund is set by 35 ILCS 200/21-295(b). The amount of funds in the County's Indemnity Fund is capped by 35 ILCS 200/21-300. The County pays Indemnity Fund awards in the order of receipt, and the backlog is due to insufficient funding. SOF ¶¶ 15-20. Thus, the County's hands are tied by the Illinois legislature and the current statutory provisions do not allow it to pay awards any faster than it presently does. *Id*.

"When state law unequivocally instructs a municipal entity to produce binary outcome X if condition Y occurs, we cannot say that the municipal entity's 'decision' to follow that directive

involves the exercise of any meaningful independent discretion, let alone final policymaking authority. It is the statutory directive, not the follow-through, which causes the harm of which the plaintiff complains." *Snyder v. King*, 745 F.3d 242, 249 (7th Cir. 2014). "The mere authority to implement pre-existing rules is not the authority to set policy." *Killinger*, 389 F.3d at 771. Because there is no evidence that anyone at the County establishes rules relevant to Plaintiffs' claims, summary judgment in Defendants' favor is proper. *Id*. at 772.

**(b)     No Purported "Inaction" By the Defendants Can be the Basis for Plaintiffs' Claims.**

Plaintiffs' complaints focused on purported inaction, as opposed to affirmative action by Defendants, fare no better. Plaintiffs claim that "Defendants fail to provide affected homeowners with any type of notice about the fund and their rights," and that "Defendants fail to provide any type of support for affected homeowners to apply for funds." SAC ¶ 114. It appears Plaintiffs also believe it is a constitutional violation for Defendants not to proactively place additional County funds into the Indemnity Fund in order to pay all outstanding judgments against the Fund. *See, e.g.*, SAC ¶ 161 ("Defendants' failings also render this pathway [the Indemnity Fund] inadequate because of their refusal to direct [sic] funding to the indemnity fund to cover all filed claims[.]").

The Seventh Circuit has "cautioned" that "the path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous." *Orozco*, 64 F.4th at 824, quoting *J.K.J. v. Polk Cnty*., 960 F.3d 367, 378 (7th Cir. 2020). Inaction can amount to the requisite municipal action for *Monell* liability "*only if* the [municipality] has notice that its program will cause constitutional violations," and such a theory "requires a 'known or obvious' risk that constitutional violations will occur." *Id*. at 824-25 (citations omitted).

-12-

There is nothing in the record to show that Defendants had notice that any purported failure to inform Cook County residents about the Indemnity Fund, or to provide support for Cook County residents to apply for relief from the Indemnity Fund, would cause constitutional violations. To the contrary, the record shows that both Plaintiffs Kidd and Rates had notice of the Indemnity Fund, yet still have elected not to file petitions for relief. Although Kidd filed an Indemnity Fund petition the first time she lost her property through a tax sale (and was able to regain possession as a result, free and clear of any liens), she has no intention of filing another Indemnity Fund petition now. SOF ¶¶ 33, 35, 52. Similarly, though Rates knows about the Indemnity Fund, she is not going to file a claim either. SOF ¶ 77. Plaintiffs' own testimony indicates that any purported lack of notice did not cause their alleged constitutional injury; they know about the Fund, but are electing not to pursue relief.

Further, since "the indemnity fund is part of the overall scheme in the enforcement and collection of property tax revenues," *Demos v. Pappas*, 2011 IL App (1st) 100829, ¶ 30, Illinois law makes clear that Defendants lack the power to "directly" fund the Indemnity Fund. Though the County has certain home rule powers "which pertain to its government and affairs" separately from the state, the Illinois Supreme Court has held that "the collection of property taxes is not one of them," and neither is the assessment of such taxes. *Bridgman v. Korzen*, 54 Ill. 2d 74, 78 (1972); *Chicago Bar Ass'n v. Cook Cnty.*, 102 Ill. 2d 438, 441 (1984). The reasoning in *Bridgman* and *Chicago Bar* defeats any argument that Defendants have the power to fund the Indemnity Fund— doing so would not "pertain" to the County's government and affairs since they are part of the enforcement and collection of property taxes. Thus, with respect to the "inaction" of failing to increase funding of the Indemnity Fund, the record establishes the lack of "connection between

-13-

inaction and a resulting injury." *See Orozco*, 64 F.4th at 824. Defendants cannot be faulted for "inaction" with respect to actions that they have no power to take.

> **(c)** **Plaintiffs Point to Nobody with Final Policymaking Authority Related to Their Alleged Constitutional Harms.**

Plaintiffs' claims also fail because no one at the County or the Treasurer's Office has final policymaking authority related to the operation of the Indemnity Fund with respect to issues relevant to this case. In *Killinger*, the Seventh Circuit affirmed the award of summary judgment to a municipality on plaintiff's constitutional and *Monell* claims because plaintiff "has not identified any state or local positive law, or custom having the force of law, that grants [anyone at the municipality] authority to adopt rules that are relevant to this case." *Killinger*, 389 F.3d at 772.

In this case, Plaintiffs complain: "Effectively hidden from public view and subject to strict eligibility requirements that rule out many homeowners, the Indemnity Fund requires a formal court filing and ultimately a trial, and in practice fails to provide homeowners with timely, meaningful, certain or legally sufficient compensatory or other relief, as even destitute and blameless homeowners can be denied compensation." SAC ¶ 5. But no one associated with the Defendants sets the eligibility requirements for the Indemnity Fund; the Illinois legislature does that. Defendants do not require Indemnity Fund applicants to make a court filing and prevail at trial; the Illinois legislature does that. Defendants are not responsible for the backlog that currently exists in Indemnity Fund payouts. To the contrary, the record shows that in 2008, payments were made within days of receipt by the County. SOF ¶ 18. Defendants did not make any policy changes leading to the current backlog, the legislature changed the Indemnity Fund's funding mechanism. With no evidence that anyone at the County or the Treasurer's Office has any policymaking authority with respect to these issues, there can be no *Monell* liability. *See Killinger*, 389 F.3d at 772.

### 2. No Policy or Practice of the Defendants Was a "Moving Force" of Plaintiffs' Alleged Constitutional Harms.

Plaintiffs' claims also fail for the additional and independent reason that Plaintiffs cannot establish any policy or procedure of Defendant's was the "moving force" behind their alleged constitutional harm. As this Court has already recognized, the constitutional injury alleged in the SAC is the purported failure by Defendants to compensate Plaintiffs for lost equity. MTD Order at 21-22. Even if Plaintiffs could establish a policy or practice of the Defendants that caused their alleged harm—which for all of the reasons discussed above they cannot—to establish municipal liability, Plaintiffs must further establish that such policy or custom was "the moving force" behind these purported constitutional violations. MTD Order at 19, citing *Sims*, 506 F.3d at 514. Their inability to do so is another reason why summary judgment in Defendant's favor is warranted.

"To satisfy the [moving force] standard, the plaintiff must show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights," a requirement that "must be scrupulously applied in every case alleging municipal liability." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). "[I]t is not enough to show that a widespread practice or policy was a *factor* in the constitutional violation; it must have been the *moving force*." *Johnson v. Cook Cnty.*, 526 Fed. Appx. 692, 696 (7th Cir. 2013) (emphasis in original). Municipal liability premised on "general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury." *Snyder*, 745 F.3d at 247.

The record is entirely devoid of evidence that any policy or practice of the Defendants, or failure to implement any policy or practice, was *the* "moving force," and not just one of many factors, leading to the alleged constitutional violations. *See*, *e.g.*, *Johnson*, 526 F. App'x at 696 (upholding dismissal of plaintiff's claims against Cook County where the "link between the cause

alleged and the harm that occurred is much too attenuated"). In *Johnson*, the plaintiff inmate argued that the County's practices of allowing medical personnel to be alone with inmates, understaffing, and encouraging the suppression of complaints were the moving force behind a county employee's sexual assault of the plaintiff inmate. *Id.* at 695. The court, however, found that while these practices may have been contributing factors in an alleged constitutional violation, they were not the required "moving force." *Id.* at 695-96. *See also Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 618 (7th Cir. 2022) (summary judgment for defendant affirmed where plaintiff failed to establish moving force causation for *Monell* liability).

At its core, Plaintiffs' argument is that the Indemnity Fund provides an inadequate remedy. Though they allege Defendants failed to provide adequate notice of the Fund, they also allege the Fund itself is inadequate. Thus, Plaintiffs could have had all the notice in the world about the Fund and the application process, but they still would argue their constitutional rights have been violated. Even if the lack of notice was "a factor," it was not the "moving force." So there is no sufficient causal link between any purported lack of notice about the Fund and the alleged constitutional violations. And the alleged shortcomings of the Fund itself are all dictated by Illinois statute; no independent County or Treasurer policy was the "moving force" behind any alleged harm suffered by the Plaintiffs. *See Bethesda*, 154 F.3d at 718 (a county "cannot be held liable under section 1983 for acts that it did under the command of state or federal law."). This is yet another reason why summary judgment in the Defendants' favor is proper.

B.     **Plaintiffs' Claims Against the Treasurer Are Barred by the Eleventh Amendment.**

The claims against the Treasurer fail for the additional reason that she is entitled to immunity under the Eleventh Amendment. The Eleventh Amendment bars claims against officials "acting as agents of the State of Illinois." *Scott*, 975 F.2d at 370. The protection applies even to

those who, like the Treasurer, "normally act as county officials" when they "act as an arm of the state." *Id*. at 371. County officials act as an arm of the state "when carrying out non-discretionary duties subject to state policy control." *Cassell v. Snyders*, 990 F.3d 539, 552 (7th Cir. 2021). That is what the Treasurer is doing pertinent to this lawsuit, and the Eleventh Amendment requires the claims against her be dismissed as a result.

For instance, in *Scott*, the Seventh Circuit held that the Eleventh Amendment barred a Section 1983 claim against the Cook County sheriff, in his official capacity. *Scott*, 975 F.2d at 367. In that case, a building was foreclosed upon, and the new owner filed for and obtained a court-issued writ of assistance pursuant to the Illinois Mortgage Foreclosure Law. *Id*. at 368. The writ directed the sheriff to remove any person found in the property. *Id*. The sheriff's office executed the writ, and evicted the plaintiff. *Id*. The plaintiff, who was unaware the building he was renting had been sold due to foreclosure, then sued the sheriff for Fourteenth Amendment violations. *Id*. The court held that in this situation, when the sheriff was acting "to enforce orders issued by state courts," the sheriff was an arm of the state entitled to immunity. *Id*. at 371. Further, the sheriff had no discretion in fulfilling his duties, which were all set forth by state law. *Id*. Like the sheriff in *Scott*, the Treasurer here is carrying out non-discretionary duties with respect to the tax sale process and operation of the Indemnity Fund, and these duties are subject to and mandated by Illinois law. Therefore the claims against her should be dismissed.

The reasoning of *Scott* clearly applies to a county treasurer's role in the property tax sale system. Indeed, last year the Sixth Circuit held that a county treasurer was entitled to sovereign immunity under the Eleventh Amendment in a constitutional challenge to Michigan's property tax forfeiture and sale system. *Bowles v. Sabree*, No. 22-1912, 2024 WL 1550833, at *2 (6th Cir. Apr. 10, 2024). The court reasoned that while the county treasurer was "undisputedly an officer of the

County, not the State," "claims of this sort are often more complicated, for county officials 'sometimes wear multiple hats, acting on behalf of the county *and* the State." *Id*. at * 2. And in enforcing the state's property tax code, the county treasurer was "duty bound" under state law to act in a manner in which the treasurer had "no discretion." *Id*. at * 3. As set forth above, the same is true here. All of the pertinent actions of the Treasurer are set forth by state law. As such, in performing them, the Treasurer was acting as an "arm of the state" and is entitled to sovereign immunity.

Relatedly, the relief sought by Plaintiffs includes declaratory and injunctive relief that would fundamentally alter the operation of indemnity funds throughout the state of Illinois. *See* SAC at p. 39. As an example, Plaintiffs want an injunction requiring "prompt[] and adequate[]" compensation. But any changes to the funding and operation of the Indemnity Fund would require changes to Illinois law. Since "the effect of the judgment would be to restrain the Government from acting or to compel it to act," the state is the "real, substantial party in interest." *Scott*, 975 F.3d at 372, quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984). This is another reason the Treasurer, in this lawsuit, is acting as an "arm of the state" and is protected by the Eleventh Amendment.

### C.    There Has Been No Taking, No Due Process Violation, and No Excessive Fine.

Even if Defendants could be legally liable for carrying out the PTC, which they cannot, Plaintiffs' claims still fail because the Illinois tax sale system passes Constitutional muster. Plaintiffs Fifth Amendment takings claim fails because the County does not actually "take" property lost through a tax sale, even though the County's Indemnity Fund provides compensation for those who lose their property to a tax buyer through a tax deed. Plaintiffs' Fourteenth Amendment due process claim also fails. Under controlling Supreme Court precedent, any substantive due process claim is impermissibly duplicative of Plaintiff's Fifth Amendment claim

and must be dismissed. Any procedural due process claim fails because the provisions of the PTC afford sufficient protections to property owners. Finally, Plaintiffs' claim that this purported taking results in an excessive fine in violation of the Eighth Amendment also cannot withstand summary judgment because the Illinois system compensates any homeowner who loses their home, and there is no fine of any sort.

### 1. Count I Fails Because There Has Been No Violation of the Fifth Amendment.

The Fifth Amendment states that private property shall not "be taken for public use, without just compensation." Thus, to prevail on Count I, Plaintiffs must be able to show "that the governmental entity 'took' [their] property," and that "the government has not paid just compensation." *See Conyers v. City of Chicago*, 10 F.4th 704, 710-11 (7th Cir. 2021). Plaintiffs can do neither, and Count I fails as a result.

As set forth above, at no point does the County possess a property going through the Illinois tax sale process due to delinquent property taxes. Instead, in those uncommon situations where a property owner fails to redeem the delinquent taxes, possession passes directly from the property owner to the tax buyer. All the County "takes" from this process is the tax debt that is owed. The Illinois system stands in stark contrast to the procedures in Minnesota that the United States Supreme Court found unconstitutional in *Tyler v. Hennepin County*, 598 U.S. 631 (2023). In Minnesota, if a property owner failed to redeem delinquent taxes after the statutory period, the state could take absolute title of the property and then keep the property for public use or sell it to a private party. 598 U.S. at 634. In Illinois, no government unit ever takes title to properties going through the tax sale. As a result, to the extent anyone has "taken" a property at issue and must provide just compensation, it is the tax buyer who is liable under the Fifth Amendment, not the County or the Treasurer.

For instance, Nebraska has a property tax sale system very similar to Illinois'—if property taxes are delinquent, the county sells a tax certificate to a third party tax buyer; the property owner then has the right to redeem the property by paying the past due taxes, interest, and fees; if the property owner does not redeem within three years, the tax buyer can apply for a tax deed; if the tax buyer fulfils all statutory requirements and applies for a deed, the county treasurer provides the buyer with a tax deed; and at this point, title to the property passes to the tax buyer free and clear of any encumbrances. *Cont'l Res. v. Fair*, 317 Neb. 391, 393-94 (2024). After the United States Supreme Court issued *Tyler*, the Nebraska Supreme Court analyzed Nebraska's property tax sale system, and concluded that, among the county, the tax buyer, and the state, "the party that is potentially liable to pay just compensation for a taking is [the tax buyer]." *Id*. at 407.[3] The court reasoned: "Before [tax buyer] requested a tax deed, [the property owner] had equitable title to his property, but after [tax buyer] obtained the tax deed, if it properly recorded it, [the property owner] will have no title at all. If [tax buyer] had not requested the tax deed, [the property owner] would not have lost his equitable title." *Id*. The Nebraska Supreme Court further reasoned that, given "its use of state procedures and state assistance," the tax buyer is acting as a state actor and therefore can be liable under the Fifth Amendment. *Id*. at 409-10. Since the tax buyer is responsible for any taking, the Nebraska court granted the county summary judgment on the property owner's claim for just compensation. *Id*. at 415. *See also Nieveen v. TAX 106*, 317 Neb. 425, 433 (2024) (divested property owner "alleged a plausible takings claim against [the tax

---

[3] Notably, the Indemnity Fund essentially operates as an insurance policy collectively funded by the tax buyers to indemnify former property owners for lost equity. By requiring tax buyers to finance the Indemnity Fund through fees they must pay with each tax sale (and not funding it through additional taxes on taxpayers), Illinois' legislature has determined that any compensable taking of surplus equity resulting from the tax sale process is done by tax buyers—the ones holding the surplus equity—not the County.

buyer]," but did not allege a plausible claim against the county). This Court should reach the same conclusion as the Nebraska Supreme Court.

In addition, there is no Fifth Amendment unlawful taking because divested property owners can file petitions for relief from the Indemnity Fund to recover the equity they lose in property acquired by tax buyers. In other words, "we do not have here a statute which absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale." *Nelson v. City of New York*, 352 U.S. 103, 110 (1956). In *Nelson*, New York City foreclosed on its lien on a property with unpaid water bills of $65, and obtained possession of the property. *Id*. at 105. It then sold the property for $7,000, and retained all the proceeds. *Id*. at 106. The United States Supreme Court found no unconstitutional taking because there was a process by which a property owner could "assert[] his property had a value substantially exceeding the tax due," and "upon proof of this allegation a separate sale should be directed so that the owner might receive the surplus." *Id*. The Indemnity Fund operates in much the same way—a divested owner asserts the property is worth more than the taxes due, and upon proof of this allegation, receives an amount equal to the surplus. Once again, this is in stark contrast to Minnesota's unlawful system that was the subject of *Tyler*: "Unlike in *Nelson*, Minnesota's scheme provides no opportunity for the taxpayer to recover the excess value." *Tyler*, 598 U.S. at 644. Instead, when properties were sold under Minnesota's system, any proceeds in excess of the tax debt and related costs were split between the county, town, and school district. *Id*. at 634. Illinois' tax sale process is like New York City's lawful process in *Nelson*—it provides divested owners with "an opportunity to recover the excess value" of property lost through a tax sale. *See id*. As a result, there is no Fifth Amendment violation.

### 2. Count II Fails Because There Has Been No Due Process Violation.

Whether viewed as a substantive due process claim or a procedural due process claim, Count II of the SAC fails. As a substantive due process claim, Count II fails because it mirrors the Fifth Amendment takings claim in Count I. When there is "an explicit textual source of constitutional protection… that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Put simply, "[t]he first problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010).

As a procedural due process claim, Count II fails as well. "The basic rights guaranteed by procedural due process are notice of the intended deprivation and an opportunity to be heard[.]" *Lintzeris v. City of Chicago*, 276 F. Supp. 3d 845, 851 (N.D. Ill. 2017), citing *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). As shown above, the PTC sets forth the procedures for tax sales and indemnity fund petitions, providing notice and an opportunity to be heard at every step. For instance, a property owner is given notice before delinquent taxes are sold, as well as notice and instructions for how to redeem their property if the taxes are sold, which would prevent a tax deed from being issued. 35 ILCS 200/22-5; 22-10; 22-15; 22-25; 22-40(a). The PTC also provides notice of the steps property owners can take to recover their lost equity from the Indemnity Fund. 35 ILCS 200/21-305. The procedural safeguards in place in the PTC defeat any procedural due process claim. *See*, *e.g.*, *Balthazar v. Mari Ltd.*, 301 F. Supp. 103, 106 (N.D. Ill. 1969), *aff'd*, 396 U.S. 114 (1969) ("The Illinois legislation is constitutional since delinquent landowners, including the plaintiffs, are adequately notified of their tax deficiencies and of an tax sale or foreclosure.").

### 3. Count III Fails Because There Has Been No Excessive Fine.

The Eighth Amendment to the Constitution prohibits "excessive fines" from being imposed. Count III fails because there has been no fine imposed by the County, let alone an "excessive fine." Unless and until the County realizes any surplus value, there has not been an excessive fine. *See, e.g.*, *Ramsey v. City of Newburgh*, No. 23-CV-8599, 2024 WL 4444374, at *3 (S.D.N.Y. Oct. 8, 2024) ("until the surplus value of the property is realized by the City, there is no forfeiture constituting a fine."). Yet the County never takes possession of the property nor realizes any surplus value. The only money ever received by the County in the whole process is the amount of taxes that were due and owing on the property. That is neither "excessive" nor a "fine," and Count III fails.

Further, through the Indemnity Fund, the PTC ensures that, for those who avail themselves of the procedures, they will be awarded any lost "equity" they have in properties lost through the tax sale process. Plaintiff Kidd, when she initially lost her property, did file an Indemnity Fund petition, and as a result was able to keep her property free and clear of all liens in exchange for assigning the Indemnity Fund payout to the tax buyer. SOF ¶¶ 33, 35. She is not claiming there was an excessive fine or unlawful taking under those circumstances, nor could she. Both she and Plaintiff Rates are entitled to file Indemnity Fund petitions to recover precisely what they claim to have lost that is at issue in the SAC, the equity in their homes. Yet both have refused to do so, being fully aware that they cannot recover from the Indemnity Fund without filing a petition for relief. Since they control whether or not they file an Indemnity Fund petition, they cannot show that the County has imposed an excessive fine on them.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment and enter judgment in favor of the Treasurer and the County.

-23-

Dated: January 24, 2025

Respectfully submitted,

EILEEN O'NEILL BURKE
Cook County State's Attorney


By /s/ Kenneth S. Ulrich
      Special Assistant State's Attorney

Kenneth S. Ulrich
David E. Morrison
Rachel C. Steiner
Kerry D. Nelson
Kyle W. Walther
Special Assistant State's Attorneys
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois 60603
(312) 201-4000
kenneth.ulrich@goldbergkohn.com
david.morrison@goldbergkohn.com
rachel.steiner@goldbergkohn.com
kerry.nelson@goldbergkohn.com
kyle.walther@goldbergkohn.com

-and-

Megan Honingford
Anthony O'Brien
Prathima Yeddanapudi
Michael Gilmartin
Michael Clarke
Karisa Flores
Assistant State's Attorneys
COOK COUNTY STATE'S
  ATTORNEY'S OFFICE
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3116
megan.honingford@cookcountysao.org

anthony.obrien@cookcountysao.org
prathima.yeddanapudi@cookcountysao.org
michael.gilmartin@cookcountysao.org
michael.clarke@cookcountysao.org
karisa.flores@cookcountysao.org

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 24, 2025, he caused a copy

of **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR**

**SUMMARY JUDGMENT** to be served via the Court's ECF/electronic mailing system upon the

following counsel of record:

> Brian D. Roche
> William S. Weltman
> REED SMITH LLP
> 10 South Wacker Drive
> 40th Floor
> Chicago, Illinois  60606
> broche@reedsmith.com
> wweltman@reedsmith.com

> Charles R. Watkins
> GUIN, STOKES & EVANS, LLC
> 805 Lake Street, #226
> Oak Park, Illinois  60301
> charlesw@gseattorneys.com

> David J. Guin (admitted *pro hac vice*)
> GUIN, STOKES & EVANS, LLC
> 300 Richard Arrington, Jr. Boulevard North
> Suite 600
> Birmingham, Alabama  35203
> davidg@gseattorneys.com

> John M. Bouman
> Lawrence D. Wood
> Daniel J. Schneider
> LEGAL ACTION CHICAGO
> 120 South LaSalle Street
> 9th Floor
> Chicago, Illinois  60603
> jbouman@legalactionchicago.org
> lwood@legalactionchicago.org
> dschneider@legalactionchicago.org

> /s/ Kenneth S. Ulrich
> Special Assistant State's Attorney