# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE KIDD and GOYCE H. RATES, individually and on behalf of all others similarly situated; SOUTHWEST ORGANIZING PROJECT and PALENQUE LSNA, individually, | ) ) ) ) ) | Case No. 1:22-cv-7061 |
| Plaintiffs, | ) ) ) | Hon. Matthew F. Kennelly |
| v. | ) ) | |
| MARIA PAPPAS, in her capacity as Treasurer of Cook County, Illinois, and Trustee of the Indemnity Fund, and COOK COUNTY, ILLINOIS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' LOCAL RULE 56.1(b)(2) RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Plaintiffs submit this response to Defendants' Local Rule 56.1(a)(2) Statement of Material Facts, Dkt. 134.

## I.   PARTIES

1.   <u>Defendants' Assertion:</u> Individual Plaintiff Michelle Kidd ("Kidd") owned the property located at 1922 South 12th Avenue in Maywood, Illinois. (ECF No. 65, Treasurer's Partial Answer to SAC ¶ 26; Exhibit A, Kidd Dep. Tr. 17:24 – 18:3.)

<u>Plaintiffs' Response</u>: ADMIT.

2.   <u>Defendants' Assertion:</u> Individual Plaintiff Goyce Rates ("Rates") owned the property located on two parcels at 1400-1402 Cleveland Street in Evanston, Illinois. (ECF No. 65, Treasurer's Partial Answer to SAC ¶¶ 54-55; Exhibit B, Rates Dep. Tr. 11:12 – 13:22.)

<u>Plaintiffs' Response</u>: ADMIT.

3.      <u>Defendants' Assertion:</u> Organizational Plaintiff Southwest Organizing Project ("SWOP") is an organization that brings together community stakeholders to act collectively on issues identified by people in the community. (Exhibit C, SWOP Dep. Tr. 22:3-8, 23:1 – 24:14.)

<u>Plaintiffs' Response</u>: ADMIT.

4.      <u>Defendants' Assertion:</u> Organizational Plaintiff Palenque LSNA ("PLSNA") is a community organization that works holistically on multiple issues, including housing. (Exhibit D, PLSNA Dep. Tr. 7:13-17, 22:12 – 23:4, 27:19-23.)

<u>Plaintiffs' Response</u>: ADMIT.

5.      <u>Defendants' Assertion:</u> The Treasurer supervises and administers tax sales that take place in the County and serves as Trustee of the Indemnity Fund. (ECF No. 65, Treasurer's Partial Answer to SAC ¶ 79; *see* Exhibit E, Treasurer's Office Dep. Tr. 50:24  – 51:7, 69:22 – 70:2.)

<u>Plaintiffs' Response</u>: ADMIT.

6.      <u>Defendants' Assertion:</u> Individual Plaintiffs Kidd and Rates and organizational Plaintiffs SWOP and PLSNA (collectively, "Plaintiffs") named the County as a Defendant for indemnification purposes. (ECF No. 65, Treasurer's Partial Answer to SAC ¶ 81; ECF No. 66, County's Partial Answer to SAC ¶ 81.)

<u>Plaintiffs' Response</u>: Plaintiffs DISPUTE that they named the County as a Defendant only for indemnification purposes. Plaintiffs allege that the County and Treasurer have each engaged in conduct making them jointly and severally liable for the constitutional violations alleged in Counts I and III. (ECF No. 53, Second Amended Complaint ("SAC") ¶ ¶ 81, 134-140, 149-154.

II.    JURISDICTION

7.    <u>Defendants' Assertion:</u> Plaintiffs' remaining claims, Counts I – III, allege violations of the United States Constitution and 42 U.S.C. § 1983. (ECF No. 97, Mem. Op. & Order.)

<u>Plaintiffs' Response</u>: ADMIT.

III.    MATERIAL FACTS

A.    The Annual Tax Sale Process

8.    <u>Defendants' Assertion:</u> The Treasurer's Office is "bounded by statute and ordinance, so it's quite a ministerial office." (Exhibit E, Treasurer's Office dep. Tr. 48:19 – 50:2.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement on the grounds that it is vague and constitutes a legal conclusion rather than a statement of fact.  Plaintiffs further respond that they address the authority and discretion of the Treasurer under Illinois law in Plfs. Mem. at pages 14-17, and therefore DISPUTE that this is an accurate statement of the authority of the Treasurer's Office.

9.    <u>Defendants' Assertion:</u> The Treasurer administers the tax sale, and issuance of tax deeds and foreclosure actions are "far downstream from where [the Treasurer's Office] release[s] a tax certificate to a tax buyer." (*Id.* 50:24 – 51:7.)

<u>Plaintiffs' Response</u>: Plaintiffs ADMIT that the Treasurer administers the tax sale. Plaintiffs OBJECT to the statement that "issuance of tax deeds and foreclosure actions are 'far downstream from where [the Treasurer's Office] release[s] a tax certificate to a tax buyer.'" The latter statement is vague, and a legal argument or conclusion rather than a statement of fact and it is therefore DISPUTED.

10.    Defendants' Assertion: Rules and regulations concerning the annual tax sale would be updated in response to operational needs or legal changes in the statute. (*Id.* 46:14-20, 47:6 – 48:17.)

Plaintiffs' Response: DISPUTE due to the vagueness and of the term "would be", but admit that the Treasurer does revise the rules and regulations on occasion.

11.    Defendants' Assertion: SWOP and PLSNA understand that the property tax sale process is governed by Illinois law, and SWOP is not aware of any actions related to the tax sale process taken by the Treasurer of Cook County that are not dictated by the Illinois Property Tax Code ("PTC"). (Exhibit C, SWOP Dep. Tr. 102:15-21, 103:13-20; Exhibit D, PLSNA Dep. Tr. 58:9 – 60:14.)

Plaintiffs' Response: Plaintiffs OBJECT to this assertion on the grounds that it is irrelevant and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. *See* Plfs. Mem. at 20 n.5. See Plaintiffs' counsel's objections at the depositions that the questions called for legal conclusions.  (Exhibit A hereto, SWOP Dep. Tr. 102: 18-19, 103:4-6, 17, 107:23-24, 108: 1-2, 13-16; Exhibit B hereto, PLSNA Dep. Tr. 59:7-9, 19-21, 65:10-12, 20, 122:14-16).

Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that SWOP and PLSNA testified that to their knowledge they understand that the property tax sale process is governed by Illinois law, and SWOP is not aware of any actions related to the tax sale process taken by the Treasurer of Cook County that are not dictated by the Illinois Property Tax Code.  Plaintiffs DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

12.     <u>Defendants' Assertion:</u> To PLSNA's knowledge, a tax deed is issued to the tax purchaser, not the County. (Exhibit D, PLSNA Dep. Tr. 65:4-15.)

<u>Plaintiffs' Response</u>: ADMIT.

B.  The Indemnification Process

13.     <u>Defendants' Assertion:</u> While the Treasurer administers safekeeping of the funds in the Indemnity Fund, the Treasurer's Office is not focused on what happens after the tax sale, including claims made against the Indemnity Fund years later. (Exhibit E, Treasurer's Office dep. Tr. 52:819.)

<u>Plaintiffs' Response</u>: DISPUTED.  For example, see admissions of Treasurer's Office in Declaration of Justin Kirvan, Ex. G to Defendants' Local Rule 56.1(a)(2) Statement of Material Facts, Dkt. 134-7 (office kept contemporaneous records of awards against the indemnity fund showing the delay time between when an award was entered by the court and when it was paid by the indemnity fund); *id.* ¶ 4 (payment records attached to Ex. G were "made at or near the time of the information contained therein" which includes records from December 5, 2008 (*id.* at p. 6 of 68) through March 24, 2023 (*id.* at p. 24 of 68).  Defendants admit that by 2023 the delay in payment of indemnity awards was more than six years.  *Id.* at p. 24 of 68; Admission of Defendants at paragraph 20 below.  The Treasurer has also studied the extent to which Indemnity Fund petitioners assign their interest in awards to tax buyers.  Admission of Defendants at paragraph 23 below.

14.     <u>Defendants' Assertion:</u> The Assessor's Office plays no role in defending [against] Indemnity Fund petitions and typically does not provide information regarding the value of the subject property as part of the proceedings. (Exhibit F, Assessor's Office Dep. Tr. 100:16 – 101:4.)

Plaintiffs' Response: ADMIT.

15.   Defendants' Assertion: Indemnity Fund awards are paid in order of receipt. (Exhibit E, Treasurer's Office Dep. Tr. 26:2-9.)

Plaintiffs' Response: ADMIT and Plaintiffs further respond in their Statement of Material Facts concerning delay in payment of awards. Plaintiffs' Statement of Material Facts ¶ 46 (filed concurrently).

16.   Defendants' Assertion: Until December 31, 2006, the Illinois Property Tax Code imposed certain statutory fees on tax buyers to fund the Indemnity Fund, (Exhibit G, Declaration of J. Kirvan ¶ 6.) As of January 1, 2007, certain of those statutory fee provisions legislatively sunsetted, and the legislature did not provide additional sources of funding at that time to supplement the statutory fee provisions that remained in effect. (*Id.*)

Plaintiffs' Response: ADMIT.

17.   Defendants' Assertion: in the years that followed, the Indemnity Fund became insufficiently funded as a result of decreased funding. (*Id.* ¶7.)

Plaintiffs' Response: ADMIT.

18.   Defendants' Assertion: The Indemnity Fund continued to pay timely awards through approximately June 19, 2009. (*Id.*) Payment of 29 awards received from December 5, 2008 through June 19, 2009 occurred from the same day of receipt to within eight days of receipt. (*Id.* ¶ 5.) Thirteen of those awards amounted to between $99,000 and $360,000. (*Id.*)

Plaintiffs' Response: Plaintiffs OBJECT to both statements on the grounds that they are irrelevant and immaterial; they involve a period of time that substantially predates the period at issue in this lawsuit. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT both statements.

19. <u>Defendants' Assertion:</u> Beginning at that time, the timing of payment of awards generally began to slow and took longer over each subsequent month and year. (*Id.* ¶ 7.) From June 19, 2009 through May 16, 2022, 118 awards amounted to between $99,000 and $1,591,997.67. (*Id.* ¶ 5.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to both statements on the grounds that they are irrelevant and immaterial; they involve a period of time that precedes the period at issue in this lawsuit. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT both statements.

20. <u>Defendants' Assertion:</u> There is currently a backlog of Indemnity Fund awards about six or seven years in arrears due to insufficient funds. (Exhibit E, Treasurer's Office Dep. Tr. 25:13-21, 26:12 – 27:7.)

<u>Plaintiffs' Response</u>: ADMIT.

21. <u>Defendants' Assertion:</u> Treasurer's Office Director of Policy Justin Kervin studied enhancements to the Indemnity Fund in connection with the U.S. Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), and determined that the state legislature would need to amend the PTC's fee provisions to make the Indemnity Fund more solvent by collecting fees from tax buyers. (Id. 59:9 – 62:1, 74:5 – 76:21.)

<u>Plaintiffs' Response</u>: ADMIT.

22. <u>Defendants' Assertion:</u> The Treasurer has sought through proposed legislation to increase the fees tax buyers are statutorily required to pay in order to make the Indemnity Fund more solvent, and tax buyers combat those efforts through their own lobbying. (Id. 28:7 – 29:2.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

23.    Defendants' Assertion: The Treasurer has studied the extent to which Indemnity Fund petitioners assign their interest in awards to tax buyers "to better understand all of the ways in which tax buyers profit from the current system from beginning to end." (*Id.* 82:16 – 83:6.)

Plaintiffs' Response:  Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

24.    Defendants' Assertion: The Treasurer wants this information to support the request to the legislature to pass statutes requiring tax buyers to pay additional fees into the Indemnity Fund as a business expense. (*Id.* 83:8-19.)

Plaintiffs' Response:  Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

25.    Defendants' Assertion: The Treasurer's concerns are that tax buyers not take advantage of taxpayers and the solvency of the Indemnity Fund. (*Id.* 81:9-17.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the witness testified that the Treasurer's concern was that "more than half of the time indemnity awards are assigned to either a tax buyer or a third party. . .") (Exhibit C hereto, Kirvan Dep. Tr.. 80:2-14)

26.     <u>Defendants' Assertion:</u> Director of Property Tax Policy for the Office of the President of Cook County Jim Thompson believes that the backlog of unpaid Indemnity Fund judgments without adequate funding is an Illinois, not a County, issue which would require lobbying the legislature "for any sort of change." (Exhibit H. County Dep. Tr. 60:17 – 62:8).

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement on the grounds that Director Thompson's personal belief regarding a legal matter is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that Director Thompson testified he believes that the backlog of unpaid Indemnity Fund judgments without adequate funding is an Illinois, not a County, issue which would require lobbying the legislature "for any sort of change."

27.     <u>Defendants' Assertion:</u> According to Thompson, the PTC "spells out very directly how the Indemnity Fund will be funded," and the County "would not have authority to override that.' (Id. 65:3-10.) He understands that the PTC governs funding the Indemnity Fund in a "very specific" way, and the County is required to follow that process. (*Id.* 86:12 – 89:11.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to these statements on the grounds that Director Thompson's opinions regarding legal matters are irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that Director Thompson's stated opinion is that the PTC "spells out very directly how the Indemnity Fund will be funded," and the County "would not have authority to override that.' Plaintiffs ADMIT that he thinks that the PTC governs funding the Indemnity Fund in a "very specific" way, and he thinks the County is required to follow that process.

28. <u>Defendants' Assertion:</u> Thompson is unaware of any effort, or legal authority, for the County to pass an ordinance to pay property owners for equity to the extent the Indemnity Fund does not. (*Id.* 66:9 – 67:7.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that Thompson testified he was unaware of any effort, or legal authority, for the County to pass an ordinance to pay property owners for equity to the extent the Indemnity Fund does not.

29. <u>Defendants' Assertion:</u> SWOP is not aware of any actions related to the Indemnity Fund process taken by the Treasurer or the County that are not dictated by the PTC. (Exhibit C, SWOP Dep. Tr. 107:11 – 108:22.) SWOP also is not aware of anyone who filed a claim against the Indemnity Fund that was denied. (Id. 78:12 – 79:4.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to both statements on the grounds that they are irrelevant, immaterial, and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Plaintiffs' counsel objected at the deposition to these questions as calling for legal conclusions. (Exhibit A hereto, SWOP Dep. Tr. 107:23-24, 108:1-2; 78: 24, 79:1-2). Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT both statements as of the date of such testimony. Plaintiffs DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

30. <u>Defendants' Assertion:</u> SWOP provides "[p]robably very little" advice or guidance regarding the Indemnity Fund because it is not involved at that point in the process. (Id. 47:8 – 48:1, 57:9 – 58:1; see also id. 62:22 – 63:7.)

Plaintiffs' Response: ADMIT.

31.     Defendants' Assertion: PLSNA does not provide advice or guidance to homeowners concerning the Indemnity Fund, does not train personnel regarding the indemnity Fund, and would refer questions to Legal Aid Chicago or another legal organization. (Exhibit D, PLSNA Dep. Tr. 63:20-23, 115:9 – 117:9, 122:23 – 123:5.)

Plaintiffs' Response: ADMIT.

C.  Kidd's Property Taxes

32.     Defendants' Assertion: Kidd understands that real estate property taxes fund necessities, including schools and parks. (Exhibit A, Kidd Dep. Tr. 71:15 – 24.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial; Ms. Kidd is not challenging property taxes.  Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

33.     Defendants' Assertion: Kidd filed an Indemnity Fund petition resulting from tax buyer Fair Deal of Illinois filing a petition for a tax deed on November 14, 2014 and obtaining a court order issuing the tax deed. (*Id.* 43:23 – 45:13, 45:20 – 46:24, 47:14-19, 48:22 – 50:15, 52:9 – 56:7.)

Plaintiffs' Response: Plaintiffs DISPUTE statement as fairly summarizing the cited testimony; and OBJECT as irrelevant and immaterial; it involves a period of time that precedes by several years the period at issue in this case. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that Kidd filed an Indemnity Fund petition resulting from tax buyer Fair Deal of Illinois obtaining a tax deed.

34.     Defendants' Assertion: On October 12, 2017, the court entered an agreed judgment order on Kidd's Indemnity Fund petition, awarding the compromised fair cash value of

$52,673.53 as of September 18, 2015 to be assigned to the tax buyer's assignee Frontline Properties, LLC. (*Id.* 50:16-23, 58:12 – 60:24.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement as it is immaterial and irrelevant. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that, on October 12, 2017, the court entered an agreed judgment order on Kidd's Indemnity Fund petition, awarding the compromised fair cash value of $52,673.53 as of September 18, 2015 to be assigned to the tax buyer's assignee Frontline Properties, LLC.

35. <u>Defendants' Assertion:</u> As a result of filing the Indemnity Fund petition, the Indemnity Fund paid the tax buyer's assignee, and Kidd was able to stay in her home despite not having redeemed the taxes and to own the property free and clear of all liens. (Id. 61:6-24, 64:17 – 65:10, 66:2-14, 72:7-12.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement as it is immaterial and irrelevant. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that, as a result of filing the Indemnity Fund petition, the Indemnity Fund paid the tax buyer's assignee, and Kidd was able to stay in her home despite not having redeemed the taxes and to own the property free and clear of all liens.

36. <u>Defendants' Assertion:</u> Kidd fell behind on paying her property taxes in 2015. (Id. 21:17 – 22:3, 70:21-23.) Kidd understood that there could be a penalty for not paying property taxes, which is fair. (*Id.* 71:9-14.)

<u>Plaintiffs' Response</u>: Plaintiffs ADMIT that Kidd fell behind on paying her property taxes in 2015. Plaintiffs OBJECT to the use of the statement that "Kidd understood that there could be a penalty for not paying property taxes, which is fair." It is irrelevant and immaterial and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or

opinion about what the law requires. Notwithstanding these objections, Plaintiffs ADMIT that Kidd understood that there could be a penalty for not paying property taxes and the imposition of a penalty that is not excessive under the law is fair.

37. <u>Defendants' Assertion:</u> Kidd understands that, under the PTC, the County may sell delinquent taxes to a tax buyer, and if the home owner does not timely reimburse the tax buyer for the taxes paid plus penalties and interest then the tax buyer may take ownership of the property. (*Id.* 26:21 – 27:20.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant, immaterial, and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT this was her understanding but DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

38. <u>Defendants' Assertion:</u> Kidd did not redeem her taxes within the statutory redemption period, which she understands allowed the tax buyer to petition the court to become the legal owner of the property and evict the former owner. (*Id.* 28:5 – 29:8.)

<u>Plaintiffs' Response</u>: Plaintiffs ADMIT that Ms. Kidd did not redeem her taxes in a timely manner. Plaintiffs OBJECT to the statement alleging that Ms. Kidd understood her failure to redeem allowed the tax buyer to petition the court to become the legal owner of the property and evict the former owner. It is inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT that Kidd understood that her failure to redeem allowed the tax buyer to petition the court to become the legal owner of the property

and evict the former owner.  Plaintiffs DISPUTE that it was legal to take the equity in her home

in excess of the tax debt without paying just compensation.

39.    Defendants' Assertion: In 2017, tax buyer Hi5 Group purchased the 2015 taxes on

Kidd's property. (*Id.* 22:9-13).

Plaintiffs' Response: ADMIT.

40.    Defendants' Assertion: Kidd attempted to, but did not, redeem the taxes and also

filed for bankruptcy to try to keep the home. (*Id.* 22:9-16, 23:2-8.)

Plaintiffs' Response: ADMIT.

41.    Defendants' Assertion: Kidd never attempted to sell or rent her home. (*Id.* 43:6-

11.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is

irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection,

Plaintiffs ADMIT the statement.

42.    Defendants' Assertion: Kidd received notice that her property had been sold for

delinquent taxes, the redemption period would expire on October 10, 2019, and a petition had

been filed for a tax deed to transfer title and for right to possession of the property if not timely

redeemed. (*Id.* 74:21 – 76:24.)

Plaintiffs' Response: ADMIT.

43.    Defendants' Assertion: Kidd filed for bankruptcy on September 5, 2019, before

the redemption period expired, to attempt to keep her home. (*Id.* 77:24 – 78:9, 80:16-23, 81:4-

15.)

Plaintiffs' Response: ADMIT.

44.     Defendants' Assertion: In the bankruptcy petition, she listed as an asset the property valued at $120,000, which to her knowledge was not based on an appraisal. (*Id.* 82:12-24.) Kidd also identified as creditors the tax buyer with a claim of $17,932.74 and the Treasurer with a claim of $2,178.06. (*Id.* 83:1 – 84:9.)

Plaintiffs' Response: ADMIT.

45.     Defendants' Assertion: The bankruptcy court confirmed the plan, including monthly payments to the tax buyer and the Treasurer, which she made. (*Id.* 88:4 – 89:18.)

Plaintiffs' Response: ADMIT.

46.     Defendants' Assertion: In an agreed bankruptcy court order dated March 31, 2020, Kidd agreed to pay post-petition real estate taxes for 2019 in two installments and to begin timely paying real estate taxes during the pendency of the bankruptcy. (*Id.* 89:22 – 95:9).

Plaintiffs' Response: ADMIT.

47.     Defendants' Assertion: Kidd did not pay the real estate taxes. (*Id.* 95:20 – 96:7.)

Plaintiffs' Response: ADMIT.

48.     Defendants' Assertion: Pursuant to court order entered November 2, 2021, the Clerk issued the tax deed to the tax buyer with respect to Kidd's property. (*Id.* 23:9 – 24:4, 96:20 – 101:14.)

Plaintiffs' Response: ADMIT.

49.     Defendants' Assertion: Kidd did not redeem the taxes, is not aware of an appeal of the order, and never filed a redemption under protest. (00:8-12, 100:24 – 101:6, 110:11-13.)

Plaintiffs' Response: ADMIT.

50.     Defendants' Assertion: On January 26, 2022, the court entered an order for possession, which Kidd understood was done pursuant to state law.

Plaintiffs' Response: Plaintiffs ADMIT that, on January 26, 2022, the court entered an order for possession against her. Plaintiffs OBJECT to the statement that Kidd understood that the entry of this order was done pursuant to state law. That statement is irrelevant and immaterial and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires.

51.     Defendants' Assertion: Kidd was evicted as of January 26, 2022, but the tax buyer agreed to allow her family to remain in the house until July 2022 and pay rent. (*Id.* 24:15 – 25:6, 108:11-16, 111:2-11, 112:24 – 116:14.)

Plaintiffs' Response: Plaintiffs DISPUTE that she was evicted on January 26, 2002. As Defendant's allege, and as Kidd admits, an order for possession was entered on that date. Plaintiffs ADMIT that the tax buyer agreed to allow Kidd's family to remain in the house until July 2022 and pay rent.

52.     Defendants' Assertion: As of September 12, 2024, Kidd had not filed an Indemnity Fund claim and had no plans to do so. (See id. 26:3-16, 29:20 – 30:16, 72:13 – 73:17.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement as it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

53.     Defendants' Assertion: She never talked to anyone from the Treasurer's Office or the County about the Indemnity Fund. (*Id.* 116:18-21.)

Plaintiffs' Response: ADMIT.

54.     Defendants' Assertion: Kidd understands that she cannot get a payout from the Indemnity Fund without filing a claim. (*Id.* 74:4-8.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement as it is irrelevant, immaterial, and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT that this was her understanding.

D. Rates' Property Taxes

55. Defendants' Assertion: Rates understands that the real estate property taxes fund public facilities, including schools, hospitals, and parks. (Exhibit B, Rates Dep. Tr.. 89:20 – 90:11, 138:11-18.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is immaterial and irrelevant; Rates is not challenging property taxes. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

56. Defendants' Assertion: Rates fell behind on paying her property taxes. (*Id.* 65:16 – 66:19.) She understood that the PTC imposes penalties for not paying real estate taxes, which is fair, and knew that eventually she could lose her home as a consequence. (*Id.* 66:20 – 67:20, 90:12-16.)

Plaintiffs' Response: Plaintiffs ADMIT that Rates fell behind on paying her property taxes. Plaintiffs OBJECT to the second statement, as it is irrelevant, immaterial and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding these objections, Plaintiffs ADMIT that she understood that the PTC imposes penalties for not paying real estate taxes and the imposition of a penalty not excessive under the law is fair, and that Rates knew that eventually she could lose her home as a consequence but DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

57. <u>Defendants' Assertion:</u> Rates does not believe she should be able to live in her home without paying taxes, and she thinks it is fair to expect all property owners to pay their real estate taxes. (*Id.* 90:17-24, 138: 19-24.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement as it is irrelevant, immaterial, and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT the statement.

58. <u>Defendants' Assertion:</u> Rates understands that, under the PTC, the County may sell delinquent property taxes to a tax buyer, and that if the homeowner does not timely reimburse the tax buyer for the taxes paid plus penalties and interest then the tax buyer may take ownership of the property. (*Id.* 74:11-17, 75:13-23.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECTS to this statement as it is immaterial, irrelevant and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT that she stated this is her understanding and but DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

59. <u>Defendants' Assertion:</u> She did not pay the taxes and related charges to redeem her taxes within the statutory redemption period, which she understands allows the tax buyer to petition the court to become the legal owner of the property and evict the former owner. (*Id.* 68:7 – 69:4, 70:20-24, 75:24 – 77:10.)

<u>Plaintiffs' Response</u>: Plaintiffs ADMIT that Ms. Rates did not redeem her taxes in a timely manner. Plaintiffs OBJECT to the statement that Rates understands that her failure to

redeem allows the tax buyer to petition the court to become the legal owner of the property and evict the former owner. The statement is irrelevant, immaterial, and inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT that she stated this is her understanding but DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

60. <u>Defendants' Assertion:</u> Ms. Rates never attempted to sell or rent her house. (*Id.* 55:22 – 56:3, 81:20 – 82:1.)

<u>Plaintiffs' Response</u>: Plaintiffs OBJECT to this statement as it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

61. <u>Defendants' Assertion:</u> Rates received notice that the property had been sold for delinquent taxes, the redemption period would expire on March 22, 2022, a petition had been filed for a tax deed to transfer title and for right to possession of the property if not timely redeemed, and the matter was set for a hearing in the Circuit Court of Cook County. (*Id.* 79:11 – 82:8, 84:21 – 86:10.) She did not attend the hearing. (*Id.* 85:20 – 86:10.)

<u>Plaintiffs' Response</u>: ADMIT.

62. <u>Defendants' Assertion:</u> On March 17, 2022, rates went to the Clerk's Office and another office to find out how much she owed in taxes. (*Id.* 82:9 – 84:7.)

<u>Plaintiffs' Response</u>: ADMIT.

63. <u>Defendants' Assertion:</u> Rates was unable to pay the taxes and related charges to redeem the property. (*Id.* 68:7 – 69:4, 70:20-24.)

<u>Plaintiffs' Response</u>: ADMIT.

64. <u>Defendants' Assertion:</u> Rates filed for bankruptcy on March 21, 2022, the day before the redemption period expired, to try to keep her home. (*Id.* 91:13 – 92:5.)

<u>Plaintiffs' Response</u>: ADMIT.

65. <u>Defendants' Assertion:</u> She listed as an asset real estate valued at $209,000, which was her "best estimate" based on the amount of taxes paid. (*Id.* 95:24 -96:23.) Rates also identified the Treasurer as a creditor with claims totaling $37,975.73. (*Id.* 99:6 – 100:18.)

<u>Plaintiffs' Response</u>: ADMIT.

66. <u>Defendants' Assertion:</u> In an agreed bankruptcy court order dated August 29, 2022, Rates agreed with the tax buyers to begin timely paying real estate taxes during the pendency of the bankruptcy and that failure to do so would result in the automatic stay being lifted, and to waive all rights to challenge the tax deed proceeding pending in state court if the automatic stay were modified and the bankruptcy case were dismissed. (*Id.* 104:2 – 107:24..)

<u>Plaintiffs' Response</u>: ADMIT.

67. <u>Defendants' Assertion:</u> Rates paid the taxes months late, and as a result the bankruptcy stay was lifted. (*Id.* 108:1 – 109:16.)

<u>Plaintiffs' Response</u>: ADMIT.

68. <u>Defendants' Assertion:</u> The tax buyers then petitioned the Circuit Court of Cook County for an order directing the Clerk to issue the tax deeds. (*Id.* 109:21 -113:12.) Rates was given the opportunity to, but did not, have an attorney represent her, she did not contest the tax buyers' applications, and tax deeds were issued. (*Id.* 116:16 -120:13, 143:2-6.)

<u>Plaintiffs' Response</u>: ADMIT.

69.     Defendants' Assertion: The court entered orders in 2023 directing the Clerk to issue the tax deeds pursuant to state statute, and Rates did not appeal and never filed a redemption under protest. (*Id.* 120:14 – 123:20.)

Plaintiffs' Response: ADMIT.

70.     Defendants' Assertion: Rates understands that the clerk issued the tax deeds to the tax buyers by order of court. (*Id.* 69:17 – 70:8, 71:1-11.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement. It is inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires.. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement but DISPUTE that it was constitutional for Defendants to take the equity in her home in excess of the tax debt without paying just compensation.

71.     Defendants' Assertion: Rates did not appeal the orders and has no reason to dispute that there were grounds for issuing them. (*Id.* 71:12-18.)

Plaintiffs' Response: ADMIT Rates did not appeal the orders, but DISPUTE that it was legal to take the equity in her home in excess of the tax debt without paying just compensation.

72.     Defendants' Assertion: The tax buyers obtained orders of possession from the Circuit Court of Cook County, as a result of which Rates was evicted from her home in November 2023. (*Id.* 127:24 – 129:18.) She was present at the hearing and did not object or appeal (*Id.* 129:19 -130:12.)

Plaintiffs' Response: ADMIT.

73.     Defendants' Assertion: At the time Rates was evicted, the tax buyers owned the property. (*Id.* 130:13-18.) The tax buyers evicted Rates from her home and caused her to need to relocate. (Id. 89:9-12, 137:16-19.)

Plaintiffs' Response: ADMIT.

74. Defendants' Assertion: Rates filed a motion in the bankruptcy court complaining about the conduct of the tax buyers, not the County, but never sought to set aside the tax deeds as fraudulent transfers. (*Id.* 124:2 – 127:16.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement as it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

75. Defendants' Assertion: Rates is not pursuing relief against the tax buyers for return of equity because everything they did was legal. (*Id.* 136:18 – 137:9, 140:20 – 141:2.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement as it is irrelevant and immaterial, and because it constitutes a legal conclusion as opposed to a factual statement. It is inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about what the law requires. Notwithstanding these objections, Plaintiffs ADMIT that the tax buyers took ownership of her home pursuant to an order of the Cook County Court directing issuance of the tax deed, but DISPUTE that it was constitutional to take the equity in her home in excess of the tax debt without paying just compensation.

76. Defendants' Assertion: Rates understands that the County follows the PTC, every action the County took in connection with her property was authorized by the state, and the Treasurer and Clerk followed court orders to allow the tax buyers to take possession. (*Id.* 136:5-17, 137:10-15, 147:13 – 148:1.)

Plaintiffs' Response: Plaintiffs OBJECT to these statements as they are irrelevant and immaterial, they constitute legal conclusions as opposed to factual statements. It is inadmissible as it improperly seeks to use a statement by a lay witnesses as an admission or opinion about

what the law requires. Notwithstanding and without waiver of or prejudice to these objections, Plaintiffs ADMIT that the tax buyers took possession of her home pursuant to an order of the Cook County Court, but DISPUTE that it was constitutional to take the equity in her home in excess of the tax debt without paying just compensation.

77.     Defendants' Assertion: Rates learned of the Indemnity Fund around Fall 2023, but did not pursue it.  (*Id.* 51:20 – 52:24.)

Plaintiffs' Response: Plaintiffs OBJECT to this statement on the grounds that it is irrelevant and immaterial. Notwithstanding and without waiver of or prejudice to this objection, Plaintiffs ADMIT the statement.

78.     Defendants' Assertion: Rates has a claim available, but does not want to get paid for the lost equity in her home from the Indemnity Fund because she believes her house is worth more than the maximum payout of $99,000, there are no guarantees of payment, and it takes years to receive payment. (*Id.* 53:1 – 55:2, 72:2-22, 134:10 – 135:5, 146:5-18.)

Plaintiffs' Response: Plaintiffs DISPUTE this statement as an inaccurate summary of Rates testimony.  Her testimony was that she was not pursuing an indemnity claim at this time because she understood "it would only pay up to $99,000.· My house is worth more than that, I believe, and also, I understand that there is no guarantees with the fund, that you even get chosen to be reimbursed.· And I understand it's a very lengthy process, like several years to be paid." (*Id.* 53:6 – 16.)  Plaintiffs also OBJECT to this statement as it is irrelevant and immaterial.

Dated: March 3, 2025

By: /s/ Brian D. Roche

*An Attorney for Plaintiffs*

John Bouman
Lawrence Wood
Daniel Schneider
LEGAL ACTION CHICAGO
120 South LaSalle Street, 10th Floor
Chicago, IL 60603
(312) 341-1070
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org


Brian D. Roche
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
(312) 207-6400
broche@reedsmith.com

Charles R. Watkins
GUIN & EVANS, LLC
805 Lake Street, #226
Oak Park, IL 60301
(312) 878-8391
charlesw@guinevans.com

David J. Guin
GUIN & EVANS, LLC
P.O. Box 380723
Birmingham, AL 35238
205-527-1582
davidg@guinevans.com

## **CERTIFICATE OF SERVICE**

I, Daniel J. Schneider, an attorney, hereby certify that on March 3, 2025, I caused to be served the above and forgoing document by causing a true and accurate copy of the same to be served on counsel of record in the above-noted matter via the Court's electronic filing system.

_____/s/ Daniel J. Schneider_____

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE KIDD, DOLLY          )
JANIS, and GOYCE H.           )
RATES, individually and       )   Case No.
on behalf of all others       )   1:22-cv-07061
similarly situated;           )
SOUTHWEST ORGANIZING          )
PROJECT and PALENQUE          )
LSNA, individually,           )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
MARIA PAPPAS, in her          )
capacity as Treasurer of      )
Cook County, Illinois,        )
and Trustee of the            )
Indemnity Fund; and COOK      )
COUNTY, ILLINOIS,             )
                              )
          Defendants.         )


VIDEOTAPED 30(b)(6) DEPOSITION OF CHRIS BROWN

Chicago, Illinois

Friday, September 6, 2024

1

2

3                    September 6, 2024

4                    9:40 a.m.

5

6          The videotaped 30(b)(6) deposition

7  of CHRIS BROWN, called as a witness herein for

8  examination, taken pursuant to the Federal

9  Rules of Civil Procedure of the United States

10  District Courts pertaining to the taking of

11  depositions, taken before Jennifer L. Bernier,

12  a Certified Stenographic Reporter of the State

13  of Illinois, CSR License No. 084-004190,

14  Registered Merit Reporter and Certified

15  Realtime Reporter at the offices of Goldberg

16  Kohn Ltd., 55 East Monroe Street, Suite 3300,

17  Chicago, Illinois.

18

19

20

21

22

23

24

```
 1   A P P E A R A N C E S:

 2   APPEARING ON BEHALF OF PLAINTIFFS:

 3        LEGAL ACTION CHICAGO, by
          DANIEL J. SCHNEIDER, ESQ.
 4        JOHN BOUMAN, ESQ.
          120 South LaSalle Street
 5        Suite 900
          Chicago, Illinois  60603
 6        312.341.1070
          dschneider@legalactionchicago.org
 7        jbouman@legalactionchicago.org

 8   ON BEHALF OF THE DEFENDANTS:

 9        GOLDBERG KOHN LTD., by
          KENNETH S. ULRICH, ESQ.
10        DAVID MORRISON, ESQ.
          55 East Monroe Street
11        Suite 3300
          Chicago, Illinois  60603
12        312.201.4000
          kenneth.ulrich@goldbergkohn.com
13        david.morrison@goldbergkohn.com

14        -and-

15        COOK COUNTY STATE'S ATTORNEY'S OFFICE, by
          MEGAN HONINGFORD, ESQ.
16        69 West Washington
          Chicago, Illinois  60602
17        312.603.3116
          megan.honingford@cookcountysao.org

18

19   ALSO PRESENT:

20   Adam Nelson, Videographer

21

22

23

24
```

1      Q.    Okay.  Near meaning local industry,

2   when you said near industry?

3      A.    Near as is -- as in proximity to.

4      Q.    Oh, okay.

5            You testified a few minutes ago

6   about various ways to measure -- well, strike

7   that.

8            For purposes of the claims advanced

9   in the Second Amended Complaint, when should

10  damages be calculated?

11           MR. SCHNEIDER:  Objection.

12      Relevance.  Calls for speculation.  Calls

13      for a legal conclusion.  The Complaint and

14      the claim speak for itself.  Outside the

15      scope of the notice.

16           You can answer.

17           THE WITNESS:  We're not seeking

18      damages as part of the Complaint.

19           (Discussion off the record.)

20  BY MR. ULRICH:

21      Q.    Are you aware of anyone who has ever

22  filed a complaint against the Indemnity Fund

23  who had that claim denied?

24           MR. SCHNEIDER:  Objection.

1  Relevance.  Calls for a legal conclusion.

2  Outside the scope of the notice.  Vague.

3       You can answer.

4       THE WITNESS:  I am not.

5       May I take one second and ask if one

6  of you wouldn't mind just tossing me

7  another bottle of water?

8       Thank you very much.

9       MR. ULRICH:  That literally was a

10  toss.

11       THE WITNESS:  Thank you.

12       MR. ULRICH:  I realize that, for the

13  record, we haven't marked the Second

14  Amended Complaint, which I referred to a

15  number of times.  So I'm going to -- I'm

16  going to rectify that.  I don't know that

17  I'm going to ask you questions about it

18  right now, but I -- I do want to have it

19  marked.

20       This would be Brown Exhibit 3.

21       (Brown Exhibit 3 was marked for

22  identification.)

23       THE WITNESS:  I assume at the end of

24  this, I need to return all of these to you?

1    I understand not with legislators, but there

2    have been discussions about what would be

3    productive or changes to the Illinois property

4    tax code?

5         A.    Yes.

6         Q.    What are some of the changes that

7    were discussed?

8         A.    I think many of the things we've

9    gone over here today.  Changes to what happens

10   with tax sale properties.  We've had some

11   discussions about assessed value and the impact

12   that that has on things like tax sales.  I -- I

13   think those are the two big issues that we've

14   probably discussed.

15        Q.    You understand that the property tax

16   sale process is governed by Illinois law,

17   correct?

18             MR. SCHNEIDER:  Objection.  Calls

19        for a legal conclusion.  Outside the scope.

20             You can answer.

21             THE WITNESS:  I do, yes.

22   BY MR. ULRICH:

23        Q.    Is there -- strike that.

24             Are you aware of any actions related

1  to property tax sales taken by either the

2  County or the treasurer that are not dictated

3  by Illinois state law?

4          MR. SCHNEIDER:  Objection.  Calls

5      for a legal conclusion.  Outside the scope.

6      Also, relevance.

7          You can answer, Chris.

8          THE WITNESS:  I'm going to ask you

9      to restate the question to be sure that I'm

10      understanding what you're...

11  BY MR. ULRICH:

12      Q.    Sure.

13          Are you aware of any actions related

14  to property tax sales taken by either the

15  County or the treasurer that are not dictated

16  by the Illinois property tax code?

17          MR. SCHNEIDER:  Same objections.

18      Also, it's just vague.

19          But you can answer.

20          THE WITNESS:  No, I'm not.

21  BY MR. ULRICH:

22      Q.    A couple minutes ago, you testified

23  about discussions not with Illinois

24  legislators, but about efforts to influence

1      ten-minute break?  I think we are

2      relatively close to wrapping up, but I need

3      to kind of --

4              MR. SCHNEIDER:  Sure.

5              THE VIDEOGRAPHER:  We are going off

6      the record.  The time is 1:04 p.m.

7              (Recess had.)

8              THE VIDEOGRAPHER:  We are back on

9      the record.  The time is 1:16 p.m.

10  BY MR. ULRICH:

11      Q.    Before the break, I asked you about

12  whether you were aware of any actions related

13  to property tax sales taken by either the

14  County or the treasurer that are not dictated

15  by the Illinois property tax code.  And you

16  said you were not.  Do you recall that

17  testimony?

18      A.    I do, yes.

19      Q.    Okay.  Are you aware of any actions

20  related to the Indemnity Fund process taken by

21  the County that are not dictated by the

22  Illinois property tax code?

23              MR. SCHNEIDER:  Objection to

24      relevance.  It calls for a legal conclusion

1    and speculation.  It's outside the scope of

2    the notice and also vague.

3           You can answer, Chris.

4           THE WITNESS:  I don't believe I know

5    enough about the indemnification fund

6    process to know if they're doing something

7    outside of the law, so I'd have to say no.

8  BY MR. ULRICH:

9    Q.    Okay.  Are you aware of any actions

10  related to the Indemnity Fund process taken by

11  the County treasurer that are not dictated by

12  the Illinois property tax code?

13          MR. SCHNEIDER:  Same objections to

14    relevance, calling for speculation, a legal

15    conclusion, vague and outside the scope of

16    the deposition.

17          You can answer.

18          THE WITNESS:  My answer would be the

19    same.  I don't know that I know enough

20    about the indemnification process to know

21    that they're doing something outside the

22    scope of -- of the law.

23  BY MR. ULRICH:

24    Q.    You also testified about meetings

```
 1              C E R T I F I C A T E

 2              I, Jennifer L. Bernier, Illinois

 3   Certified Shorthand Reporter, do hereby

 4   certify:

 5              That CHRIS BROWN, the witness whose

 6   videotaped 30(b)(6) deposition is hereinbefore

 7   set forth, was duly sworn by me and that such

 8   videotaped deposition is a true record of the

 9   testimony given by such witness.

10              I further certify that I am not

11   related to any of the parties to this action by

12   blood or marriage; and that I am in no way

13   interested in the outcome of this matter.

14              IN WITNESS WHEREOF, I have hereunto

15   set my hand this September 20, 2024.

16

17   _____

18   JENNIFER L. BERNIER, CSR, RMR, CRR
     Thompson Court Reporters
     CSR No.  084-004190

19

20

21

22

23

24
```

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE KIDD, DOLLY          )
JANIS, and GOYCE H.           )
RATES, individually and       )   Case No.
on behalf of all others       )   1:22-cv-07061
similarly situated;           )
SOUTHWEST ORGANIZING          )
PROJECT and PALENQUE          )
LSNA, individually,           )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
MARIA PAPPAS, in her          )
capacity as Treasurer of      )
Cook County, Illinois,        )
and Trustee of the            )
Indemnity Fund; and COOK      )
COUNTY, ILLINOIS,             )
                              )
          Defendants.         )


VIDEOTAPED 30(b)(6) DEPOSITION OF SUSAN YANUN

Chicago, Illinois

Wednesday, September 25, 2024

1

2

3                    September 25, 2024

4                    9:41 a.m.

5

6            The videotaped 30(b)(6) deposition

7  of SUSAN YANUN, called as a witness herein for

8  examination, taken pursuant to the Federal

9  Rules of Civil Procedure of the United States

10 District Courts pertaining to the taking of

11 depositions, taken before Jennifer L. Bernier,

12 a Certified Stenographic Reporter of the State

13 of Illinois, CSR License No. 084-004190,

14 Registered Merit Reporter and Certified

15 Realtime Reporter at the offices of Goldberg

16 Kohn Ltd., 55 East Monroe Street, Suite 3300,

17 Chicago, Illinois.

18

19

20

21

22

23

24

1  A P P E A R A N C E S:

2  APPEARING ON BEHALF OF PLAINTIFFS:

3       LEGAL ACTION CHICAGO, by
        DANIEL J. SCHNEIDER, ESQ.
4       120 South LaSalle Street
        Suite 900
5       Chicago, Illinois  60603
        312.341.1070
6       dschneider@legalactionchicago.org

7

   ON BEHALF OF THE DEFENDANTS:
8
        GOLDBERG KOHN LTD., by
9       KENNETH S. ULRICH, ESQ.
        55 East Monroe Street
10      Suite 3300
        Chicago, Illinois  60603
11      312.201.4000
        kenneth.ulrich@goldbergkohn.com
12
        -and-
13
        COOK COUNTY STATE'S ATTORNEY'S OFFICE, by
14      PRATHIMA YEDDANAPUDI, ESQ.
        69 West Washington
15      Chicago, Illinois  60602
        312.603.3116
16      prathima.yeddanapudi@cookcountysao.org

17

   ALSO PRESENT:
18
        Patrick McPherson, Videographer
19

20

21

22

23

24

1    they don't do that within a certain amount of

2    time, then the tax buyer can be issued a -- a

3    deed; and they can essentially evict the

4    homeowner.

5         Q.    And what you described so far, all

6    that is dictated by Illinois statute, correct?

7              MR. SCHNEIDER:  Objection.  Outside

8         the scope.  Calls for a legal conclusion.

9         Relevance.

10             You can answer.

11             THE WITNESS:  Yes, I believe so.

12   BY MR. ULRICH:

13        Q.    The -- what is your understanding of

14   if a homeowner does lose their property in a

15   sense a deed is issued to a tax purchaser, as

16   you have described, do you understand that they

17   have a remedy available to them through a claim

18   against the Indemnity Fund?

19             MR. SCHNEIDER:  Objection to

20        relevance and outside the scope and calls

21        for a legal conclusion.

22             You can answer.

23             THE WITNESS:  I -- when we started

24        working on property taxes, I was not aware

1    well, same objections.

2            THE WITNESS:  I believe so, yes.

3   BY MR. ULRICH:

4       Q.    Okay.  And when the -- if a tax deed

5   is issued, it is issued to the tax purchaser,

6   correct?

7       A.    To the best of my knowledge, yes.

8       Q.    It's not issued to Cook County, for

9   example?

10           MR. SCHNEIDER:  Objection.

11       Relevance.  And calls for a legal

12       conclusion again.

13           You can answer.

14           THE WITNESS:  No, not to my

15       knowledge.

16   BY MR. ULRICH:

17       Q.    So in connection with the annual tax

18   sale, Cook County never takes title to the

19   property, correct?

20           MR. SCHNEIDER:  Same objections.

21           THE WITNESS:  Correct.

22   BY MR. ULRICH:

23       Q.    If you'd look back at the Second

24   Amended Complaint, which we marked as an

1      counseling agency to help people apply for the

2      fund if their issue was taxes only and not

3      mortgages.  And so that's why we realized we

4      were able to help people for the tax sale that

5      was -- well, I'm not -- I can't remember the

6      exact date of the tax sale.  But it was --

7      again, this was for -- these were for people

8      whose taxes had been sold or were going -- were

9      in danger of being sold because their taxes

10     were delinquent.

11          Q.    What is Palenque's understanding of

12     what is required in order for someone to prove

13     an Indemnity Fund claim?

14               MR. SCHNEIDER:  Objection.

15          Relevance.  Outside the scope and expressly

16          calls for a legal conclusion.

17               You can answer if you can.

18               THE WITNESS:  I really -- I don't

19          know the specific steps.  So I would

20          definitely call Mr. Schneider and -- and

21          ask him for his advice for next steps.

22     BY MR. ULRICH:

23          Q.    Palenque does not train its

24     employees or volunteers regarding the Indemnity

1           C E R T I F I C A T E

2           I, Jennifer L. Bernier, Illinois

3   Certified Shorthand Reporter, do hereby

4   certify:

5           That SUSAN YANUN, the witness whose

6   videotaped 30(b)(6) deposition is hereinbefore

7   set forth, was duly sworn by me and that such

8   videotaped deposition is a true record of the

9   testimony given by such witness.

10          I further certify that I am not

11  related to any of the parties to this action by

12  blood or marriage; and that I am in no way

13  interested in the outcome of this matter.

14          IN WITNESS WHEREOF, I have hereunto

15  set my hand this October 7, 2024.

16

17  _____

    JENNIFER L. BERNIER, CSR, RMR, CRR

18

19

    CSR No.  084-004190

20

21

22

23

24

# EXHIBIT C

1              UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF ILLINOIS
3                   EASTERN DIVISION
4
5    MICHELLE KIDD, DOLLY JANIS, and  )
     GOYCE H. RATES, individually and )
6    on behalf of all others          )
     similarly situated; SOUTHWEST    )
7    ORGANIZING PROJECT and PALENQUE   )
     LSNA, Individually,              )
8              Plaintiffs,            ) Case No.
          v.                         ) 1:22-cv-7061
9    MARIA PAPPAS, in her capacity as )
     Treasurer of Cook County,        )
10   Illinois, and Trustee of the     )
     Indemnity Fund, and COOK COUNTY, )
11   ILLINOIS,                        )
               Defendants.            )
12
13            The 30(b)(6) deposition of
14   OFFICE OF THE COOK COUNTY by JUSTIN KIRVAN, J.D.,
15   called for examination, taken pursuant to the
16   Federal Rules of Civil Procedure of the United
17   States District Courts pertaining to the taking of
18   depositions, taken before KRISTIN C. BRAJKOVICH, a
19   Certified Shorthand Reporter, CSR No. 84-3810, of
20   said state, at Suite 900, 10 South Wacker Drive,
21   Chicago, Illinois, on the 18th day of September,
22   A.D. 2024, at 10:30 p.m.
23
24

```
 1   PRESENT:

 2

 3          GUIN, STOKES & EVANS, LLC,

 4          (805 Lake Street, Suite 226,

 5          Oak Park, Illinois 60301,

 6          1-312-878-8391), by:

 7          MR. CHARLES R. WATKINS,

 8          charlesw@gseattorneys.com,

 9               -and-

10          REED SMITH LLP,

11          (10 South Wacker Drive, 40th Floor,

12          Chicago, Illinois 60606,

13          1-312-207-6400), by:

14          MR. BRIAN D. ROCHE,

15          broche@reedsmith.com,

16               -and-

17          LEGAL ACTION CHICAGO,

18          (120 South LaSalle Street, 9th Floor,

19          Chicago, Illinois 60603,

20          1-312-341-1070), by:

21          MR. DANIEL SCHNEIDER,

22          dschneider@legalactionchicago.org,

23               appeared on behalf of Plaintiffs;

24
```

1   PRESENT (Continued):

2

3          GOLDBERG KOHN LTD.,

4          (55 East Monroe Street, Suite 3300,

5          Chicago, Illinois 60603,

6          1-312-201-3972), by:

7          MR. DAVID MORRISON,

8          david.morrison@goldbergkohn.com,

9               -and-

10         OFFICE OF THE COOK COUNTY STATE'S ATTORNEY,

11         (50 West Washington Street, 5th Floor,

12         500 Richard J. Daley Center,

13         Chicago, Illinois 60602,

14         1-312-603-4366), by:

15         MS. MEGAN HONINGFORD,

16         megan.honingford@cookcountyil.gov, and

17         MS. PRATHIMA YEDDANAPUDI,

18         prathima.yeddanapudi@cookcountyil.gov,

19               appeared on behalf of Defendants.

20

21

22

23

24

1  BY THE WITNESS:

2      A.   I believe that more than half of the

3  time indemnity awards are assigned to either a tax

4  buyer or a third party, yes.

5  BY MR. WATKINS:

6      Q.   Assigned to a tax buyer assignee as it

7  were?

8      A.   Yes.

9      Q.   Okay.  Is that a matter of concern to

10  the Treasurer?

11      MR. MORRISON:  Objection, beyond the scope.

12  BY THE WITNESS:

13      A.   Yes.  I would say it's a matter of some

14  concern or note, yeah.

15  BY MR. WATKINS:

16      Q.   And why is that a matter of some concern

17  or note?

18      MR. MORRISON:  Same objection.

19  BY THE WITNESS:

20      A.   Because it contributes to the perception

21  that, you know, tax buyers are working to maximize

22  their profits.

23  BY MR. WATKINS:

24      Q.   Do you think that the tax buyers are not

```
 1   STATE OF ILLINOIS )
                      ) SS:
 2   COUNTY OF C O O K )
 3
             I, KRISTIN C. BRAJKOVICH, a Certified
 4   Shorthand Reporter of said state, do hereby
     certify:
 5
             That previous to the commencement of the
 6   examination of the witness, the witness was duly
     sworn to testify the whole truth concerning the
 7   matters herein;
 8           That the foregoing deposition transcript
     was reported stenographically by me,
 9   was thereafter reduced to typewriting under my
     personal direction and constitutes a true record
10   of the testimony given and the proceedings had;
11           That the said deposition was taken
     before me at the time and place specified;
12
             That I am not a relative or employee
13   or attorney or counsel, nor a relative or
     employee of such attorney or counsel for any of
14   the parties hereto, nor interested directly or
     indirectly in the outcome of this action.
15
             IN WITNESS WHEREOF, I do hereunto set my
16   hand and affix my seal of office at Chicago,
     Illinois, this 1st day of October 2024.
17
18
19
20
21           C.S.R. Certificate No. 84-3810.
22
23
24
```