**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHELLE KIDD and GOYCE RATES, et al.,   )
   )
               Plaintiffs,   )   Case No. 22 CV 7061
   )
    v.   )   Judge Matthew F. Kennelly
   )
MARIA PAPPAS, et al.   )
   )
               Defendants   )

## JOINT STATUS REPORT

In accordance with this Court's May 11, 2026 Findings of Fact and Conclusions of Law, ECF No. 231 ("May 11 Ruling"), the parties submit this joint status report setting forth their respective positions on the further proceedings necessary to bring this case to conclusion.

## PLAINTIFFS' STATEMENT

The parties disagree about a threshold issue: the type of judgment. Plaintiffs contend, as set forth below, that based on the court's rulings on class certification, summary judgment, and *Monell* liability after trial, a final judgment should be entered for the class and against the County which includes the formula for determining aggregate damages on behalf of the class. The Court's summary judgment ruling and the trial decision confirm a finding of liability for damages from the constitutional violations *on behalf of the class*, not just the named plaintiffs. The County's position proposes a judgment which includes damages only for the named plaintiffs, but does not include a judgment for damages for the class. Defendant's proposal – with purported "bellwether trials" on Kidd's and Rates's damages, and proposals for Rule 54(b) findings – creates piecemeal litigation when this court's findings on class certification, summary judgment, and at trial all lead to a final judgment of liability and damages.

Defendant asserts that it wants a route to an immediate appeal that avoids finally determining and paying damages. That route is with a final judgment on liability and awarding aggregate damages via a mechanical formula.

### A. Final Judgment Awarding Aggregate Damages by Formula

The Court found "that the County is liable under *Monell* for the violations of the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause suffered by the plaintiffs and the class members." *Id.* at 21. Entry of Final Judgment against the County and for the Plaintiff Class is therefore appropriate.

The Plaintiffs request that the final judgment provide that aggregate damages are awarded to the class for just compensation (Fifth Amendment) and damages (Eighth Amendment), the amount to be calculated in the manner outlined by Plaintiffs in support of class certification (Dkt. 130), by adding together the surplus value confiscated for each class member as determined from the County's property tax records as follows:

**FAIR CASH VALUE AT TIME OF TAX DEED**
**– TAX OBLIGATIONS OWED,**
**+ PREJUDGMENT INTEREST**
**= JUST COMPENSATION / DAMAGES**

*Id.* at 13. The final judgment should direct the parties to cooperate in Defendant's calculation of this total amount using the tax obligation amount for each class member to be provided by the County with the Court determining prejudgment interest as is customary.

The requested judgment derives from and is consistent with the class definition established by the Court in its certification order, Dkt. 180 at 42 (class consists of former homeowners whose "assessed Fair Cash Value as of the time of tax deed's issuance exceeded the total amount of taxes, fees, and interest owed at the end of the redemption period"). The final judgment would be followed by and implemented via the normal payment administration processes common in

2

damage class actions (*e.g.*, applying this mechanical formula to each class member's property and adding those surplus values together to reach the total judgment amount of damages and resolving questions, if any, as to arithmetic errors in the calculation, gaps or errors in the County's records, class membership, property ownership, etc.). *See* Dkt. 180 at 38.

Defendant challenges the credibility of the Assessor fair market value assessments and asserts they should be excluded entirely from determining damages and replaced with individual retrospective appraisals. The Court has already found the Assessor numbers are reliable indicators of value in denying Defendant's motion to exclude Dr. Hamm's expert report. Now that the Court has decided liability and found that the County has violated the constitutional rights of the class, the Court decides the appropriate remedy under the broad discretion afforded when addressing a constitutional harm caused as a result of, as the Court found, the deliberate indifference of local officials to the constitutional rights of the plaintiff class.

Here, it is part and parcel of the Court's plenary power to remedy constitutional violations, and the "nature of the remedy must be determined by the nature and the scope of the constitutional violation." *City of Chi. v. Sessions*, No. 17 C 5720, 2017 U.S. Dist. LEXIS 169518 (N.D. Ill. Oct. 13, 2017) (quoting *Young Soo Koo v. McBride*, 124 F.3d 869, 873 (7th Cir. 1997)); *accord Missouri v. Jenkins*, 515 U.S. 70, 89 (1995). There are "no absolute standards outside of the requirement that the compensation paid for a taking be 'just.'" *A.A. Profiles, Inc. v. City of Fort Lauderdale*, 253 F.3d 576, 583 (11th Cir. 2001). Just compensation is determined according to the court's assessment of what is fair under the circumstances. *United States v. Fuller*, 409 U.S. 488, 490 (1973).

The method that relies on the Assessor's valuations is fair and just under the circumstances presented in this record, especially given the fact that both the Illinois Tax Code and the Cook

County Tax Code require that properties be assessed at a percentage of their "fair cash value" or "market value." Defendant continues with its objections to the Assessor's numbers and methodology, but the Court's statements from its *Daubert* ruling apply with even greater force in the context of the Court's findings of the County's constitutional violations:

> The proposition that Cook County's assessment system has shortcomings is unremarkable. Every method of property valuation has faults. The only close-to-perfect way to determine the market value of property is by way of a sale of that property on the market. But because Cook County's tax sales did not actually "sell" the properties but rather transferred them in exchange for payment of outstanding tax debt, there is no contemporaneous sale to consider. It is axiomatic that defendants cannot complain about imprecise damages calculations when their allegedly wrongful actions have made precise damages calculations impossible. *Traebert & Hoeffer, Inc. v. Piaget Watch Corp.*, 633 F.2d 477, 484 (7th Cir. 1980) (citing *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927)) ("[A] defendant whose wrongful conduct has rendered difficult the ascertainment of precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.").

Dkt. 180 at 18-19.[1]

The final judgment should further award Plaintiff Class Members prejudgment interest, compounded monthly, at the average monthly prime rate. Pre-judgment interest (also referred to as payment for delay) is a mandatory component of just compensation to make class members whole. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984); J*acobs v. United States*, 290 U.S. 13, 16-17 (1933). The Seventh Circuit generally requires district courts to use the prime rate when calculating prejudgment interest for federal claims. *See, e.g., Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (prime rate is the "benchmark"); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) ("[W]e suggest that district judges use

---

[1] Defendant proposes an alternative damages process consisting of a Bellweather trial of the named plaintiffs' damages. They provide no explanation of how this promotes determining class damages. Determining one class member's damages does not help determine other class members' damages any more than Plaintiff's approach does - which, in fact, determines damages for everyone.

the prime rate for fixing prejudgment interest where there is no statutory interest rate."); *Kove IO, Inc. v. Amazon Web Servs.*, 745 F. Supp. 3d 685, 728 (N.D. Ill. 2024). And "compound interest is the norm in federal litigation," *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1332 (7th Cir. 1992). *Geraty v. Village of Antioch*, Case No. 09 C 6992, 2014 U.S. Dis. LEXIS 51695 (April 15, 2014) ("Courts generally apply the monthly average prime rate. Interest should be compounded monthly.").

## B. Final Declaratory Judgment

Plaintiffs' Second Amended Complaint requests declaratory relief. Dkt. 53 at 5, 31. The organizational plaintiffs moved for declaratory relief in the motion for partial summary judgment. Dkt. 148 at 48. The Court held in the summary judgment ruling that the organizational plaintiffs, SWOP and Palenque LSNA, have standing to seek declaratory relief (Dkt. 198 at 12-13), the Tax Injunction Act does not prohibit the requested equitable post-tax-collection relief (*id.* at 13-15), and "that the defendants' tax sale procedures violate the Fifth and Eighth Amendments." *Id.* at 48. The court stated that a determination on equitable relief would be made once *Monell* liability was determined. *Id.* at 47. With the Court having now found the County liable under *Monell* for these constitutional violations, Plaintiffs SWOP and Palenque LSNA request that the Court enter a declaratory judgment in their favor and against the County pursuant to 28 U.S.C. § 2201 on Counts I and III, declaring that the County's tax sale procedures insofar as they do not provide post-taking just compensation violate the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause. Dkt. 198 at 42, 48-49; Dkt. 231 at 21; *Los Angeles County v. Humphries*,

5

562 U.S. 29, 34 (2010) (declaratory judgment available if liability established under *Monell;* cited by the Court in its opinion on summary judgment, Dkt. 198 at 49).[2]

Defendant agrees in its proposal that a declaratory judgment should be issued.

### C.    Defendant to Pay Costs of Notice and Administration.

With liability established, the costs of identifying and notifying class members of their recovery and of calculating and administering the payments should be borne by Defendant.

The Seventh Circuit explained in *Bakov v. Consolidated World Travel, Inc.,* 68 F.4th 1053, 1058 (7th Cir. 2023), that once liability has been determined for a previously certified class, costs may be shifted to defendants. Cost shifting in this manner is especially appropriate here.  Many class members who have been dispossessed of their homes without payment of just compensation that might have allowed them to obtain substitute housing have scattered to the winds, making them expensive to locate, which expense has only been further compounded by the deliberate indifference to their plight that the County has been found to have been demonstrated.[3]

### DEFENDANT COOK COUNTY'S STATEMENT

### A.    Calculation of Individualized Damages

Plaintiffs propose a deceptively simple formula for calculating just compensation for each property: Subtract the property's outstanding tax obligation from the Cook County Assessor's

---

[2]    Plaintiffs will propose a form of declaratory judgment and final judgment in accordance with the foregoing, which will include a proposed extension of the time during the pendency of any appeals for filing of any fee petition pursuant to Fed.R.Civ.P. 54(d)(2) and the Local Rules of this Court.

[3]    Plaintiffs provided a written statement of their proposal to Defendant last Thursday afternoon, with Defendant agreeing to provide its proposal on Friday. But Defendant did not provide its written statement of its proposal until 5:30 pm on the day the filing was due, today, Monday, restricting Plaintiffs' ability to address Defendant's detailed proposals. Plaintiffs request the opportunity to provide a more complete response to Defendant's position should the Court determine it would be helpful.

assessed value at issuance of the tax deed.[4] Reliance solely on assessed value is insufficient, however. As this Court has observed, assessed value is merely one "data point" which may be relevant to ascertaining market value. (ECF No. 215, June 25, 2025 Hearing Tr. at 29:20 – 34:4, 37:16 – 38:6, 53:15-23; *see also* ECF No. 180, July 7, 2025 Mem. Op. & Order at 14.) This Court also has recognized appraised value as another means to determine market value. (ECF No. 215, June 25, 2025 Hearing Tr. at 29:20 – 34:4, 37:16 – 38:6, 53:15-23.) The Court and Plaintiffs have acknowledged that the County is entitled to introduce appraisals as evidence of the market value of each class member's property. (*See id.* at 43:15 – 44:12.)

Assessed value is not a determination of market value for each individual property. Rather, the Assessor calculates assessed value using a mass appraisal model premised on approximation and uniformity purely for purposes of property taxation. Well-known limitations are inherent in the mass appraisal model. Specifically, the process is performed on a triennial assessment cycle; reflects modeling imprecision; relies on often outdated or inaccurate property records, particularly on older properties; and fails to incorporate any property-specific details, assuming instead that properties of the same type and age are in the same condition inside and out.

In contrast, an appraisal accounts for each property's unique characteristics, including but not limited to: (i) the actual condition of the property at issuance of the tax deed; (ii) the location of the property, including proximity to schools, public transit, and commercial centers; (iii) the status of the property as abandoned or damaged; and (iv) the presence of environmental contamination or building code violations on the property. These property-specific considerations

---

[4] The property owner's recoverable equity also must be reduced by the existence of any other encumbrances, liens, mortgages, or other restrictions on title to the property; and will be further affected by receipt of offsetting benefits, resulting for example from a flip agreement with a tax purchaser or an award from the Indemnity Fund (collectively, with the tax obligations as of the tax deed's issuance, "Total Offsets").

all impact the value of each individual property. Accordingly, just compensation is not susceptible to simple calculation using a one-size-fits-all formula for all class members. Indeed, the Court has acknowledged that valuation of each property is an "individual issue," and "whether a plaintiff actually lost excess equity in a home" presents an individualized question "that impacts both the defendants' liability and the damages owed to each class member." (ECF No. 180, July 7, 2025 Mem. Op. & Order at 35, 38.)

The uncontested facts with respect to the two class representatives' properties perfectly illustrate the accuracy of appraised value over assessed value to quantify market value. Plaintiffs' own appraiser valued the Rates property at $260,000 as of the date of entry of the tax deed—far below the Assessor's estimate of $389,000—and testified that the assessed value was "unreliable." (Exhibit A, Hallman Dep. Tr. at 74:19–21, 94:1–95:5, 96:4–7 & Hallman Dep. Exs. 1–3.) Similarly, Plaintiffs' own appraiser valued the Kidd property at $130,000 as of the date of entry of the tax deed—$80,000 lower than the Assessor's estimate of $210,000—attributable to "the condition of the property" that the mass appraisal did not capture. (*Id.* at 96:11–20, 104:17–24, 105:17–106:1 & Hallman Dep. Exs. 4–6.)

### B.      Framework for Entry of Final Appealable Judgment

The County proposes that this Court enter a final appealable judgment which will provide for: (i) the County's liability in accordance with this Court's Findings of Fact and Conclusions of Law entered on May 11, 2026; (ii) declaratory relief; and (iii) damages as to Rates and Kidd, individually, without prejudice to their ongoing status as class representatives, based on the value of their respective claims as determined by Plaintiffs' expert appraiser's valuations for the Rates and Kidd properties, and the resolution of any objections associated with discrepancies in the appraisal process (the "Final Judgment").  The County proposes that after entry of the Final

Judgment, this Court expressly determines that there is no just reason for delay in an interlocutory appeal of the Final Judgment, and all prior rulings, pursuant to FED. R. CIV. P. 54(b). Such immediate appellate review would avoid expending significant judicial and party resources conducting the claims process described below for approximately 2,400 claims altogether should appellate review result in a conclusion that the County is not liable.

The claim process described below would occur, if necessary, only following exhaustion of appeals from the Final Judgment. Within 60 days following remand after exhaustion of appellate rights with respect to this Court's Final Judgment, each class member eligible for compensation will submit a claim form identifying: (i) the property at issue, (ii) the basis for a claim of ownership, and (iii) the date of tax deed issuance (each, a "Verified Claim"). Within 60 days thereafter, the County will provide data regarding the tax obligation amount for each Verified Claim through the issuance of the tax deed on each subject property. Thereafter, the County will pay for the cost of a retrospective appraisal for each Verified Claim to be performed by a mutually agreeable appraiser as of the date of entry of the tax deed. The appraisal will be subject to a to-be-determined objection process leading to the final appraised value ("Final Appraised Value"), which shall be the basis for calculating the award for each Verified Claim, after subtracting the Total Offsets. The Court could appoint a Special Master pursuant to FED. R. CIV. P. 53(b) to oversee the Claims process.

### C.     Alternative: Bellwether Damages Trial

In the alternative, the County proposes moving forward with a bellwether damages trial for only the two class representatives, in their individual capacities, with respect to their individual damage claims. This trial would include introducing expert appraisals and other property-specific documentary evidence as well as examining expert witnesses. This trial would result in the entry of final judgment for each of Rates and Kidd, in their individual capacities ("Bellwether Final Judgment"), and simplify proceedings for the remaining class members. *See* Manual for Complex

Litigation (Fourth) § 22.315 (recommending bellwether trials in mass litigation to streamline remaining cases or facilitate settlement).

As is the case with the process described above, the County proposes that after entry of the Bellwether Final Judgment, this Court expressly determine that there is no just reason for delay in an interlocutory appeal of the Bellwether Final Judgment, and all prior rulings, pursuant to FED. R. CIV. P. 54(b). Such immediate appellate review would avoid expending significant judicial and party resources conducting approximately 2,400 mini-trials on damages altogether should appellate review result in a conclusion that the County is not liable. Alternatively, should appellate review result in a conclusion that the County is liable, the rulings of both the trial and appellate courts will provide essential guidance to the parties which will govern the damages proceedings for the remaining class members and potentially facilitate settlement.

In the event the case is remanded for further damages proceedings following the appeal from the Bellwether Final Judgment, the County proposes that each remaining class member submit a Verified Claim, and in addition the class member's proffered damages calculation based on the methodologies approved at trial and on appellate review in the bellwether trials. The County would provide data regarding the Total Offsets for each property, to the extent reflected in the County's records, through the issuance of the tax deed issued on each subject property. The parties then may identify claims suitable for resolution without a trial, for example when a class member's proffered valuation amount is uncontested or when the parties reach agreement on a compromised valuation amount and ownership interests can be readily established.

The County also proposes that, pursuant to FED. R. CIV. P. 53(f), the Court appoint a Special Master to dispose of contested claims by holding streamlined evidentiary hearings and resolving valuation disputes based on the methodologies approved in the bellwether trial. This approach

would promote efficient resolution of the large volume of claims while preserving potential objections to the Special Master's findings and recommendations.

The County also respectfully requests adopting mutually beneficial procedural safeguards with respect to bellwether damages proceedings as follows.

First, both the class member and the County may obtain independent appraisals of any property for which the valuation is contested.

Second, the County may assert property-specific defenses, including evidence of: (i) actual market value less than assessed value due to a property's circumstances, condition, and location or other market factors; (ii) encumbrances or liens reducing recoverable equity in a property; (iii) a property owner's receipt of compensation from an Indemnity Fund award or a tax purchaser flip agreement; and (iv) any issues regarding class membership or property ownership.

Third, the parties may conduct discovery regarding the facts underlying each class member's individual claim, including production of property records, inspection reports, title records, mortgage documents, land trust agreements, estate planning documents, vital statistic records, and records reflecting any compensation previously received by the class member.

### D. Prejudgment Interest and Costs

Plaintiffs' request for prejudgment interest compounded monthly at the prime rate is premature. The appropriate rate and method of calculating any prejudgment interest—including whether simple or compound interest applies—should be determined after the just compensation amount for each class member has been established.

Plaintiffs' request that the County bear all costs of notice and claims administration also is premature. The appropriate allocation of costs is a matter for the Court's discretion and should be addressed after the scope and structure of the damages proceedings have been established.

### E. Reservation of Rights

The County reserves its right to appeal this Court's prior rulings, including without limitation its rulings concerning class certification and liability.

Respectfully submitted,

Date: May 18, 2026                    By: /s/ *Brian D. Roche*

Charles R. Watkins
GUIN & EVANS, LLC
805 Lake Street, #226
Oak Park, IL 60301
(312) 878-8391
charlesw@guinevans.com

John Bouman                           Brian D. Roche
Lawrence Wood                         REED SMITH LLP
Daniel Schneider                      10 South Wacker Drive 40th Floor
Leah Levinger                         753 F.2d 1397 (7th Cir. 1985)
LEGAL ACTION CHICAGO                  Chicago, IL 60606
120 South LaSalle Street, 10th Floor  (312) 207-6490
Chicago, IL 60603                     broche@reedsmith.com
(312) 341-1070
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org

*Counsel for Plaintiffs and the Class*

Respectfully submitted,

EILEEN O'NEILL BURKE
Cook County State's Attorney

By      /s/ *David E. Morrison*
        Special Assistant State's Attorney

12

Kenneth S. Ulrich
David E. Morrison
Rachel C. Steiner
Kerry D. Nelson
Kyle W. Walther
Special Assistant State's Attorneys
GOLDBERG KOHN LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois 60603
(312) 201-4000
kenneth.ulrich@goldbergkohn.com
david.morrison@goldbergkohn.com
rachel.steiner@goldbergkohn.com
kerry.nelson@goldbergkohn.com
kyle.walther@goldbergkohn.com

-and-

Megan Honingford
Anthony O'Brien
Prathima Yeddanapudi
Assistant State's Attorneys
COOK COUNTY STATE'S
 ATTORNEY'S OFFICE
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-3116
megan.honingford@cookcountysao.org
anthony.obrien@cookcountysao.org
prathima.yeddanapudi@cookcountysao.org

*Counsel for Defendant Cook County*