**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE KIDD and GOYCE RATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22 CV 7061 |
| | ) | |
| v. | ) | Judge Matthew F. Kennelly |
| | ) | |
| MARIA PAPPAS, et al. | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFFS' MOTION TO ENTER FINAL**
**JUDGMENT AGAINST DEFENDANT COOK COUNTY**

**INTRODUCTION**

Plaintiffs move this Court to enter a final judgment order awarding them a Declaratory Judgment and a judgment for damages against Defendant Cook County. The proposed judgment, a copy of which is attached as Exhibit A, includes a formula for calculating and allocating aggregate class damages. This formula is based on the record from the class certification and summary judgment proceedings and the power vested in this Court to remedy the class-wide constitutional violations established during the *Monell* trial. The proposed judgment obviates the need for another trial or evidentiary hearing. If this Court finds that another trial or hearing is necessary, it should be limited to the appropriate aggregate damages for the entire class, based on evidence applicable to the entire class. The proposed bellwether trial of the named plaintiffs' damages does not qualify as a true bellwether trial, will not actually shed light on the damages that may be expected for other class members individually or in the aggregate, and will not be useful to the parties or to the Court in any future context.

By finding that the County is liable for violating the Fifth and Eighth Amendments to the Unites States Constitution, the Court has acquired the broadest discretion to fashion a remedy.

"Once a constitutional violation is found, a federal court is required to 'tailor the scope of the remedy' to fit 'the nature and scope of the violation.'" *Hills v. Gautreaux,* 425 U.S. 284, 283-84 (1976) (collecting cases). "[E]very effort should be made by a federal court to employ those methods "'to achieve the greatest possible degree of [relief], taking into account the practicalities of the situation.'" *Id. (citing to Davis v. School Comm'rs of Mobile County,* 402 U.S. 33, 37 (1971)). "The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness, *United States v. Commodities Trading Corp.*, 339 U. S. 121, 124 (1950), as its does from technical concepts of property law." *United States v. Fuller*, 409 U.S. 488, 490 (1973).

The post-trial status reports filed on May 18, 2026, ECF No. 232, included the parties' proposals for resolving this litigation. As Plaintiffs stated at that time, that can best be accomplished by proceeding to judgment now, with the Court determining a formula for calculating aggregate damages for the entire class and exercising its authority to order the Defendant to take the necessary additional remedial actions as described in Exhibit A. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 15 (1971).

I. **THE COURT SHOULD ENTER JUDGMENT SPECIFYING THE FORMULA FOR CALCULATING AGGREGATE DAMAGES**

A. **Aggregate Damages For The Class Is The Appropriate Framework**

The final judgment should provide that aggregate damages will be awarded to the class for just compensation (Fifth Amendment) and damages (Eighth Amendment). That is, the Court should enter a judgment that will, when the methods specified in the order are followed, yield the total damages suffered by the whole class and provide for the calculation of damages for each

class member. All the data needed to identify each class member and calculate the damages to which they are entitled are readily available. Adding up these individual damages to arrive at a sum equal to a total damage figure for the class is therefore appropriate under settled case law.

"The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009) (citing 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 10.5, at 483-86 (4th ed. 2002). *See generally*, *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 6461355, at *44 (N.D. Ohio, Nov. 17, 2014) (permitting approximation of aggregate damages proven as a matter of just and reasonable inference in antitrust class action, where damages were "susceptible to computation using a 'mathematical or formulaic' calculation") (citation omitted); *cf. In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 (2d Cir. 2013) (upholding the "district court's reliance on the plaintiffs' damages expert [], who testified that individual damages could be calculated on a class-wide basis with a simple formula using data extracted from [the employer]'s databases"); Only "if an aggregate approach cannot produce a reasonable approximation of the actual loss" must "the district court. . . adopt an individualized approach." *Hickory Securities Ltd. V. Republic of Argentina*, 493 Fed. Appx. 156, 159 (2d Cir. 2012).

"Aggregate damages - defined as the defendant's total liability to the full class - therefore arise as a method of meeting the predominance and superiority requirements in some . . . class action cases. When they do, courts have generally permitted plaintiffs to proceed on this basis, so long as the aggregate damage calculation is based on reasonable methodology and the individual damages calculations that follow can be made according to a common methodology." Newberg

3

and Rubenstein on Class Actions 6th (Trial Practice Series), §12:2 Aggregate Compensatory Damages.

> B. **The Appropriate Measure of Damages Is, As Plaintiffs Proposed in Their Class Motion, Fair Market Value Minus Tax Obligations Owed, Plus Prejudgment Interest**

As Plaintiffs set forth in support of their motion for class certification (ECF No. 130 at 13-15), the total amount of damages for the class members may be calculated by starting with the County's own property tax records to determine the surplus value confiscated from each class member, and adding prejudgment interest at the rate determined by the Court. The formula for determining damages is thus:

FAIR MARKET VALUE AT TIME OF TAX DEED
– TAX OBLIGATIONS OWED
+ PREJUDGMENT INTEREST
= JUST COMPENSATION / DAMAGES

The property's Fair Cash Value, as determined by the Cook County Assessor (and maintained in the Cook County Assessor's official records) prior to the issuance of the tax deed, is a reasonable equivalent for its fair market value.

The Plaintiffs and the class members are also entitled to prejudgment interest, compounded monthly, at the average monthly prime rate. Pre-judgment interest (also referred to as payment for delay) is a mandatory component of just compensation to make class members whole. *Knick v. Twp. of Scott,* 588 U.S. 180, 190-91 (2019) (owner has a right to just compensation immediately upon the taking, so if payment is delayed, the owner must be paid prejudgment interest as a component of just compensation); *see Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) ("if disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily

4

as he would have occupied if the payment had coincided with the appropriation"); J*acobs v. United States*, 290 U.S. 13, 16-17 (1933).[1]

  C.  **The Court Has The Power To Direct the Method for Determining Just Compensation.**

It is well within the Court's remedial discretion to adopt Plaintiffs proposed method for calculating damages, as it is consistent not only with the Constitution's legal mandate of full payment but with the class definition and the analysis of common questions that led to class certification.[2] It is also supported by the evidence in the record. That evidence, discussed in detail in Plaintiffs' class certification motion (ECF 130 at 15-20) and this Court's Daubert and class certification ruling (ECF 180 at 14-21), establishes that plaintiffs' proposed aggregate damage calculation methodology is reasonable as it is based on property valuations derived pursuant to the Illinois Tax Code and the Cook County Tax Code's requirements that properties be assessed at a consistent percentage of their "fair cash value" or "market value".

Defendant argues that the Fair Cash Value assigned by the Assessor to each class member's property may not always be equal to the amount of money a sale of the property would have generated had the sale been conducted when the County issued the tax deed. We are not, however, considering the value of any individual home. We are instead considering the value of the thousands of homes *in the aggregate*, and the undisputed evidence in the record establishes that

---

[1] The Seventh Circuit generally requires district courts to use the prime rate when calculating prejudgment interest for federal claims. *See, e.g., Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (prime rate is the "benchmark"); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc*., 874 F.2d 431, 436 (7th Cir. 1989) ("[W]e suggest that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate."); *Kove IO, Inc. v. Amazon Web Servs.*, 745 F. Supp. 3d 685, 728 (N.D. Ill. 2024). And "compound interest is the norm in federal litigation." *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1332 (7th Cir. 1992). *Geraty v. Village of Antioch*, Case No. 09 C 6992, 2014 U.S. Dis. LEXIS 51695, at *8 (April 15, 2014) ("Courts generally apply the monthly average prime rate. Interest should be compounded monthly.").

[2] *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("Calculations need not be exact, … but at the class-certification stage (as at trial), any model supporting a "plaintiff's damages case must be consistent with its liability case.") (emphasis added).

the Assessor does an exceptionally accurate and credible job of estimating value *in the aggregate*.

As the Court stated in its Daubert ruling:

> The proposition that Cook County's assessment system has shortcomings is unremarkable. Every method of property valuation has faults. The only close-to-perfect way to determine the market value of property is by way of a sale of that property on the market. But because Cook County's tax sales did not actually "sell" the properties but rather transferred them in exchange for payment of outstanding tax debt, there is no contemporaneous sale to consider. It is axiomatic that defendants cannot complain about imprecise damages calculations when their allegedly wrongful actions have made precise damages calculations impossible. *Traebert & Hoeffer, Inc. v. Piaget Watch Corp.*, 633 F.2d 477, 484 (7th Cir. 1980) (citing *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927)) ("[A] defendant whose wrongful conduct has rendered difficult the ascertainment of precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.").

ECF 180 at 18-19.

Defendant notes that the retrospective appraisals of the two named plaintiffs' properties differed from the assessed values. But Defendant does not explain what the value of two homes tells us about the value of the thousands of other homes in the class. Indeed, as the Defendant has repeatedly argued, and as Plaintiffs and the Court have acknowledged, it likely tells us nothing because homes have different values. If we had a statistically large and randomly selected sample of homes, and a properly constructed analysis of how assessed values compare to retroactive appraisal values, it might yield useful information.[3] But we do not have such

---

[3] Using Ms. Kidd and Ms. Rates as bellwethers would not meet the legal standards to define a representative bellwether pool. *See In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1021 (5th Cir. 1997) (rejecting the pool of potential bellwethers unrepresentative). In general, a representative random sampling of sufficient size must be selected by both plaintiff and defendant, "by the application of the science of inferential statistics[,]" such that the parties and Court "may confidently draw inferences about the whole from a representative sample of the whole." *Id*, at 1020-1021. *See generally, In re Chevron U.S.A., Inc.,*109 F.3d 1016 (5th Cir. 1997) (selecting 30 bellwether trials to determine damages for a class of 3,000); *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998) (sampling 160 plaintiffs from different categories to define damages for a class of 3,000); *See also In re Estate of Marcos Human*

evidence. The assessed values of those homes, including the named Plaintiffs' homes, are, as demonstrated in our previous submissions, valid and persuasive evidence of their Fair Market Value—just as good as, if not better than, the retrospective appraisals—and they are values on which the County relied to impose the taxes that formed the basis for the County's taking. The record supports using these assessed valuations to determine Fair Market Value.

## II. IF THE COURT ORDERS A TRIAL, THE ISSUE SHOULD BE HOW THE ASSESSED VALUATIONS RELATE TO FAIR MARKET VALUE

The evidence of record is sufficient for the court to order aggregate damages be calculated as Plaintiffs propose.

If the Court decides to hold a trial, however, the issue should be limited to the measure of aggregate damages; *i.e.,* how best to set Fair Market Value based on information, such as the assessed valuations governed by state and county law, that applies to the whole class. As noted above, the aggregate damages phase of a class action determines the formula to be applied to each class member's case to arrive at the amount of a common fund. If this is to be determined at trial, the proceedings should involve evidence relevant to the class-wide damages formula. The only evidence Defendant produced in this litigation as to the Fair Market Value of every class member's property is the Assessor's valuations. The trial should determine whether Fair Market Value should deviate from the assessed valuations, and, if so, in which direction and by how much.

Defendant maintains the Assessor routinely over-assesses and overvalues properties. The Illinois Department of Revenue ("IDOR"), however, recently released its analysis of the of the Assessor's valuations refuting that contention, and demonstrating that using Assessor figures is

---

*Rights Litigation*, 910 F. Supp. 1460, 1464-65 (D. Haw. 1995); *Hilao v. Estate of Marcos*, 103 F.3d 767, 774-87, 45 Fed. R. Evid. Serv. 913 (9th Cir. 1996).

actually a very conservative and supportable approach.

https://www.illinois.gov/news/release.html?releaseid=32449 (a copy of which is attached as

Exhibit B).

As part of its obligation under Illinois law to set the "equalization factor" for property

taxes for residential properties in Cook County, IDOR determined that the assessed fair cash

values for residential properties in Cook County for 2022-24 were, on average over the three

years, actually 7.5% **below** the actual sales prices of comparable homes that were sold during

those years.[4] The report belies Defendant's claim that using Assessor numbers favors

homeowner class members at the expense of the County. *Id.* (showing an average assessed value

for the three years of 9.25 % of actual prices, where parity of the sales prices to assessed fair

cash value would have yielded an assessed value of 10%).

If there is a trial on damages, and plaintiffs do not believe there needs to be one, it should

be to determine how to calculate aggregate damages for the class and focus on whether any

downward (or upward) adjustment to the Assessor's fair cash value number – which is the only

class-wide data of value produced by the parties in this litigation – is appropriate.

---

[4] The Court can take judicial notice of the IDOR report. It is therefore additional authority validating the Court's adoption of the assessed cash values as the measure of Fair Market Value in the damages formula without the need for a new trial (*supra.* Section I ). *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (citing to Fed. R. Evid. 201(b)); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995).

III. **INDIVIDUAL DAMAGES SHOULD BE DETERMINED AFTER ENTRY OF THE JUDGMENT, IN CONNECTION WITH AND AFTER APPROVAL OF THE ALLOCATION PLAN**

The judgment plaintiffs propose will create a fund under Court control to compensate class members.  The allocation of a fund under the court's control is a traditional function of courts exercising their equity jurisdiction. *Curtiss-Wright Corp. v. Helfand,* 687 F 2d 171 (7th Cir. 1982) (Plan of allocation must be fair, reasonable and adequate, as in approval of a settlement). A plan of allocation does not determine the amount of the aggregate damages common fund, but instead decides how this amount shall be allocated among and distributed to the class members.  *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ("Defendants complain that it is wrong to calculate aggregate rather than individual damages for the class. The district court rejected that position as a matter of law, as do we. … The determination of the aggregate classwide damages is something that can be handled most efficiently as a class action, and the allocation of that total sum among the class members can be managed individually"). Plaintiffs' proposed Final Judgment Order properly defers the plan for allocating the aggregate damages common fund, as well as the notice and outreach effort and claims process, until after the fund's size has been determined and the fund has been created by entry of the judgment.  Exhibit A, ¶ 9 .

IV. **THE DECLARATORY AND OTHER PROVISIONS OF THE PROPOSED JUDGMENT ORDER ARE PROPER.**

In its summary judgment ruling, the Court held "that the defendants' tax sale procedures violate the Fifth and Eighth Amendments." ECF 198 at 48. The court stated that a determination on equitable relief would be made once *Monell* liability was determined. *Id.* at 47. With the Court having now found the County liable under *Monell* for these constitutional violations, Plaintiffs SWOP and Palenque LSNA and the Class request that the Court enter a declaratory

9

judgment in their favor and against the County pursuant to 28 U.S.C. § 2201 on Counts I and III, declaring that the County's tax sale procedures, insofar as they do not provide post-taking just compensation, violate the Fifth Amendment's Takings Clause and the Eighth Amendment's Excessive Fines Clause. ECF 198 at 42, 48-49; ECF 231 at 21; *Los Angeles County v. Humphries*, 562 U.S. 29, 34 (2010) (declaratory judgment available if liability established under *Monell;* cited by the Court in its opinion on summary judgment, ECF 198 at 49). Defendant agrees that a declaratory judgment should be issued. ECF No. 232 at 8.

The proposed judgment order provides that the Defendants shall bear the costs associated with notices and other expenses of the implementation of the relief. Exhibit A, at ¶ 8. As set forth above, the Court has plenary power to order the Defendant to correct its wrongdoing while bearing the cost of this correction. In addition, as the Seventh Circuit explained in *Bakov v. Consolidated World Travel, Inc.,* 68 F.4th 1053, 1058 (7th Cir. 2023), once liability has been determined for a previously certified class, Fed. R. Civ. P. 23 has been applied to shift notice and related costs to defendants. *See also Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 113 7, 1144 (9th Cir. 2009) ("District courts may order a class action defendant to pay the cost of class notification after they determine that the defendant is liable on the merits. They may in an appropriate case shift these notice costs *even when the liability decision is under appeal.*"); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 58 (D. Conn. 2001); (agreeing with the plaintiff that "because liability has already been determined, defendant bears the cost of notice to the class"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 641 F. Supp. 259, 264 (D. Ariz. 1986) (directing defendants to pay notice costs in part because "liability of the defendants will have already been established"); *Catlett v. Missouri Highway and Transp. Comm'n*, 589 F. Supp 949, 952 (D. Mo. 1984) (shifting notice costs "because the liability of the [defendant] has been

10

established").Cost shifting is especially appropriate here.  Many class members who have lost their homes without receiving just compensation that might have allowed them to obtain substitute housing have scattered to the winds, making them expensive to locate.

## CONCLUSION

For the reasons set forth above, the Court should grant Plaintiffs' motion and enter the judgment order in the form submitted herewith without a trial or evidentiary hearing.

Respectfully submitted,

Date:   June 18, 2026

By: /s/ Lawrence D. Wood

Charles R. Watkins
GUIN & EVANS, LLC
805 Lake Street, #226
Oak Park, IL 60301
(312) 878-8391
charlesw@guinevans.com

John Bouman
Lawrence Wood
Daniel Schneider
Leah Levinger
LEGAL ACTION CHICAGO
120 South LaSalle Street, 10th Floor
Chicago, IL 60603
(312) 341-1070
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org

Brian D. Roche
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
(312) 207-6490
broche@reedsmith.com

*Counsel for Plaintiffs and the Class*